Mark W. Bucher
mark@calpolicycenter.org
CA S.B.N. # 210474
Law Office of Mark W. Bucher
18002 Irvine Blvd., Suite 108
Tustin, CA 92780-3321
Phone: 714-313-3706
Fax: 714-573-2297

Brian Kelsey (*Pro Hac Vice To Be Filed*)
bkelsey@libertyjusticecenter.org
Jeffrey M. Schwab (*Pro Hac Vice To Be Filed*)
jschwab@libertyjusticecenter.org
Senior Attorneys
Liberty Justice Center
190 South LaSalle Street
Suite 1500
Chicago, Illinois 60603
Phone: 312-263-7668
Fax: 312-263-7702

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Thomas Few, | Case No. 2:18-cv-9531 |
| Plaintiff. | |
| v. | **MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |
| United Teachers of Los Angeles, et. al, | |
| Defendants. | |

# INTRODUCTION

Public employees have a First Amendment right not join or pay any fees to a union "unless the employee affirmatively consents" to do so. *Janus v. AFSCME*, 138 S. Ct. 2448, 2486 (2018). Plaintiff, Thomas Few, an employee of the Los Angeles Unified School District (LAUSD), has repeatedly advised the United Teachers of Los Angeles (UTLA) that they do not have his affirmative consent to withdraw their dues from his paycheck or to represent him as a member of the union. These requests have been ignored or denied. UTLA has insisted, instead, that Mr. Few must wait until an opt-out period that it prefers for him to exercise his First Amendment right not to pay union dues.

Forcing Mr. Few to continue to pay union dues until an opt-out period is unconstitutional because any authorization Mr. Few may have previously given was based on what the Supreme Court in *Janus* recognized as an unconstitutional choice between paying the union as a member or paying the union agency fees as a non-member. The Supreme Court in *Janus* recognized that the First Amendment requires, instead, that a government employee have a choice to not join or pay a union. The union authorization card that Mr. Few signed prior to the Supreme Court's decision in *Janus* is no longer valid because it did not give Mr. Few the option to not pay money to the union. The burden is on UTLA to prove by "clear and compelling" evidence that Mr. Few provided affirmative consent to be a member of, and pay, the union, and it cannot meet this burden because of the unconstitutional nature of the choice it gave him. *Id.*

It is also a violation of the First Amendment to force citizens to associate with organizations or causes with which they do not wish to associate. Yet California law grants public sector unions the power to speak on behalf of employees as their exclusive representative. Pursuant to this law, UTLA purports to act as the exclusive representative of Mr. Few. This compelled arrangement abridges his rights of speech and association.

In the face of the denials of his constitutional entitlements, Mr. Few has brought this action to vindicate them. Given that the Supreme Court has recently spoken directly on these issues, Mr. Few is more than likely to succeed on the merits of his case. Mr. Few

is a special education teacher for whom withholding over $1,000 per year in union dues is a significant amount. He is currently suffering irreparable harm by having union dues deducted from his paycheck against his will to go towards union advocacy he does not support. He is also suffering irreparable harm by having the union misrepresent his views in its negotiations with LAUSD.

Mr. Few respectfully requests that the Court enter a preliminary injunction preventing further injury as the case is litigated. The Court should enter a preliminary injunction 1) ordering LAUSD and UTLA to halt the deduction of union dues from Mr. Few's paycheck; 2) enjoining the Attorney General from enforcing Cal. Gov't Code §§ 3543.1 and 3546 and Cal. Educ. Code §§ 45060 and 45168 authorizing Mr. Few's union dues and fees deduction; 3) enjoining UTLA from acting as Mr. Few's exclusive representative in his relationship with LAUSD; 4) and enjoining the Attorney General from enforcing Cal. Gov't Code § 3543 authorizing UTLA to act as Mr. Few's exclusive representative without his affirmative consent. The failure to enjoin these activities will lead to further abridgments of First Amendment rights which cannot be remedied at the conclusion of the litigation.

## FACTS

Mr. Few, has been a special education teacher in the Los Angeles Unified School District since August 2016. (Few Decl. ¶ 1, attached as Ex. A.) Mr. Few joined the United Teachers of Los Angeles in August 2016 and was not informed by UTLA or LAUSD that he had a right not to join the union. (Few Decl. ¶ 3.) On February 13, 2018, Mr. Few signed a union membership card that did not give him the option to not join the union and not pay fees to the union. (Few Decl. ¶ 4.)

On or about June 2, 2018, Mr. Few sent a letter to the union asking to resign his membership and to become an agency fee payer. (Few Ltr. to UTLA, June 2, 2018, attached as Ex. B; Few Decl. ¶ 5.) On July 13, 2018, UTLA responded to Mr. Few's resignation letter by rejecting it. UTLA stated that Mr. Few could not resign from the union until his resignation window, which was "not less than thirty (30) days and not

more than sixty (60) days before" the anniversary of his union membership on February 13. (UTLA Ltr. to Few, July 13, 2018, attached as Ex. C; Few Decl. ¶ 6.)

On August 3, 2018, Mr. Few submitted a letter to both UTLA and LAUSD again resigning from the union and, this time, declining to pay agency fees. (Few Ltr. to UTLA, August 3, 2018, attached as Ex. D; Few Decl. ¶¶ 7-8.) On or about October 10, 2018, Mr. Few submitted a third letter to UTLA to resign from the union and stop having its dues deducted from his paycheck. (Few Ltr. to UTLA, October 10, 2018, attached as Ex. E; Few Decl. ¶ 9.) On October 19, 2018, UTLA responded to Mr. Few's third resignation letter by rejecting it because it did not fall within his resignation window. (UTLA Ltr. to Few, Oct. 19, 2018, attached as Ex. F; Few Decl. ¶ 9.)

Since August 2016 LAUSD has withdrawn approximately eighty-six dollars ($86) per month from Mr. Few's paycheck to pay his UTLA dues. (Few Decl. ¶ 10.) Mr. Few does not wish LAUSD to be his representative, exclusive or otherwise, in bargaining negotiations with LAUSD. (Few Decl. ¶ 12.)

## ARGUMENT

**The Court should enjoin Defendants from collecting union dues and acting as Mr. Few's exclusive representative in bargaining negotiations with his employer.**

In the Ninth Circuit, Plaintiffs seeking a preliminary injunction must satisfy one of two tests. The first test considers 1) the likelihood Plaintiffs will succeed on the merits, 2) whether Plaintiffs will suffer irreparable injury if the injunction is not granted, 3) the balance of equities, and 4) whether the injunction would be in the public interest. *Coffman v. Queen of the Valley Med. Ctr.*, 895 F.3d 717, 725 (9th Cir. 2018); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008). The second variant the Ninth Circuit considers provides that "if a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Alliance. for the Wild*

*Rockies v. Peña*, 865 F.3d 1211, 1217 (9th Cir. 2017). Under either mode of analysis, the Court should grant Mr. Few a preliminary injunction on his claims.

### I. Mr. Few is likely to succeed on the merits.

#### A. Mr. Few is likely to succeed in his claim that continued deduction of union dues violates his First Amendment rights to free speech and freedom of association.

The Court in *Janus* explained that payment to a union could be deducted from a nonmember's wages if that employee "affirmatively consents" to pay.

> Neither an agency fee nor any other payment to the union may be deducted from a nonmember's wages, nor may any other attempt be made to collect such a payment, unless the employee affirmatively consents to pay. By agreeing to pay, nonmembers are waiving their First Amendment rights, and such a waiver cannot be presumed. Rather, to be effective, the waiver must be freely given and shown by "clear and compelling" evidence. Unless employees clearly and affirmatively consent before any money is taken from them, this standard cannot be met.

*Janus*, 138 S. Ct. at 2486 (citations omitted).

Supreme Court precedent provides that certain standards be met in order for a person to properly waive their constitutional rights. First, waiver of a constitutional right must be of a "known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). Second, the waiver must be freely given; it must be voluntary, knowing, and intelligently made. *D. H. Overmyer Co. v. Frick Co.*, 405 U.S. 174, 185-86 (1972). Finally, the Court has long held that it will "not presume acquiescence in the loss of fundamental rights." *Ohio Bell Tel. Co. v. Public Utilities Comm'n*, 301 U.S. 292, 307 (1937).

In Mr. Few's case, he could not have waived his First Amendment right to not join or pay a union. First, at the time Mr. Few signed the union card, the right not to pay a union was not known, since the Supreme Court had not yet issued its decision in *Janus*. Further, Mr. Few could not have voluntarily, knowingly, or intelligently waived his right not to join or pay a union because neither UTLA nor LAUSD informed him he had a right

not to join the union at all—whether paying agency fees or not. (Few Decl. ¶¶ 3-4.). Further, at the time he signed the union card, Mr. Few had no choice but to pay the union, so he could not have voluntarily waived his First Amendment right.

Because the Court will "not presume acquiescence in the loss of fundamental rights," *Ohio Bell Tel. Co.*, 301 U.S. at 307, the waiver of constitutional rights requires "clear and compelling evidence" that the employees wish to waive their First Amendment right not to pay union dues or fees. *Janus*, 138 S. Ct. 2484. In addition, "[c]ourts indulge every reasonable presumption against waiver of fundamental constitutional rights." *College Savings Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666 (1999) (*citing Aetna Ins. Co. v. Kennedy ex rel. Bogash*, 301 U.S. 389, 393 (1937)).

The union card Mr. Few signed did not provide a clear and compelling waiver of Mr. Few's First Amendment right to not join or pay a union because it did not expressly state that Mr. Few has a constitutional right not to pay a union and because it did not expressly state that Mr. Few was waiving that right.

After the decision in *Janus*, UTLA maintains that Mr. Few may only withdraw his union membership during an arbitrary 30-day time window each year, (UTLA Ltr. to Few, July 13, 2018; UTLA Ltr. to Few, Oct. 19, 2018), despite his repeatedly requests to be removed from the union rolls and to stop the dues deduction from his paycheck. (Few Decl. ¶¶ 5, 7-9).

However, the union dues authorization card signed by Mr. Few before the Supreme Court's decision in *Janus* cannot meet the standards set forth for waiving a constitutional right, as required by the Supreme Court in *Janus*. Because Mr. Few has not waived his First Amendment right to not join or pay a union, and because the union card does not meet the standard for waiving a constitutional right, that union card is invalid. And UTLA cannot hold Mr. Few to the time window to withdraw his union membership set forth in that union card. Since being apprised of his constitutional rights by the *Janus* decision, Mr. Few has not signed a union authorization card. Therefore, Mr. Few has still never given UTLA the "affirmative consent" required by the *Janus* decision.

The likelihood that Mr. Few succeeds in his claim is, therefore, considerable. Mr. Few has a clearly established right not to support the union. And he has not waived that right. This Court should prohibit UTLA and LAUSD from treating Mr. Few as if he has waived his First Amendment rights. Mr. Few has certainly "raised a serious question going to the merits" of whether continuing to allow UTLA to take money from his paycheck to fund their advocacy violates his rights under the First Amendment. *Alliance. for the Wild Rockies*, 865 F.3d at 1217.

### B. Mr. Few is likely to succeed in his claim that compelled representation violates his First Amendment rights.

As the Supreme Court has recently recognized:

> Designating a union as the employees' exclusive representative substantially restricts the rights of individual employees. Among other things, this designation means that individual employees may not be represented by any agent other than the designated union; nor may individual employees negotiate directly with their employer.

*Janus*, 138 S. Ct. at 2460. The First Amendment should not countenance such a substantial restriction. "[M]andatory associations are permissible only when they serve a compelling state interest that cannot be achieved through means significantly less restrictive of associational freedoms." *Knox*, 567 U.S. at 310 (quoting *Roberts v. United States Jaycees*, 468 U.S. 609, 623 (1984)) (internal quotation marks omitted). Because forced union representation does not further a compelling state interest, Mr. Few is likely to succeed in his claim that compelled representation by the union violates his constitutional rights.

Unions and state governments have proffered various claimed interests in compelling the association of employees. One often proffered is "labor peace," meaning the "avoidance of the conflict and disruption that it envisioned would occur if the employees in a unit were represented by more than one union" because "inter-union rivalries would foster dissension within the work force, and the employer could face

'conflicting demands from different unions.'" *Janus*, 138 S. Ct. at 2465. The other interests typically asserted in support of exclusive representative status amount to much the same claim: that it is in the state's interest to have a "comprehensive system" that bundles all employees into a single bargaining representative with which the state can negotiate. *See, e.g.,* Brief for Respondents Lisa Madigan And Michael Hoffman at 4, *Janus v. AFSCME*, 138 S. Ct. 2448, 2486 (2018) (No. 16-1466).

This justification does not apply to Mr. Few because he does not seek to introduce a competing union into the bargaining mix but only to speak for himself. Furthermore, in *Janus* the Supreme Court assumed, without deciding, that labor peace might be a compelling state interest, but rejected it as a justification for agency fees, recognizing that "it is now clear" that the fear of "pandemonium" if the union couldn't charge agency fees was "unfounded." *Janus*, 138 S. Ct. at 2465.

To the extent individual bargaining is claimed to raise the same concerns, this too, remains insufficient. The Supreme Court rejected the invocation of this rational due to the absence of evidence that some actual harm will follow if it is disregarded. *Id.* It may be that the State finds it convenient to negotiate with a single agent, but that, in and of itself, is not enough to overcome First Amendment rights. The rights to speech and association cannot be limited by appeal to administrative convenience. *Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 102 n.9 (1972) (in free speech cases, a "small administrative convenience" is not a compelling interest); *see also Tashjian v. Republican Party*, 479 U.S. 208, 218 (1986) (holding that a state could "no more restrain the Republican Party's freedom of association for reasons of its own administrative convenience than it could on the same ground limit the ballot access of a new major party"). While it may be quicker or more efficient for the state to deal only with the union, "the Constitution recognizes higher values than speed and efficiency." *Stanley v. Illinois*, 405 U.S. 645, 656 (1972). Even if the state could claim that it saves money resources by negotiating only with the union, the preservation of government resources is not an interest that can justify First Amendment violations. In other contexts where the state's burden was only rational basis

review, the Supreme Court has rejected such justifications. *See*, *e.g.*, *Romer v. Evans,* 517 U.S. 620, 635 (1996) (rejecting the "interest in conserving public resources" in a case applying only heightened rational basis review); *see also Plyler v. Doe*, 457 U.S. 202, 227 (1982) ("a concern for the preservation of resources standing alone can hardly justify the classification used in allocating those resources").   Such claimed interests are not enough to leave Mr. Few "shanghaied for an unwanted voyage." *Janus*, 138 S. Ct. at 2466.

Under California law, as a condition of his employment, Mr. Few is expressly barred by Cal. Gov't Code § 3543 from meeting or negotiating with his employer to express his own views on matters that *Janus* recognizes to be of inherently public concern. 138 S. Ct. at 2473. This restraint on Mr. Few's own speech itself raises serious First Amendment concerns. *Janus*, 138 S. Ct. at 2464 (whenever "a State prevents individuals from saying what they think on important matters or compels them to voice ideas with which they disagree, it undermines" First Amendment values). California law goes further, granting UTLA prerogatives to speak on Mr. Few's behalf on all manner of contentious matters. For example, UTLA is entitled to speak on Mr. Few's behalf regarding the priorities LAUSD should consider when laying off teachers for lack of funds. Cal. Gov't Code § 3543.2(4)(c). It is entitled to speak in his voice as to whether LAUSD should provide merit based incentive bonuses. Cal. Gov't Code § 3543.2(4)(d). It may even take a position directly contrary to Mr. Few's best interest in advocating against a salary schedule based on merit and in favor of one based on training and years of experience. Cal. Gov't Code § 3543.2(4)(e). These are precisely the sort of policy decisions that *Janus* recognized are necessarily matters of public concern. 138 S. Ct. 2467.

California gives UTLA a right, by statute, to commandeer Mr. Few's voice to push its own views regarding "the definition of educational objectives, the determination of the content of courses and curriculum, and the selection of textbooks." Cal. Gov't Code § 3543.2(3). Political fights over the content of curricula and textbooks in public schools are such contentious matters of public policy that they've received national headlines and

been dubbed the "Textbook Wars." *See* Gail Collins, *How Texas Inflicts Bad Textbooks on Us*, The New York Review of Books, June 21, 2012; Daniel Golden, *New Battleground in Textbook Wars: Religion in History*, Wall St. J., Jan. 25, 2006, at A1. UTLA purports to speak for Mr. Few on this issue, too. Mr. Few submits that he can very well speak for himself on this and other issues of public policy. (Decl. of Pl. at ¶ 13.)

Legally compelling Mr. Few to associate with UTLA demeans his First Amendment rights. Indeed, "[f]orcing free and independent individuals to endorse ideas they find objectionable is always demeaning . . . a law commanding involuntary affirmation of objected-to beliefs would require even more immediate and urgent grounds than a law demanding silence." *Janus*, 138 S. Ct. at 2464 (2018) (quoting *West Virginia Bd. of Ed. v. Barnette*, 319 U. S. 624, 633 (1943) (internal quotation marks omitted)). California's laws do command Mr. Few's involuntary affirmation of objected-to beliefs. None of the state interests offered in the past to overcome this deprivation of rights rise to the level of being immediate, urgent, or compelling. Because the traditionally proffered compelling state interests for exclusive representation do not apply to Mr. Few, he has demonstrated a substantial likelihood that he will succeed on the merits of his claim. At a minimum, he has "raised a serious question going to the merits" of whether compelling him to associate with UTLA violates his First Amendment rights. *All. for the Wild Rockies*, 865 F.3d at 1217.

## II. Mr. Few will suffer irreparable injury.

### A. Irreparable injury will result if the union is allowed to continue deducting dues from Plaintiff's paychecks.

The continued deduction of union dues constitutes an irreparable injury to Mr. Few. Deducting over a thousand dollars a year from his paycheck is not insignificant. The deduction is a hardship on Mr. Few and his family that cannot be compensated merely by returning his money with interest. The immediate injury being suffered by Mr. Few's current lack of funds is irreparable at a later date.

The withholding from Mr. Few's paycheck also constitutes irreparable injury

because it is a compelled subsidy that UTLA will use to fund ideological activities Mr. Few objects to. (Decl. of Pl. at ¶ 13.) Such deductions are not simply a matter of money which could be returned with interest at the conclusion of litigation. Rendering a compelled subsidy to be a compelled loan by refunding it at the close of his case would not resolve Mr. Few's injury:

> [E]ven a full refund would not undo the violation of First Amendment rights. . . . [T]he First Amendment does not permit a union to extract a loan from unwilling nonmembers even if the money is later paid back in full.

*Knox*, 567 U.S. at 317.

Long before *Janus* recognized that agency fees were too great an imposition to pass constitutional muster, the Supreme Court put safeguards in place to "avoid the risk that [objecting employees'] funds will be used, even temporarily, to finance ideological activities unrelated to collective bargaining." *Chicago Teachers Union, Local No. 1 v. Hudson,* 475 U.S. 292, 305 (1986). In the public sector context, even bargaining itself inherently implicates political and ideological concerns. See *Janus*, 138 S. Ct. at 2473. "Given the existence of acceptable alternatives, [a] union cannot be allowed to commit dissenters' funds to improper uses even temporarily." *Ellis v. Bhd. of Ry. Employees*, 466 U.S. 435, 444 (1984). The temporary deprivation to which the union claims an entitlement should not be countenanced. "First Amendment values are at serious risk if the government can compel a particular citizen, or a discrete group of citizens, to pay special subsidies for speech on the side that [the government] favors." *United States v. United Foods*, 533 U.S. 405, 429 (2001). The only way to avoid that risk in this case is to enjoin the collection of Mr. Few's dues immediately.

### B. Irreparable injury will result if the union continues to act as Plaintiff's exclusive representative.

Even without access to Mr. Few's money, UTLA would continue to impinge his First Amendment rights by acting as his exclusive representative. As the Supreme Court observed,

> that status gives the union a privileged place in negotiations over wages, benefits, and working conditions. Not only is the union given the exclusive right to speak for all the employees in collective bargaining, but the employer is required by state law to listen to and to bargain in good faith with only that union. Designation as exclusive representative thus 'results in a tremendous increase in the power' of the union.

*Janus*, 138 S. Ct. at 2467 (quoting *American Communications Assn. v. Douds*, 339 U.S. 382, 401 (1950)) (internal citations omitted). Continuing to force Mr. Few to associate with UTLA in this way irreparably denies him the independent voice guaranteed to him by the First Amendment.

California law expressly commands that Mr. Few "shall not meet and negotiate with [his] public school employer." Cal. Gov't Code § 3543. Yet UTLA can commandeer his association to support its view of how teachers should be compensated and promoted, how schools should address employee benefits when faced with budget shortfalls, and what textbooks and curricula students should be taught. Cal. Gov't Code § 3543.2. This infringement on speech is not only personal or professional, it is political: "[i]n the public sector, core issues such as wages, pensions, and benefits are important political issues." *Harris v. Quinn*, 134 S. Ct. 2618, 2632 (2014). In place of Mr. Few's right to express his views, UTLA is licensed to intercede on his behalf and to claim his imprimatur as to any number of topics affecting California's education system.

This infringement is of acute consequence in the present moment, as at the time of this filing UTLA is threatening to go on strike against LAUSD due to a contract dispute. City News Service, *LA teachers union rejects latest contract offer from LAUSD*, Los Angeles Daily News (Nov. 1, 2018), https://www.dailynews.com/2018/11/01/la-teachers-union-rejects-latest-contract-offer-from-lausd/ ("the dispute is now in a "fact-finding" stage, after which the union could call for a walkout"). Mr. Few has no desire for such a strike and would prefer to continue to teach if it occurs. (Few Decl. ¶ 14.) UTLA is fast moving in the opposite direction, yet it claims to represent the views of Mr. Few.

Mr. Few will suffer irreparable injury if he is forced to strike because of his union

membership. Mr. Few fears that the union is driving him into a situation in which he may not get paid for days, weeks, or months, due to a general strike in the district. Worse, he fears the irreparable harm of the loss of his job during a strike if replacement workers are hired. On the other hand, if Mr. Few chooses not to strike, he fears retaliation from his peers or superiors for breaking ranks with the union. Either way, Mr. Few is suffering irreparable injury because UTLA is advocating a position contrary to his beliefs. *Id.*

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). The only solution which gives proper weight to Mr. Few's rights under the constitution is to enjoin the Attorney General from enforcing Cal. Gov't Code § 3543 because it authorizes UTLA to act as Mr. Few's exclusive representative. Such representation should be stopped immediately and for the duration of the case.

### III. The balance of equities in this case favors granting Mr. Few an injunction.
#### A. Enjoining the collections of Mr. Few's dues will not harm defendants.

"[U]nions have no constitutional entitlement to the fees of nonmember-employees." *Davenport v. Wash. Educ. Ass'n*, 551 U.S. 177, 185 (2007). Nor do they have the right to claim the membership of employees who have not provided affirmative consent to opt into that membership. *Janus,* 138 S. Ct. at 2486. Given that the entire risk of constitutional deprivation falls on the employees rather than the union, courts must ask "[w]hich side should bear this risk? The answer is obvious: the side whose constitutional rights are not at stake." *Knox*, 567 U.S. at 321.

As the Supreme Court recognized when considering the pre-*Janus* agency fee regime, "if unconsenting nonmembers pay less than their proportionate share, no constitutional right of the union is violated because the union has no constitutional right to receive any payment from these employees . . . The union has simply lost for a few months the 'extraordinary' benefit of being empowered to compel nonmembers to pay for

services that they may not want and in any event have not agreed to fund." *Knox,* 567 U.S. at 321 (internal citations omitted). The same logic applies here: at most, UTLA can try to claim a contractual right to some dues from Mr. Few. Weighed against Mr. Few's interest in the vindication of his First Amendment rights, UTLA's desire for his dues is insubstantial.

The balance of equities, therefore, favors Mr. Few. Given his significant likelihood of success on the merits, the court should therefore issue a preliminary injunction. And in this case the balance of equities so strongly favors Mr. Few that, under this Circuit's alternative test, the Court should enjoin dues collection even if it believes Mr. Few has only raised a substantial question going to the merits of his claim. *All. for the Wild Rockies*, 865 F.3d at 1217.

      **B.**    **Enjoining the UTLA's status as Mr. Few's exclusive representative will not harm defendants.**

Enjoining UTLA from acting as Mr. Few's exclusive representative will impose no substantial harm on defendants. UTLA will still collect dues from thousands of government workers and will maintain thousands of members. Thus, the balance of equities favors preventing harm to Mr. Few. Given the substantial likelihood that Mr. Few will succeed on the merits, the Court should issue an injunction. And given that the balance of equities here so strongly favors Mr. Few, the Court should issue the injunction under the 9th Circuit's alternative test, even if it feels Mr. Few has raised only a substantial question as to the merits. *All. for the Wild Rockies*, 865 F.3d at 1217.

      **IV.**    **Sustaining Mr. Few's Constitutional rights is in the public interest.**

The enforcement of constitutional rights is, by definition, in the public interest. *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights." (quoting *Sammartano v. First Jud. Dist. Ct*., 303 F.3d 959, 974 (9th Cir. 2002)). Moreover, there is no countervailing private interest in having UTLA continue to collect Mr. Few's dues or to act as his exclusive representative. UTLA rightfully enjoys substantial rights under the

First Amendment to advocate for the issues it cares about. *See Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 364 (2010) (striking down spending limits on union issue advocacy).

It is in the public interest to allow multiple voices and expand free speech when it comes to important policy questions. The public benefits from robust debate on these topics. It will benefit even more if that debate is expanded by allowing Mr. Few to meet and negotiate directly with his employer, which he is currently not permitted to do. Cal. Gov't Code § 3543. The topics on which Mr. Few wishes to meet and negotiate, such as the pay and promotion of teachers, are "fundamental questions of education policy." *Janus*, 138 S. Ct. at 2475. The public benefit of Mr. Few and other non-union members expressing their views directly to LAUSD greatly outweighs whatever small diminution in UTLA's speech might result from the denial of Mr. Few's dues or the right to speak on his behalf.

## CONCLUSION

For the above stated reasons, the motion for preliminary injunction should be granted.

Dated: November 13, 2018

Respectfully submitted,

/s/ Mark W. Bucher
Mark W. Bucher
mark@calpolicycenter.org
CA S.B.N. # 210474
Law Office of Mark W. Bucher
18002 Irvine Blvd., Suite 108
Tustin, CA 92780-3321
Phone: 714-313-3706
Fax: 714-573-2297

/s/ Brian Kelsey
Brian Kelsey (Pro Hac Vice To Be Filed)
bkelsey@libertyjusticecenter.org

Jeffrey M. Schwab (Pro Hac Vice To Be Filed)
jschwab@libertyjusticecenter.org
Senior Attorneys
Liberty Justice Center
190 South LaSalle Street
Suite 1500
Chicago, Illinois 60603
Phone: 312-263-7668
Fax: 312-263-7702

*Attorneys for Plaintiff*