1

2

3

4

5

6

7

8 UNITED STATES DISTRICT COURT

9 CENTRAL DISTRICT OF CALIFORNIA

10

11 GEORGIA BABB, et al.

12        Plaintiffs,

13   vs.

14

15 CALIFORNIA TEACHERS

16 ASSOCIATION, et al.;

17      Defendants.

CASE NO. 8:18-cv-00994-JLS-DFM

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS (Doc. 63)**

18

19 SCOTT WILFORD, et al.

20        Plaintiffs,

21

22   vs.

23

24 NATIONAL EDUCATION

25 ASSOCIATION, et al.;

26      Defendants.

CASE NO. 8:18-cv-1169-JLS-DFM

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS (Doc. 163)**

27     (caption continued on next page)

28

| | |
|---|---|
| 1  TINA MATTHEWS, et al., | CASE NO. 2:18-cv-06793-JLS-DFM |
| 2      Plaintiffs, | |
| 3      vs. | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS (Doc. 27)** |
| 4 | |
| 5  UNITED TEACHERS LOS ANGELES, et al.; | |
| 6 | |
| 7      Defendants. | |
| 8 | |
| 9 | |
| 10  MICHAEL MARTIN, et al., | CASE NO. 2:18-cv-08999-JLS-DFM |
| 11      Plaintiffs, | |
| 12 | **ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS (Docs. 59 & 61)** |
| 13      vs. | |
| 14  CALIFORNIA TEACHERS ASSOCIATION, et al.; | |
| 15 | |
| 16      Defendants. | |
| 17 | |
| 18 | |
| 19 | |
| 20  THOMAS FEW, | CASE NO. 2:18-cv-09531-JLS-DFM |
| 21      Plaintiff, | |
| 22 | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS (Doc. 43)** |
| 23      vs. | |
| 24  UNITED TEACHERS LOS ANGELES, et al; | |
| 25 | |
| 26      Defendants. | |
| 27 | |
| 28 | |

2

The above captioned cases all involve the Supreme Court's decision in *Janus v. AFSCME Council 31*, 138 S. Ct. 2448 (2018) and its effect on public sector unions in California.  Having read and considered the papers and heard oral argument, the Court GRANTS in their entirety the following motions filed by the various Defendants[1] in each case:

- ***Babb v. California Teachers Ass'n***, **No. 8:18-cv-00994-JLS-DFM**: Motion to Dismiss and for Judgment on the Pleadings, and in the Alternative for Summary Judgment (*Babb* Mem., Doc. 63) filed by the California Teachers Association, National Education Association, and United Teachers of Los Angeles;[2]

- ***Wilford v. National Education Ass'n***, **No. 8:18-cv-1169-JLS-DFM**: Motion to Dismiss and for Judgment on the Pleadings, and in the Alternative for Summary Judgment (*Wilford* Mem., Doc. 163) filed by American Federation of Teachers, California Federation of Teachers, California Teachers Association, Certificated Hourly Instructors, Long Beach City College Chapter, Coast Federation of Educators, Local 1911, Community College Association, Exeter Teachers Association, Mt. San Antonio College Faculty Association, Inc., National Education Association, Orange Unified Education Association, Saddleback Valley Educators Association, Sanger Unified Teachers Association, Savanna District Teachers

---

[1] Nearly all of the moving Defendants are teachers' unions.  After identifying the specific unions in each case, the Court will thereafter collectively refer to the teachers' unions as "the Union Defendants."

[2] Plaintiffs Georgia Babb, John J. Frangiamore Jr., William Happ, Aaron Holbrook, Michelle Pecanic-Lee, David Schmus, and Abram van der Fluit opposed (*Babb* Opp., Doc. 77) and the Union Defendants replied (*Babb* Reply, Doc. 78).

Association, and South Orange County Community College District Faculty Association;[3]

- ***Matthews v. United Teachers Los Angeles*, No. 2:18-cv-06793-JLS-DFM**: Motion to Dismiss and for Judgment on the Pleadings, and in the Alternative for Summary Judgment (*Matthews* Mem., Doc. 27) filed by California Teachers Association, National Education Association, San Diego Education Association, and United Teachers Los Angeles;[4]

- ***Martin v. California Teachers Ass'n*, No. 2:18-cv-08999-JLS-DFM:** Motion to Dismiss (*Martin* State Mem., Doc. 59) filed by Eric Banks, Xavier Becerra, Arthur A. Krantz, Erich Shiners, and Priscilla Winslow (the "State Defendants")[5]; Motion to Dismiss (*Martin* Union Mem., Doc. 61) filed by California Teachers Association, National Education Association, and Riverside City Teachers Association;[6] and

- ***Few v. United Teachers Los Angeles*, No. 2:18-cv-09531-JLS-DFM:** Motion to Dismiss Count II (*Few* Mem., Doc. 43) filed by United Teachers Los Angeles.[7]

---

[3] Plaintiffs Scott Wilford, Bonnie Hayhurst, Rebecca Friedrichs, Michael Monge, Harlan Elrich, Jelena Figueroa, and Gene Gray opposed (*Wilford* Opp., Doc. 169) and the Union Defendants replied (*Wilford* Reply, Doc. 170).

[4] Plaintiffs Tina Matthews and Paul Tessaro opposed (*Matthews* Opp., Doc. 33) and the Union Defendants replied (*Matthews* Reply, Doc. 37).

[5] Plaintiffs Lori Bonner, Philip David Glick, Kimberly Jolie, and Michael Martin opposed (*Martin* State Opp., Doc. 79) and the State Defendants replied (*Martin* State Reply, Doc. 85.)

[6] Plaintiffs opposed (*Martin* Union Opp., Doc. 78) and the Union Defendants replied (*Martin* Union Reply, Doc. 87).

[7] Plaintiff Thomas Few opposed (*Few* Opp., Doc. 48) and United Teachers Los Angeles replied (*Few* Reply, Doc. 49.)

# I. **BACKGROUND**

On June 27, 2018, the Supreme Court decided *Janus* and overruled *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977) and its progeny, holding that no form of payment to a union, including agency fees, can be deducted or attempted to be collected from an employee without the employee's affirmative consent. *Janus*, 138 S. Ct. at 2486.

The Plaintiffs in *Babb* are current or former public-school teachers who refused to join teachers' unions because they disapproved of their political advocacy and collective-bargaining activities. (*Babb* Third Amended Complaint ¶¶ 14–20, Doc. 90.) Prior to *Janus*, the Plaintiffs were required to pay agency fees to the unions as a condition of their employment. (*Id.*) *See* Cal. Gov. Code § 3546(a). Plaintiffs allege that the compulsory collection of agency fees violates *Janus*. (*Babb* Third Amended Complaint ¶ 21.) Plaintiffs bring federal claims for relief for violation of the First Amendment pursuant to 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. § 2201, and California state law claims for conversion, trespass to chattels, replevin, unjust enrichment, and restitution. (*Id.* ¶¶ 41–42.) Plaintiffs seek two forms of relief: (1) that compulsory agency fees be declared unconstitutional and enjoined; and (2) that the Union Defendants be required to repay all agency fees they received before *Janus*. (*Id.* ¶ 43 c–j.) The Union Defendants move to dismiss all claims. (*See Babb* Mem. at 1.)

*Wilford* is, for the purposes of the pending motions, identical to *Babb*. The *Wilford* Plaintiffs are also non-union teachers who allege that the compulsory collection of agency fees is unconstitutional after *Janus*. (*Wilford* First Amended Complaint ¶¶ 1–7, 25–29, Doc. 155.) They also bring federal claims for violation of the First Amendment pursuant to § 1983 (*id.* ¶¶ 41–47), and state law claims for conversion (*id.* ¶¶ 48–51) and restitution (*id.* ¶¶ 52–57). Further, as in *Babb*, the *Wilford* Plaintiffs seek an order enjoining the future collection of agency fees (*id.* Demand for Relief ¶ C) and requiring the Union

Defendants to repay all agency fees received prior to *Janus* (*id.* ¶ D).  The Union

Defendants move to dismiss all claims.  (*See Wilford* Mem. at 1.)

*Matthews* is very similar to *Wilford* and *Babb*, as the *Matthews* Plaintiffs are non-union teachers who allege that compulsory collection of agency fees is unconstitutional after *Janus*.  (*Matthews* Complaint ¶¶ 16, 18–19, Doc. 1-1.)  However, the *Matthews* Plaintiffs bring no federal claims for relief, but rather claims for unfair competition under California's Unfair Competition Law ("the UCL") (*id.* ¶¶ 35–45); conversion (*id.* ¶¶ 46–51); trespass to chattels (*id.* ¶¶ 52–57); unjust enrichment (*id.* ¶¶ 58–61); and money had and received (*id.* ¶¶ 62–65).  As with *Babb* and *Wilford*, the *Matthews* Plaintiffs seek to enjoin the future collection of agency fees (*id.* Prayer for Relief ¶ 6) and to order the Union Defendants to repay all agency fees received prior to *Janus* (*id.* ¶ 2).  The Union Defendants move to dismiss all claims.  (*See Matthews* Mem. at 1.)

*Martin* is different from *Matthews*, *Wilford*, and *Babb* in significant respects.  Plaintiffs are public-school teachers who *were* union members prior to *Janus* but resigned thereafter.  (*See Martin* First Amended Complaint at 2–3, Doc. 47.)  The *Martin* Plaintiffs' first claim is, similar to *Babb*, *Wilford*, and *Matthews*, that compulsory collection of agency fees violates the First Amendment.  (*Id.* ¶¶ 15–26.)  Some Plaintiffs allege that they would not have joined the union or would have resigned earlier if not for the agency fee requirement, while others claim that "they were led to believe that union membership was a mandatory condition of their employment" and "were never informed of their constitutional right to quit the union."  (*Id.* ¶¶ 17–19.)  As part of first claim, Plaintiffs seek declaratory and injunctive relief to prevent the future collection of agency fees (*id.* ¶ 84) as well as "refunds equal to the amount of the [agency fees] that [the Union Defendants] extracted from [Plaintiffs] regardless of whether they stayed in the union or resigned" (*id.* ¶ 24).  Plaintiffs' second claim is that their First Amendment rights were violated because, while they were union members, they had to opt out of making a $20 annual payment to the Union Defendants if they did not wish to make the payment.  (*Id.* ¶¶ 27–42.)  Plaintiffs

seek injunctive relief to prevent the Union Defendants from continuing to charge the $20, as well as retrospective relief for the funds paid while they were members.  (*Id.* ¶¶ 39–42.) With their third claim, Plaintiffs challenge the federal and state constitutionality of California Government Code § 3558, which provides for public school employers to share with unions that represent their employees the contact information of bargaining unit employees whom the unions represent, unless the employee has requested that his or her contact information not be shared.  (*Id.* ¶¶ 43–56.)  The fourth claim is asserted only by Plaintiff Martin and alleges that California Education Code § 45060 violates the First Amendment because it provides that a union member must send a letter to the union, rather than to the employer, if the union member wishes to terminate membership dues deductions.  (*Id.* ¶¶ 57–64.)  Plaintiffs' fifth claim alleges that collective bargaining through an exclusive representative violates the First Amendment.  (*Id.* ¶¶ 65–74.)  Finally, the sixth claim is asserted only by Plaintiff Martin and alleges that the collective bargaining agreements between California school districts and the Union Defendants violate federal antitrust laws.  (*Id.* ¶¶ 75–81, 89.)

The Union Defendants move to dismiss all of the *Martin* Plaintiffs' claims except the portion of the second claim that seeks retrospective monetary relief.  (*Martin* Union Mem. at 1.)  Plaintiffs have consented to dismissal of their fifth claim, as well as to dismissal of the prospective portions of their first and second claim.  (*Martin* Union Opp. at 4, 23, 35.)  Further, the State Defendants separately move to dismiss claims one and four.  (*Martin* State Mem. at 1.)

Finally, the Plaintiff in *Few* is a public-school teacher in the Los Angeles Unified School District.  (*Few* First Amended Complaint ¶ 14, Doc. 38.)  Few brings two claims for relief, and United Teachers of Los Angeles seeks to dismiss only his second claim, which alleges that collective bargaining through an exclusive representative violates the First Amendment.  (*See id.* ¶¶ 53–64; *Few* Mem. at 1.)  Few's second claim is identical to the *Martin* Plaintiffs' fifth claim.

On February 13, 2019, the Court granted the California Attorney General's request to intervene in *Wilford*, *Babb*, and *Matthews* to defend the constitutionality of California Government Code § 1159.  (Intervention Order in *Babb*, Doc. 72.)  While the constitutionality of § 1159 is also relevant to *Martin*, the Attorney General was already a party to *Martin*, as noted above.  Pursuant to the Court's Order, the Attorney General filed opening briefs in *Wilford*, *Babb*, *Matthews*, and *Martin*, the Plaintiffs in each case filed a response, and the Attorney General and Union Defendants filed replies.  (*See id.*)  However, the parties essentially filed one set of briefs in *Wilford* and simply incorporated those briefs by reference in their briefs in *Babb*, *Matthews*, and *Martin*.  Thus, for ease of reference, to the extent the Court refers to the briefs filed pursuant to the Intervention Order, the Court will simply refer to the *Wilford* briefs.  (*See* AG Opening Brief, Doc. 174; Plaintiffs' Opposition to AG, Doc. 175; AG Reply, Doc. 180; Union AG Reply, Doc. 181.)

## II. <u>LEGAL STANDARD</u>

In deciding a motion to dismiss under Rule 12(b)(6), courts must accept as true all "well-pleaded factual allegations" in a complaint.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Furthermore, courts must draw all reasonable inferences in the light most favorable to the non-moving party.  *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).  However, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  Although a complaint "does not need detailed factual allegations," the

1  "[f]actual allegations must be enough to raise a right to relief above the speculative level . .

2  . ." *Twombly*, 550 U.S. at 555.  Thus, a complaint must (1) "contain sufficient allegations

3  of underlying facts to give fair notice and to enable the opposing party to defend itself

4  effectively[,]" and (2) "plausibly suggest an entitlement to relief, such that it is not unfair

5  to require the opposing party to be subjected to the expense of discovery and continued

6  litigation."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

7

8  **III.   DISCUSSION**

9

10        First, as is relevant to *Wilford*, *Babb*, *Matthews*, and *Martin*, the Union Defendants

11  argue that the Plaintiffs' claims for prospective relief from the compulsory collection of

12  agency fees are moot because Defendants are fully complying with *Janus* and have no

13  intention of doing otherwise.  (*See Babb* Mem. at 3.)

14        Second, as is relevant to *Wilford*, *Babb*, and *Martin*, the Union Defendants argue

15  that they are entitled to a good-faith defense to Plaintiffs' § 1983 claims for a refund of

16  agency fees because the Union Defendants "received the fees in compliance with

17  California statutes and then-controlling and directly on-point United States Supreme Court

18  precedent that expressly authorized [agency] fees."  (*See Wilford* Mem. at 1.)

19        Third, as is relevant only to *Martin*, the Union Defendants argue that the

20  membership dues the *Martin* Plaintiffs paid while union members were voluntarily paid

21  and thus not compelled pursuant to *Janus*.  (*Martin* Union Mem. at 8.)

22        Fourth, as is relevant to *Wilford*, *Babb*, *Matthews*, and *Martin* the Union Defendants

23  argue that the Plaintiffs' state law claims are preempted by the Educational Employment

24  Relations Act ("EERA") and California Government Code § 1159.  (*See Wilford* Mem. 11,

25  13.)

26        Fifth, as is relevant only to *Martin*, the Union Defendants argue that Government

27  Code § 3558, which requires school districts to disclose all of their employees' contact

28

1  information to the Union Defendants, does not violate the First Amendment. (*Martin*

2  Union Mem. at 22.)

3       Sixth, as is relevant only to *Martin*, the Union and State Defendants argue that

4  Martin does not have standing to challenge Education Code § 45060, which requires

5  employees to direct their resignation requests to the union, rather than their employers,

6  because his resignation has already been processed. (*Martin* Union Mem. at 30; *Martin*

7  State Mem. at 7.)

8       Seventh, as is relevant only to *Martin*, the Union Defendants argue that Martin's

9  antitrust claim must be dismissed because, for multiple reasons, the "purportedly

10  anticompetitive conduct here falls entirely outside the scope of federal antitrust law."

11  (*Martin* Union Reply at 13.)

12       Finally, as is relevant only to *Few*,[8] United Teachers Los Angeles argues that Few's

13  claim that exclusive representation violates the First Amendment is foreclosed by

14  *Minnesota State Board for Community Colleges v. Knight*, 465 U.S. 271 (1984). (*Few*

15  Mem. at 6.)

16

17  **A. Mootness of Claims for Prospective Relief (*Babb*, *Wilford*, *Martin*, and**

18      ***Matthews*)**

19

20       This Court has twice held that claims for prospective relief to prevent the collection

21  of agency fees post-*Janus* are moot. *See Yohn v. California Teachers Ass'n*, Case No.

22  SACV 17-202-JLS-DFM, 201 8 WL 5264076 (C.D. Cal. Sept. 28, 2018); *Babb v.*

23  *California Teachers Ass'n*, Case No. 8:18-cv-00994-JLS-DFM, 2018 WL 7501267 (C.D.

24  Cal. Dec. 7, 2018) (dismissing claims for prospective relief against state defendants as

25  _____

26       [8] As noted above, although the *Martin* Plaintiffs bring an identical claim, they consent to its

27  dismissal pursuant to *Knight*. (*Martin* Union Opp. at 35.)

28

1    moot).  The claims for prospective relief in *Wilford*, *Babb*, *Matthews*, and *Martin* are

2    indistinguishable, and the Union Defendants have again submitted declarations attesting to

3    their commitment to no longer enforce California Government Code § 3546 and to fully

4    comply with *Janus*.[9]  Indeed, the *Martin* Plaintiffs admit that their claims for prospective

5    relief are moot "in light of the [Union Defendants'] demonstrated compliance with *Janus*

6    and their iron-clad promise to comply with *Janus* going forward."  (*Martin* Union Opp. at

7    4.)  Further, every other district court to consider this issue has found claims for

8    prospective relief moot after *Janus*.  *See, e.g.*, *Cook v. Brown*, 364 F. Supp. 3d 1184, 1188

9    (D. Or. 2019); *Carey v. Inslee*, 364 F. Supp. 3d 1220, 1225–27 (W.D. Wash. 2019);

10   *Danielson v. Inslee*, 345 F. Supp. 3d 1336, 1339–40 (W.D. Wash 2018).

11        Accordingly, the Union Defendants' Motions to Dismiss the Plaintiffs' claims for

12   prospective relief are GRANTED.[10]

13

14   **B.  Section 1983 Good-Faith Defense (*Babb*, *Wilford*, and *Martin*)**

15

16        "The threshold question of whether the good faith defense is available to private

17   parties in § 1983 actions has been answered affirmatively by the Ninth Circuit."  *Cook v.*

18   *Brown*, 364 F. Supp. 3d at 1190.  In *Clement v. City of Glendale*, 518 F.3d 1090 (9th Cir.

19   2008), the court held that the defendant towing company could assert a good faith defense

20

21

22        [9] *See* Pan Decl. in *Babb* ¶¶ 3–4, 7–10, Doc. 63-9; Mar Decl. in *Babb* ¶¶ 4–15, Doc. 63-6; Pan
      Decl. in *Wilford* ¶¶ 3–4, 7–10, Doc. 163-8; Schneiderman Decl. in *Wilford* ¶¶ 2–6,  Doc. 163-6;

23   Pan Decl. in *Matthews*  ¶¶ 3–4, 7–10, Doc. 27-5; Mar Decl. in *Matthews* ¶¶ 4–15, Doc. 27-8; Pan
      Decl. in *Martin*  ¶¶ 3–4, 7–10, Doc. 61-7.

24

25        [10] The *Wilford* Plaintiffs suggest that their refunds for fees paid prior to *Janus* for post-*Janus*
      pay periods were incorrectly calculated.  (*See Wilford* Opp. at 3–4.)  The Pan Reply Declaration

26   (Doc. 170-1) appears to answer their questions regarding the refund process, and regardless,
      whether the refunds were properly calculated is "not properly before the Court."  *See Lamberty v.*

27   *Conn. St. Police Union,* No. 3:15-CV-378 (VAB), 2018 WL 5115559, at *9 (D. Conn. Oct. 19,
      2018).

28

1 to § 1983 liability where the plaintiff alleged that the towing company unconstitutionally

2 seized her vehicle without notice.  *Id.* at 1097.  *Clement* "acknowledged that the Supreme

3 Court in *Wyatt v. Cole* and again in *Richardson v. McKnight* had held open whether private

4 defendants could avail themselves of the good faith defense in a § 1983 action." *Cook*,

5 364 F. Supp. 3d at 1190–91 (citing *Clement*, 518 F.3d at 1096–97; *Wyatt v. Cole*, 504 U.S.

6 158, 169 (1992) ("[W]e do not foreclose the possibility that private defendants faced with

7 § 1983 liability . . . could be entitled to an affirmative defense based on good faith.");

8 *Richardson v. McKnight*, 521 U.S. 399, 413–14, (1997) ("*Wyatt* explicitly stated that it did

9 not decide whether or not the private defendants before it might assert, not immunity, but a

10 special 'good-faith' defense . . . we do not express a view on this last-mentioned

11 question.")).  *Wyatt* recognized that "principles of equity and fairness may suggest . . . that

12 private citizens who rely unsuspectingly on state laws they did not create and may have no

13 reason to believe are invalid should have some protection from liability."  504 U.S. at 168.

14   In *Clement*, the Ninth Circuit held that "the facts of this case justify allowing [the

15 towing company] to assert such a good faith defense."  *Clement*, 518 F.3d at 1097.

16 Specifically, the court noted that the towing company "did its best to follow the law" and

17 that the "tow was authorized by the police department, conducted under close police

18 supervision and appeared to be permissible under both local ordinance and state law."  *Id.*

19 Further, "[a]lthough not entirely consistent in their approaches, every circuit court to

20 address the question has held that some type of good faith defense is available to private

21 parties sued for constitutional violations."  *Carey*, 364 F. Supp. 3d at 1228 (citing *Pinsky v.*

22 *Duncan*, 79 F.3d 306, 311–12 (2d Cir. 1996); *Vector Research, Inc. v. Howard & Howard*

23 *Attorneys, P.C.*, 76 F.3d 692, 698–99 (6th Cir. 1996); *Jordan v. Fox, Rothschild, O'Brien*

24 *& Frankel*, 20 F.3d 1250, 1275–78 (3d Cir. 1994)).

25   On indistinguishable facts, every district court to consider whether unions that

26 collected agency fees prior to *Janus* have a good-faith defense to § 1983 liability have

27 answered in the affirmative.  *See, e.g.*, *Danielson v. AFSCME Council 28*, 340 F. Supp. 3d

28

1083, 1084–87 (W.D. Wash. 2018); *Cook*, 364 F. Supp. 3d at 1190–94; *Carey*, 364 F. Supp. 3d at 1227–1233; *Crockett v. NEA-Alaska*, 3:18-CV-00179 JWS, 2019 WL 1212082, at *3–6 (D. Alaska March 14, 2019); *Janus v. AFSCME Council 31*, Case No. 15 C 1235, 2019 WL 1239780, at *1–3 (N.D. Ill. March 18, 2019); *Hough v. SEIU Local 521*, No. 18-CV-04902-VC, 2019 WL 1785414 (N.D. Cal. Apr. 16, 2019); *Lee v. Ohio Education Association, et al.*, No.1:18CV1420, 2019 WL 1323622, *2–3 (N.D. Ohio Mar. 25, 2019).  The Court finds these courts' reasoning persuasive and applicable here.

The Union Defendants argue that they collected agency fees from Plaintiffs "at a time when California [statutes] and controlling U.S. precedent expressly allowed the collection of such fees."  (*See Babb* Mem. at 9.)  Indeed, this Court has acknowledged that "prior to *Janus*, [the Unions] were merely following the 40-year-precedent of *Abood*." *Yohn*, 2018 WL 5264076, at *4.  Plaintiffs argue that the good-faith defense should not apply because: (1) the most analogous common law tort to their § 1983 claims, conversion, rejects any consideration of the tortfeasor's state of mind; (2) the good-faith defense extends only to individuals and not entities; (3) Union Defendants cannot establish good faith unless they present evidence of their subjective states of mind; (4) the Union Defendants must prove that they complied with *Abood* to avail themselves of the good-faith defense; (5) the good-faith defense is inapplicable to claims for equitable relief such as backpay, restitution, and unjust enrichment; and (6) they are seeking the return of unconstitutionally seized property (the agency fees they paid prior to *Janus*) and not "collateral" damages stemming from the seizure.  (*See Babb* Opp. at 1–2.)

### 1.  Common Law Tort Analogy

Plaintiffs argue that *Wyatt* "compels courts to look to the most analogous common-law tort, and it allows courts to recognize a defense only if that tort would have conferred similar immunities when section 1983 was enacted."  (*Babb* Opp. at 3–4.)  Plaintiffs claim

1    that "[t]he common-law tort most analogous to the union's unconstitutional confiscation of

2    wages is conversion, and conversion is a strict-liability tort that is unconcerned with

3    whether the defendant acted in good faith." (*Id.* at 4.) Plaintiffs' argument fails for a

4    number of reasons.

5         First, as the Union Defendants note, the portion of *Wyatt* from which Plaintiffs

6    derive their "rule" dealt with *immunity* from § 1983 liability, not the good-faith defense.

7    (*See Babb* Reply at 4.) *See Wyatt*, 504 U.S. at 164 ("If parties *seeking immunity* were

8    shielded from tort liability when Congress enacted [§ 1983] we infer from legislative

9    silence that Congress did not intend to abrogate such *immunities* when it imposed liability

10   for actions taken under color of state law.") (emphasis added); *see also Carey*, 364 F.

11   Supp. 3d at 1229 ("[W]hile [*Wyatt*] did discuss common law analogues in dicta, that

12   discussion was largely in reference to the history of qualified immunity.")

13        Second, "Plaintiffs' construction of the good faith defense lacks precedent in the

14   Ninth Circuit." *Danielson*, 340 F. Supp. 3d at 1086. *Clement* gives no indication that

15   courts must analyze a common law analogue to apply the good-faith defense. *See*

16   *Clement*, 518 F.3d at 1097. Further, "[i]nsofar as courts have analyzed the common law

17   analogue to a plaintiff's § 1983 claim, none have done so to bar the good faith defense."

18   *Carey*, 364 F. Supp. 3d at 1229–30 (citing *Pinsky*, 79 F.3d at 312 (discussing *Wyatt* and

19   finding that the § 1983 claim was analogous to malicious prosecution)); *Franklin v. Fox*,

20   No. C 97-2443 CRB, 2001 WL 114438, at *6 (N.D. Cal. Jan. 22, 2001) (noting that the

21   claim for violation of the Sixth Amendment right to counsel "is not easily analogized to

22   the common law torts of malicious prosecution or abuse of process" for purposes of

23   determining which party bears the burden but applying the good faith defense anyway)).[11]

24

25   _____

26       [11] Plaintiffs' proposed rule also fails "because affirmative defenses need not relate to or rebut
27   specific elements of an underlying claim." *Cook*, 364 F. Supp. 3d at 1191 (citing *Jarvis v. Cuomo*,
     660 F. Appx. 72, 75–76 (2d Cir. 2016)).

28

Third, even assuming "the 'common law analogue' requirement from *Wyatt* does apply, conversion is not the most closely analogous common law claim." *Danielson*, 340 F. Supp. 3d at 1086. Indeed, conversion "does not account for the fact that Plaintiffs' constitutional claim is rooted in the First Amendment." *Carey*, 364 F. Supp. 3d at 1230. "Conversion involves taking another's property, regardless of intent, whereas the gravamen of the First Amendment claim in this case is that the Union Defendant[s] expended compelled agency fees on political and ideological activities that Plaintiffs oppose." *Danielson*, 340 F. Supp. 3d at 1086. In other words, Plaintiffs' First Amendment claim turns not upon the Union Defendants' receipt of Plaintiffs' property, but upon the dignitary harm resulting from being compelled to support speech with which they disagree. *See id.* Thus, the Court agrees with the other courts that have held that Plaintiffs' claims are most similar to dignitary torts, such as defamation, or to abuse of process because the Union Defendants used government processes to collect agency fees. *Id.*; *Carey*, 364 F. Supp. 3d at 1230; *Cook*, 364 F. Supp. 3d at 1191; *Crockett*, 2019 WL 1212082, at *5. "Because these torts do have scienter requirements," even under Plaintiffs' proposed rule, the good-faith defense is available to the Union Defendants. *Carey*, 364 F. Supp. 3d at 1230.

## 2. Application of Good-Faith Defense to Entities

Plaintiffs next argue that the good-faith defense applies only to individuals, not entities such as the Union Defendants. (*See Babb* Opp. at 9.) Plaintiffs again conflate qualified immunity with the good-faith defense and argue that because qualified immunity applies only to individual officials, not government entities, the Union Defendants cannot avail themselves of the good-faith defense. (*Id.* at 9–10.) However, the controlling case law in this Circuit – *Clement* – allowed a private towing company to assert the good-faith defense. *See* 518 F.3d at 1097. Accordingly, the Court rejects Plaintiffs' argument.

15

1

    **3.  Subjective Belief**

2

3        Plaintiffs next argue that, if the good-faith defense applies, the Union Defendants

4  have the burden to show their subjective state of mind, and Plaintiffs should be given the

5  opportunity for discovery on this issue.  (*Babb* Opp. at 14.)  Further, Plaintiffs argue that

6  the Union Defendants cannot rely on *Abood* to establish their belief that agency-fee

7  collection was lawful because the Supreme Court issued "warnings" that collecting agency

8  fees was "constitutionally dubious."  (*Id.* at 16.)  *See also Janus*, 138 S. Ct. at 2485

9  ("[A]ny public-sector union seeking an agency-fee provision in a collective-bargaining

10  agreement must have understood that the constitutionality of such a provision was

11  uncertain.")  Indeed, as *Danielson* notes, "the subjective state of mind of a party asserting

12  good faith is a common inquiry in cases discussing the defense."  340 F. Supp. 3d at 1086;

13  *see Clement*, 518 F.3d at 1097 (concluding that towing company "did its best to follow the

14  law and had no reason to suspect that there would be a constitutional challenge to its

15  actions").

16        Although the Supreme Court may have hinted in dicta that it would eventually

17  overrule *Abood*, "reading the tea leaves of Supreme Court dicta has never been a

18  precondition to good faith reliance on governing law."  *Cook*, 364 F. Supp. 3d at 1192.

19  For the 40 years prior to *Janus*, agency fee collection was constitutional pursuant to

20  *Abood*.  Thus, "[a]ny subjective belief [the Union Defendants] could have had that [*Abood*]

21  was wrongly decided and should be overturned would have amounted to telepathy."

22  *Danielson*, 340 F. Supp. 3d at 1086.  Further, even assuming that the Union Defendants

23  did expect *Abood* to be overruled, "such an expectation cannot produce subjective belief in

24  unconstitutionality when [they are] also aware that the prior holding has not been

25  overruled."  *Carey*, 364 F. Supp. 3d at 1229.  Moreover, in the qualified immunity context,

26  state officials are entitled to rely on Supreme Court precedent even if that precedent's

27  reasoning has been questioned; applying a higher standard to private individuals would be

28

1   inequitable.  *See Cook*, 364 F. Supp. 3d at 1193 (citing *Davis v. United States*, 564 U.S.

2   229, 241 (2011) (declining to apply exclusionary rule to evidence generated in searches

3   that were consistent with then-binding case law because police were entitled to rely on that

4   precedent, even though its reasoning had been questioned); *Pinsky*, 79 F.3d at 313 ("[I]t is

5   objectively reasonable to act on the basis of a statute not yet held invalid.")); *see also*

6   *Wyatt*, 504 U.S. at 168 (finding that good-faith defense is based on "principles of equity

7   and fairness").

8        Thus, the Court concludes that the Union Defendants need not produce evidence of

9   their subjective belief that agency fee collection was constitutional.

10

11       **4. Compliance with *Abood***

12

13       Next, Plaintiffs argue that the Union Defendants must prove that they complied

14   with *Abood* in order to assert a good-faith defense and that Plaintiffs are entitled to take

15   discovery on this issue.  (*Babb* Opp. at 20.)  The Union Defendants argue that Plaintiffs

16   have not alleged that they failed to comply with *Abood* and, regardless, a claim "that [the

17   Union Defendants] received fees not permitted by *Abood* would be a different claim on

18   behalf of a different class."  (*Babb* Reply at 12.)

19       The Court agrees with the other district courts that have found this argument

20   unavailing.  *See Crockett*, 2019 WL 1212082, at *6; *Carey*, 364 F. Supp. 3d at 1232.

21   Here, just as in *Carey*, the *Babb* Plaintiffs have amended their Second Amended

22   Complaint to "re-state the legal argument contained in their Opposition brief."  364 F.

23   Supp. 3d at 1232.  (*See Babb* Third Amended Complaint ¶ 29.)  However, even with the

24   amendment, the *Babb* Plaintiffs still do not allege that the Union Defendants failed to

25   comply with *Abood*.  (*See Babb* Third Amended Complaint ¶ 29 ("[The Union

26   Defendants' must [] show that they complied with pre-*Janus* case law.")  Further, even if

27

28

17

they had alleged failure to comply, the Third Amended Complaint provides no facts to support such an allegation.

In short, Plaintiffs' lawsuits are not about whether the Union Defendants complied with *Abood*. Thus, "[t]heir argument that discovery is needed on a different claim for different relief on a different class before the court can apply the good-faith defense simply does not track." *Crockett*, 2019 WL 1212082, at *6.

### 5. Application to Equitable Claims

Plaintiffs also argue that the good-faith defense does not apply to their equitable claims for relief. (*Babb* Opp. at 22.) Plaintiffs again rely on cases involving qualified immunity, not the good-faith defense, for this argument. (*Id.*) Even assuming the rule from qualified immunity cases applies to the good-faith defense, "[a] plaintiff may not circumvent qualified immunity or the good faith defense simply by labeling a claim for legal damages as one for equitable restitution." *Carey*, 364 F. Supp. at 1232 (citing *Lenea v. Lane*, 882 F.2d 1171, 1178–79 (7th Cir. 1989) ("Regardless of what label is placed on the monetary relief which Lenea wants, 'equitable' or 'legal damages,' it remains a personal monetary award out of the official's own pocket.")).

The Court agrees with *Crockett* and *Carey*, both of which concluded that Plaintiffs' demand that the Union Defendants "refund" their agency fee payments sounds in law, not equity. The Plaintiffs' agency fees "paid for [the] ongoing costs of representation" and "[t]here is no segregated fund to which Plaintiffs' payments can now be traced, and therefore any relief would be paid from the Union Defendants' general assets." *Crockett*, 2019 WL 1212082, at *5. A "personal claim against the defendant's general assets . . . is a *legal* remedy, not an equitable one." *Id.* (quoting *Montanile v. Board of Trustees*, 136 S. Ct. 651, 658 (2016)).

### 6.  Return of Unconstitutionally Seized Property

Finally, Plaintiffs argue that the monetary relief they seek is qualitatively different from what they term "collateral damages" and more akin to the return of unconstitutionally seized property.  As such, Plaintiffs argue that a good faith defense is unavailable, and that *whenever* property is unconstitutionally taken, even if in good-faith reliance on a long-standing decision of the United States Supreme Court, it must be returned.  (*See Martin* Opp. at 1.)  Although mentioned only briefly in their Opposition (*id.*), at oral argument, Plaintiffs relied on *Harper v. Virginia Department of Taxation*, 509 U.S. 86 (1993) for support.  *Harper* announced the general rule that "[w]hen this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect." *Id.* at 97.  This rule is of no assistance to Plaintiffs in the present context; in arguing a good faith defense to a § 1983 claim, the Union Defendants assume, without conceding, that *Janus* applies retroactively.

The question here – one not addressed by *Harper* −is whether Union Defendants are precluded from asserting a good faith defense in this context, where Plaintiffs made payments for agency fees later determined to be unconstitutional.  For the most part, the cases Plaintiffs cite have nothing to say about a good faith defense to a § 1983 claim.  More significantly, the cases cited involve the return of discrete and identifiable property, not a refund of fees paid.  *See, e.g.*, *Wyatt v. Cole*, 994 F.2d 1113, 1115 (5th Cir. 1993) (involving § 1983 damages from unconstitutional seizure of cattle); *Clement*, 518 F.3d at 1090 (involving § 1983 damages from unconstitutional seizure of vehicle); *United States v. Rayburn House Office Building Room 2113 Washington DC 20515*, 497 F.3d 654, 656 (D.C. Cir. 2007) (ordering return of documents seized from a congressman's office in violation of the Speech and Debate clause despite good faith reliance on search warrant).  In that sense, Plaintiffs' argument here is a refrain of their claim that the most analogous state law claim is one for conversion; a wrong for which the remedy might be replevin –

the return of the specifically stolen property.  As the Court noted above, that is not the gist of this case.  It cannot be overlooked that the pre-*Janus* regime consisted of an obligation by the Plaintiffs to pay fees to the Union Defendants, and a concomitant obligation by the Union Defendants to use those fees to bargain on Plaintiffs' behalf.  While the Supreme Court has determined that such an arrangement violated Plaintiffs' First Amendment rights, it is not the case that the agency fees remain in a vault, to be returned like a seized automobile.  As the Union Defendants cannot retract their performance on this implied contract, it would be inequitable to force them to repay Plaintiffs' agency fees.

In short, the cases before the Court present a fundamentally different issue than those cited by the Plaintiffs.  The Union Defendants did not merely rely on a presumptively valid state statute; they relied on the 40-year-precedent of *Abood*.  The Court agrees with the Honorable Judge Chhabria who noted, "there is a strong argument that when the highest judicial authority has previously deemed conduct constitutional, reversal of course by that judicial authority should never, as a categorical matter, result in retrospective monetary relief based on that conduct."  *Hough*, 2019 WL 1785414, at *1.

Accordingly, the Court rejects all of Plaintiffs' arguments against application of the good-faith defense.  The Court agrees with every other district court to have decided this question and concludes that "[t]he good faith defense should apply here as a matter of law."  *Danielson*, 340 F. Supp. 3d at 1086.  Thus, the *Babb*, *Wilford*, and *Martin* Plaintiffs' § 1983 claims are DISMISSED WITH PREJUDICE.

## C. Voluntariness of Membership Dues (*Martin*)

As noted above, the *Martin* Plaintiffs were dues-paying members of their respective unions prior to *Janus*.  They seek recovery of an amount equal to the agency fees that non-members were required to pay based on the theory that they "chose to join the union and pay the *difference* between full membership dues and [agency fees] that they would have

1  otherwise paid." (*Martin* Union Opp. at 5.)  Essentially, though the *Martin* Plaintiffs did

2  not actually pay agency fees, they argue that such fees were subsumed within their

3  membership dues.  (*Id.*)  Thus, "they had no choice in whether to pay the mandatory

4  portion of the dues that was imposed on every member of their bargaining unit."  (*Id.*)

5       First, because the Court concludes that the Union Defendants have a good-faith

6  defense to retroactive monetary relief based on *Janus*, the *Martin* Plaintiffs' claim fails as

7  a matter of law.  Further, the Court agrees with *Crockett*, which held that an

8  indistinguishable claim failed.  *See* 2019 WL 1212082, at *7.  In short, the *Martin*

9  Plaintiffs voluntarily chose to pay membership dues in exchange for certain benefits, and

10 "[t]he fact that plaintiffs would not have opted to pay union membership fees if *Janus* had

11 been the law at the time of their decision does not mean their decision was therefore

12 coerced." *Id.*

13

14      **D.  State Law Claims for Refund of Agency Fees (*Wilford*, *Babb*, *Matthews*, and**

15           **_Martin_)**

16

17           **1.  EERA Preemption**

18

19       First, the Union Defendants argue that Plaintiffs' state law claims for relief are

20 preempted by the Educational Employment Relations Act ("EERA"), which "completely

21 displaced any common law claims related to the collection of [agency fees]."  (*Wilford*

22 Mem. at 11–13.)

23       The EERA expressly authorizes the collection of agency fees.  Cal. Gov. Code

24 §§3543(a), 3546(a); *see Cumero v. Public Employment Relations Bd.*, 49 Cal. 3d 575, 587

25 (1989) ("EERA . . . contains provisions expressly. . . allowing . . . for compulsory

26 nonmember service fees").  Challenges to agency fees, even on constitutional grounds, are

27 subject to the Public Employment Relations Board's ("PERB") exclusive jurisdiction.  *See*

28

1    *Link v. Antioch Unified School Dist.*, 142 Cal. App. 3d 765, 769 (1983) ("Looking beyond

2    the constitutional label given to plaintiffs' grievances herein, the substance of conduct

3    complained of may also constitute unfair practices which arguably could be resolved by a

4    PERB ruling." (internal citation omitted)).  The California Supreme Court has held that

5    EERA broadly preempts state tort claims that allege conduct that is even "arguably

6    protected or prohibited under EERA."  *El Rancho Unified School Dist. v. Nat'l Educ.*

7    *Ass'n*, 33 Cal.3d 946, 960 (1983).  "[W]hat matters is whether the underlying conduct on

8    which the suit is based – however described in the complaint – may fall within PERB's

9    exclusive jurisdiction."  *Id.* at 954 n.13.

10            In *Crockett*, the court found that the plaintiffs' state law claims (indistinguishable

11   from those asserted here) failed as a matter of law "because there can be no common law

12   liability for conduct authorized by state statute."  2019 WL 1212082, at *7.  *Crockett*

13   involved Alaska's version of the EERA and PERB, but the Court finds *Crockett*'s

14   reasoning persuasive and applicable here.  "*Janus* does not change the fact that [the

15   EERA] displaced any state common law tort claims that could have been brought with

16   regard to [agency fees] collected prior to *Janus*."  *Id.* at *7.  Plaintiffs argue that "statutes

17   authorizing the collection of agency fees are to be treated as though they never existed."

18   (*Babb* Opp. at 24.)  However, the Court "cannot ignore the fact that the Union Defendants'

19   collection of [agency fees] prior to *Janus* was authorized by state statute that was

20   constitutional under controlling precedent.  The court cannot now go back and impose tort

21   liability under common law for that conduct."  *Crockett*, 2019 WL 1212082, at *8.

22            Plaintiffs also argue unpersuasively that EERA does not encompass their state law

23   claims.  (*See Wilford* Opp. at 12.)  Plaintiffs argue that their state law claims require the

24   Court to determine "the proper ownership of the money the Unions received from the

25   Plaintiffs," whereas "PERB would consider whether the collection of fees constituted an

26   unfair practice, which is wholly unrelated to ownership."  (*Id.* at 13.)  However, *Link*

27   rejected this precise argument and concluded that the claims were preempted because "the

28

substance of conduct complained of may also constitute unfair practices which arguably could be resolved by a PERB ruling." *Link*, 142 Cal. App. 3d at 769. Plaintiffs' citations to *San Lorenzo Education Association v. Wilson*, 32 Cal. 3d 841 (1982) and *California Association of Professional Scientists v. Schwarzenegger*, 137 Cal. App. 4th 371 (2006) ("CAPS") are inapposite and unavailing. In *San Lorenzo*, no preemption was found because PERB does not have jurisdiction over disputes arising from contracts between unions and public employers. *See* 32 Cal. 3d at 853 ("[A]t issue is whether the union, under the terms of the collective bargaining agreement, can file a civil suit against a noncomplying employee."). In *CAPS*, the plaintiffs' claim was that a state law "impermissibly conflicts with the terms of the [collective bargaining agreement] and therefore violates the state and federal constitutional prohibitions against impairing the obligations of contracts." 137 Cal. App. 4th at 381. As the Union Defendants note, the California courts have concurrent jurisdiction with PERB over breach of collective bargaining agreement claims pursuant to California Labor Code § 1126. *See Fresno Unified Sch. Dist. v. Nat'l Educ. Assn.*, 125 Cal. App. 3d 259, 274 (1981) ("[A]s to the contract cause of action the trial court had concurrent jurisdiction pursuant to Labor Code section 1126.").

Accordingly, the Court concludes that Plaintiffs' common law tort claims are preempted by the EERA.

### 2.  Government Code § 1159

Furthermore, even assuming that Plaintiffs' claims are not preempted by the EERA, the Court concludes that Government Code § 1159 is an independent and adequate grounds upon which to dismiss Plaintiffs' state law claims.

Enacted on September 14, 2018, and effective immediately, California Government Code § 1159 provides:

(a) The Controller, a public employer, an employee organization, or any of their employees or agents, shall not be liable for, and shall have a complete defense to, any claims or actions under the law of this state for requiring, deducting, receiving, or retaining agency or fair share fees from public employees, and current or former public employees shall not have standing to pursue these claims or actions, if the fees were permitted at the time under the laws of this state then in force and paid, through payroll deduction or otherwise, prior to June 27, 2018.

(b) This section shall apply to claims and actions pending on its effective date, as well as to claims and actions filed on or after that date.

(c) The enactment of this section shall not be interpreted to create the inference that any relief made unavailable by this section would otherwise be available.

Cal. Gov. Code § 1159(a)–(c).

The purpose of § 1159 is explicit: "to provide certainty to public employers and employee organizations that relied on state law, and to avoid disruption of public employee labor relations, after the Supreme Court's decision in [*Janus*]." *Id.* §1159(e)(2). Further, § 1159 declares that "[a]pplication of this section to pending claims and actions clarifies existing state law rather than changes it." *Id.* § 1159(e)(1). "Public employees who paid agency or fair share fees as a condition of public employment in accordance with state law and Supreme Court precedent prior to June 27, 2018, had no legitimate expectation of receiving that money under any available cause of action." *Id.* Thus, "[a]pplication of this section to pending claims will preserve, rather than interfere with, important reliance interests." *Id.*

Because § 1159 clearly precludes their state law claims for relief, Plaintiffs argue primarily that it is unconstitutional in that its retroactive application violates their due process rights. (*See Wilford* Opp. at 18.) Plaintiffs also briefly argue that § 1159 effectuates an unlawful taking; violates the California Constitution's single-subject rule; and violates the "separation of powers" doctrine. (*See* Plaintiffs' Opp. to AG at 14–17.) The Court addresses each issue below.

### i.   Due Process

In both federal and California due process analysis, the threshold question in determining retroactive application is whether the legislation changed or clarified the law. *See McClung v. Emp't Dev. Dept.*, 34 Cal. 4th 467, 471 (2004); *Beverly Community Hosp. Ass'n v. Belshe*, 132 F.3d 1259, 1265 (9th Cir. 1997).  "A statute that merely clarifies, rather than changes, existing law does not operate retrospectively even if applied to transactions predating its enactment because the true meaning of the statute remains the same."  *McClung*, 34 Cal. 4th at 471 (internal alterations and quotations removed); *see also Beverly*, 132 F. 3d at 1265 (explaining that whether statute clarifies or changes the law is a "key threshold issue" and that there would be retroactive application issues only if the statute changed the law).

Here, the California legislature was explicit that § 1159 "clarifies existing state law rather than changes it," because "[p]ublic employees who paid agency or fair share fees as a condition of public employment in accordance with state law and Supreme Court precedent prior to [*Janus*], had no legitimate expectation of receiving that money under any available cause of action."  § 1159(e)(1).  As the Union Defendants note, at the time agency fees were collected, the Unions could not be held liable under any state law theory for collection of such fees, and § 1159 merely reinforces this point.  (*Wilford* Reply at 12.)  "A clarified law is simply a statement of what the law has always been."  *In re Marriage of Walker*, 138 Cal. App. 4th 1408, 1426 (2006).  Further, although "a legislative declaration of an existing statute's meaning is neither binding nor conclusive on the courts in construing the statute," the Court may give "due consideration to the Legislature's views."  *Id.*; *see also Beverly*, 132 F.3d 1265–66 (deferring to legislature's description of legislation as a "clarification").   In response, Plaintiffs argue that, if it were true that § 1159 merely clarified the law and they could not pursue their state law claims even in its absence, § 1159 is "superfluous."  (*See Wilford* Opp. at 19.)  However, clarifying statutes can be

1   "remedial in nature and intended by the Legislature to be applied at the earliest possible

2   time, including application to all cases not then finally decided."   *City of Redlands v.*

3   *Sorensen*, 176 Cal. App. 3d 202, 212 (1985).

4          Thus, the Court concludes that §1159 merely clarifies rather than changes the law.

5   However, even assuming that § 1159 changes the law, Plaintiffs' procedural and

6   substantive due process arguments fail under California and federal law, as discussed

7   below.

8

9                  **a.   State and Federal Procedural Due Process**

10

11          Under both the federal and state constitutions, when a law "creates a substantive

12   rule of law granting immunity to certain parties against certain types of claims . . . 'the

13   legislative determination provides all the process that is due.'"   *Illeto v. Glock, Inc.*, 565

14   F.3d 1126, 1142 (9th Cir. 2009) (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422,

15   433 (1982)); *see also Jenkins v. County of L.A.*, 74 Cal. App. 4th 524, 537 (1999)

16   (rejecting federal and state due process challenges to retroactive application of a statute

17   barring certain negligence claims and explaining that "the legislative determination

18   provides all the process that is due" (quoting *Logan*, 455 U.S. at 433)).   Plaintiffs argue

19   against the application of *Illeto* to no avail.   They rely on *Logan* and related California

20   cases to argue that "a plaintiff must be given some opportunity to present her claim.

21   Section 1159 violates this principle by purporting to cut off Plaintiffs' rights of action with

22   no opportunity to present them."   (*Wilford* Opp. at 23.)

23          However, *Logan* and the California cases upon which Plaintiffs rely involved

24   changing the procedures through which a plaintiff could pursue his or her claims, not

25   creating a substantive rule of law granting immunity to certain parties against certain types

26   of claims, as is the case here.   For example, *Logan* examined whether a change in a state

27   administrative agency's procedures comported with due process.   As *Illeto* noted, *Logan*

28

"explicitly limited its holding to 'a procedural limitation on the claimant's ability to assert his rights, not a substantive element of the [underlying] claim.'" *Illeto*, 565 F.3d at 1142 (quoting *Logan*, 455 U.S. at 433) (alteration in original). Indeed, *Logan* noted that "the State remains free to create substantive defenses or immunities for use in adjudication—or to eliminate its statutorily created causes of action altogether," and in such cases "the legislative determination provides all the process that is due." *Logan*, 455 U.S. at 432–33.[12] Here, if § 1159 changes the law, it grants the Union Defendants immunity from all state law causes of action related to agency fee collection, and the California legislature's determination "provides all the process that is due." *Illeto*, 565 F.3d at 1142.

**b.  State Substantive Due Process**

Plaintiffs' state substantive due process argument also fails. Under the California constitution, the legislature "can provide for retroactive application of a statute if it has a reasonable basis for doing so." *L.A. Cty. v. Superior Court*, 62 Cal. 2d 839, 844 (1965). "In determining whether a retroactive law contravenes the due process clause, we consider such factors as the significance of the state interest served by the law, the importance of the retroactive application of the law to the effectuation of that interest, the extent of reliance upon the former law, the legitimacy of that reliance, the extent of actions taken on the basis of that reliance, and the extent to which the retroactive application of the new law would disrupt those actions." *In re Marriage of Bouquet*, 16 Cal. 3d 583, 592 (1976). The

---

[12] Plaintiffs also argue, based on *Callet v. Alioto*, 210 Cal. 65 (1930), that *Illeto* does not apply because it involved *statutory* causes of action instead of *common law* causes of action, such as those asserted by Plaintiffs here. (*See Wilford* Opp. at 20.) First, while *Callet* did distinguish between statutory and common law causes of action, the California Supreme Court has since rejected this proposition, concluding that there is "no constitutional basis for distinguishing statutory from common-law rights merely because of their origin." *See L.A. Cty. v. Superior Court*, 62 Cal.2d 839, 844 (1965). Further, Plaintiffs are simply wrong about *Illeto*, as it upheld a law "intended to preempt common-law claims, such as general tort theories of liability." 565 F.3d at 1135.

1    Court concludes that the California legislature had a reasonable basis for retroactively

2    applying § 1159 to bar Plaintiffs' claims.  First, Plaintiffs' reliance interest is minimal in

3    that *Abood* would have prevented them from any recovery of agency fees prior to *Janus*.

4    Further, § 1159 serves the significant state interests of providing "certainty to public

5    employers and employee organizations that relied on state law, and [avoiding] disruption

6    of public employee labor relations" after *Janus*.  *See* Cal. Gov. Code §1159(e)(2).  As

7    noted throughout, the Court finds the Union Defendants' reliance on *Abood* reasonable and

8    in good faith, and § 1159 seeks to protect these reliance interests.  Further, the lawsuits that

9    Section 1159 bars – including those currently before the Court– seek to impose massive

10   retroactive liability on public employers and unions that relied on state law, which would

11   certainly disrupt public employee labor relations.

12

13                        **c.  Federal Substantive Due Process**

14

15           Finally, Plaintiffs' federal substantive due process argument fails.   "Where, as here,

16   Congress has expressed its clear intent that the legislation be retroactive, 'the constitutional

17   impediments to retroactive civil legislation are now modest.'"  *Illeto*, 565 F.3d at 1138

18   (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 272 (1994)).  "[T]he potential

19   unfairness of retroactive civil legislation is not a sufficient reason for a court to fail to give

20   a statute its intended scope."  *Landgraf*, 511 U.S. at 267.  "We have squarely held that

21   although a cause of action is a species of property, a party's property right in any cause of

22   action does not vest until a final unreviewable judgment is obtained."  *Illeto*, 565 F.3d at

23   1141.  Here, Plaintiffs' claims have not vested because they have not obtained final

24   judgments.  Thus, § 1159 is subject to rational basis review and its retroactive application

25   must be upheld so long as the California legislature's decision was not "irrational or

26   arbitrary."  *See id.* at 1140.  For the reasons discussed in relation to the California

27

28

                                                   28

1   substantive due process argument, the Court concludes that retroactively applying § 1159

2   is neither arbitrary nor irrational.

3

4           ii.     **Other Constitutional Challenges**

5

6           Plaintiffs' Fifth Amendment Takings Clause argument is foreclosed by *Illeto*.  As

7   noted above, because Plaintiffs have not obtained a final unreviewable judgment, their

8   rights in their causes of action have not vested and "[t]he Fifth Amendment's Takings

9   Clause prevents the Legislature (and other government actors) from depriving private

10  persons of *vested* property rights."  *See Illeto*, 565 F.3d at 1141 (quoting *Landgraf*, 511

11  U.S. at 266) (emphasis in original)).

12          Plaintiffs also argue that Senate Bill 846, which added § 1159 to the Government

13  Code, violates the single subject rule of the California Constitution, which provides that

14  "[a] statute shall embrace but one subject, which shall be expressed in its title." Cal.

15  Const., art. IV, § 9.  "'[A]n initiative measure does not violate the single-subject

16  requirement if, despite its varied collateral effects, all of its parts are 'reasonably germane'

17  to each other,' and to the general purpose or object of the initiative."  *Brosnahan v. Brown*,

18  32 Cal. 3d 236, 245 (1982) (quoting *Amador Valley Joint Union High Sch. Dist. v. State*

19  *Bd. Of Equalization*, 22 Cal. 3d 208, 230 (1978)).  "[T]he single subject rule is to be

20  'construed liberally,'" and "[n]umerous provisions, having one general object, if fairly

21  indicated in the title, may be united in one act."  *Id.*  Here, the title of Senate Bill 846 is

22  "Employment."  Section 1159 and the rest of the sections identified by Plaintiffs (Plaintiffs

23  Opp. to AG at 16) are "reasonably germane" to employment.  Accordingly, the Court

24  concludes that Senate Bill 846 does not violate the single-subject rule.

25          Finally, Plaintiffs argue that § 1159 "violates the separation-of-powers doctrine."

26  (Plaintiffs' Opp. to AG at 17.)  Plaintiffs argue that § 1159 "effectively denies Plaintiffs a

27  judicial forum to assert their state-law claims," and "[f]or the reasons stated in *In re*

28

1    *National Sec. Agency Telecomm. Records Litig.*, 671 F.3d 881, 899 (9th Cir. 2011), this

2    violates the separation-of-powers doctrine." (*Id.*) *In re Nat'l Sec. Agency*, however, states

3    that separation of powers concerns would be raised if "faced with a situation in which

4    Congress has enacted legislation and simultaneously declared that legislation to be

5    immune from any constitutional challenge by the plaintiff." *In re Nat'l Sec. Agency*, 671

6    F.3d at 889 (quoting *Bartlett v. Bowen*, 816 F.2d 695, 703 (D.C. Cir. 1987)). Section 1159

7    does no such thing, and thus *In re Nat'l Sec. Agency* is irrelevant to Plaintiffs' claims.

8    Thus, the Court concludes that § 1159 does not violate the separation-of-powers doctrine.

9    Accordingly, the Court concludes that § 1159 is constitutional and bars all of

10   Plaintiffs' state law causes of action. Thus, the Court GRANTS the Motions to Dismiss

11   and DISMISSES WITH PREJUDICE Plaintiffs' state law causes of action.[13]

12

13   **E. Constitutionality of California Government Code § 3558 (*Martin*)**

14

15   The *Martin* Plaintiffs argue that California Government Code § 3558 violates the

16   First Amendment or alternatively that it violates state tort law and their state and federal

17   constitutional rights to privacy. Section 3558 provides that public school districts must

18   provide unions that serve as exclusive representatives of bargaining units with:

19

20   > the name, job title, department, work location, work, home, and personal cellular
     > telephone numbers, personal email addresses on file with the employer, and home
     > address of any newly hired employee within 30 days of the date of hire or by the
     > first pay period of the month following hire, and . . . with a list of that information

21

22

23   _____

24   [13] The *Matthews* Plaintiffs' UCL claim is also barred by § 1159's broad language. *See* § 1159
     (applying to "any claims or actions under the law of this state"). Furthermore, even if it were not

25   barred by § 1159, the UCL claim fails because the Union Defendants are not a "business" and
     collecting agency fees in compliance with state law is not a "business act or practice." *See That v.*

26   *Alders Maintenance Ass'n*, 206 Cal. App. 4th 1419, 1427 (2012) (holding that homeowners'
     association was not subject to a UCL claim because it "does not participate as a business in the

27   commercial market, much less compete in it").

28

> for all employees in the bargaining unit at least every 120 days unless more
> frequent or more detailed lists are required by an agreement with [the union].

Cal. Gov. Code § 3558.  An employee may opt out of having such information shared with the union.  *See id.*; *see also* § 6254.3.

As the Union Defendants explain, § 3558 codifies the California Supreme Court's decision in *County of Los Angeles v. L.A. County Employee Relations Committee,* 56 Cal. 4th 905 (2013), which held that disclosure of public employees' contact information to a union does not violate their privacy rights under California's constitution.  *Id.* at 931–32; *see also* § 3558 ("The provision of information under this section shall be consistent with the employee privacy requirements described in *County of Los Angeles v. Los Angeles County Employee Relations Com*. (2013) 56 Cal.4th 905.")  There, the Court explained that "[b]ecause the union's duty [of fair representation] extends to all employees in the bargaining unit, regardless of union membership, the union must have the means of communicating with all employees."  *County of L.A.*, 56 Cal. 4th at 931.  Thus, "[d]irect communication between unions and all bargaining unit employees is essential to ensure that nonmembers' opinions are heard."  *Id.*  Further, the court found that giving the unions "this contact information will not coerce employees into joining the union. An employee who chooses not to join a union still enjoys the benefits of union representation."  *Id.*

The Union Defendants argue that § 3558 does not violate the First Amendment. (*Id.* at 25.) [14]  Plaintiffs allege that §3558 amounts to a "compelled disclosure," to which the Supreme Court applies "exacting scrutiny."  (*See Babb* First Amended Complaint ¶ 51.)  "At least in the context of organized labor, the impingement of First Amendment

---

[14] The Union Defendants also argue that the *Martin* Plaintiffs lack standing to challenge § 3558 because their respective unions already have their contact information pursuant to § 3558. (*Martin* Union Mem. at 23.)  However, the harm that Plaintiffs identify is the fact that they were allegedly compelled to share the information, and thus the fact that the unions already have such information does not deprive Plaintiffs of standing.

rights must, at a minimum, satisfy 'exacting scrutiny'; i.e., it must 'serve a compelling state interest that cannot be achieved through means significantly less restrictive of associational freedoms.'"[15]  *Mentele v. Inslee*, 916 F.3d 783, 790 (9th Cir. 2019) (quoting *Janus*, 138 S. Ct. at 2465.)

The Union Defendants argue that § 3558 "does not infringe on Plaintiffs' First Amendment rights—and is not subject to exacting scrutiny—because the content-neutral contact information that is disclosed under the statute (unless Plaintiffs opt out) reveals nothing about their associations and beliefs."  (*Martin* Union Mem. at 25.)  Indeed, as the Union Defendants note and Plaintiffs impliedly concede (*see Martin* Union Opp. at 26–27), every compelled-disclosure case in which the Supreme Court applied exacting scrutiny involved disclosure of information that linked individuals to a cause, an association, or political activity, or identified the individuals' political beliefs.  For example, in *NAACP v. Alabama*, 357 U.S. 449, 462–63 (1958), the Court held that compelled disclosure of NAACP membership was subject to exacting scrutiny.[16]  The Court focused on the harm stemming from "compelled disclosure of affiliation with *groups engaged in advocacy*."  *Id.* at 462 (emphasis added).  "Inviolability of privacy in group association may in many circumstances be indispensable to preservation of freedom of association, particularly where a group *espouses dissident beliefs*."  *Id.* (emphasis added).

---

[15] The Union Defendants rely on the less-stringent exacting scrutiny standard articulated by the Supreme Court in *John Doe No. 1 v. Reed*, 561 U.S. 186, 196 (2010), requiring only a "substantial relation between the disclosure requirement and a sufficiently important governmental interest." Although this less-stringent standard is typically applied in compelled disclosure cases and has been applied by the Ninth Circuit as recently as last year, *see Ams. For Prosperity Found v. Becerra*, 903 F.3d 1000, 1008 (9th Cir. 2018), *Mentele* suggested that "in the context of organized labor," the more stringent standard applies.  *See Mentele*, 916 F.3d at 790.  Here, which version of exacting scrutiny is applied has no bearing on the outcome, as the Court concludes that § 3558 withstands the more stringent standard articulated in *Mentele*.

[16] *See also Buckley v. Valeo*, 424 U.S. 1, 66 (1976) (disclosed financial transactions with political candidate or party would "reveal much about a person's activities, associations, and beliefs") (internal quotation marks omitted); *John Doe No. 1*, 561 U.S. at 194–96 (individual's signature on petition would disclose his views on statute concerning gay rights).

32

1    The disclosures here are not disclosures of membership or affiliation, but rather of

2    employees' contact information, which reveals nothing about the employees' beliefs or

3    political views.  Plaintiffs cite to no authority providing that content-neutral disclosures

4    such as those required by § 3558 are subject to exacting scrutiny.   Plaintiffs argue that

5    § 3558 "will have the undeniable effect of deterring those employees from engaging in

6    anti-union speech." (*See Martin* Union Opp. at 27.)  Plaintiffs allege no facts to support

7    this claim, and further, it is illegal for the Union Defendants to discriminate against

8    employees for not joining their respective unions.   *See* Cal. Gov. Code §3543.6(b).

9         However, even assuming that exacting scrutiny applies, the Court concludes that

10   § 3558 survives such scrutiny.   Section 3558 serves a compelling government interest.  As

11   the California Supreme Court noted in *County of L.A.*, the Union Defendants have an

12   *obligation* to communicate with members and non-members pursuant to their duty of

13   representation, so the Union Defendants "must have the means of communicating with all

14   employees." *County of L.A.*, 56 Cal. 4th at 931.  This "[d]irect communication between

15   unions and all bargaining unit employees is *essential* to ensure that nonmembers' opinions

16   are heard." *Id.* (emphasis added).   Thus, California has a compelling interest in ensuring

17   that unions can communicate directly with employees.

18        Further, the Court concludes that this interest cannot be achieved through means

19   significantly less restrictive of associational freedoms.   The Union Defendants must be

20   able to communicate directly with all employees, and access to employee contact

21   information is "fundamental to the entire expanse of a union's relationship with the

22   employees," permitting the union to "perform its broad range of statutory duties in a truly

23   representative fashion and in harmony with the employees' desires and interests." *NLRB*

24   *v. CJC Holdings, Inc.*, 97 F.3d 114, 117 (5th Cir. 1996).  Plaintiffs quibble that the

25   disclosures are too broad because they include employees' personal addresses and phone

26   numbers. (*Martin* Union Opp. at 25–26.)  However, the Union Defendants must be able to

27   communicate *directly* with all employees and having employees' personal information

28

33

1  furthers this interest.  Further, in the context of heated negotiations with school districts,

2  the Union Defendants need a method to communicate with employees outside of work.

3  Moreover, any associational freedom restriction presented by § 3558 is significantly

4  minimized by the fact that employees can opt out of the disclosures.

5        Accordingly, the Court concludes that § 3558 does not violate the *Martin* Plaintiffs'

6  First Amendment rights.  The *Martin* Plaintiffs admit that their "privacy-tort claims cannot

7  survive unless this Court concludes that section 3558 violates the federal Constitution."

8  (*Martin* Union Opp. at 30.)  Furthermore, Plaintiffs' claim for violation of California's

9  right to privacy also fails because § 3558 merely codifies the California Supreme Court's

10  ruling in *County of L.A.*  Finally, Plaintiffs' claim for violation of *federal* privacy rights

11  fails because "the scope and application of the [California] state constitutional right of

12  privacy is broader and more protective of privacy than the federal constitutional right of

13  privacy as interpreted by the federal courts."  *Am. Acad. of Pediatrics v. Lungren*, 16 Cal.

14  4th 307, 326 (1997).  Thus, the Court GRANTS the Union Defendants' Motion and

15  DISMISSES WITH PREJUDICE Plaintiffs' claim challenging the constitutionality of

16  § 3558.

17

18  **F.  Constitutionality of California Education Code § 45060 (*Martin*)**

19

20        The Union Defendants argue that Plaintiff Martin lacks standing to challenge

21  California Education Code § 45060 and, even if he did not, § 45060 does not violate his

22  First Amendment rights.  (*Martin* Union Mem. at 30–31.)

23        Education Code § 45060 provides, in relevant part:

24

25      Employee requests to cancel or change authorizations for payroll deductions
    for employee organizations shall be directed to the employee  organization rather

26      than to the governing board. The employee organization shall be responsible for
    processing these requests.

27

28

Cal. Educ. Code § 45060(e).  Further, § 45060 requires school employees to revoke their consent to payroll deductions "in writing."  *Id.* §§ 45060(a),(c).

Martin alleges that §45060 violates his First Amendment rights for two reasons: (1) it requires him to direct his request to cancel membership dues deductions to the union, rather than to his employer; and (2) it requires such requests to be in writing.  (*Martin* First Amendment Complaint ¶¶ 58, 60–62.)  Citing to *Janus*, Martin alleges that "[e]very public employer and every public-employee union must honor and implement the wishes of an employee who has withdrawn his 'affirmative consent' to union fees or assessments— regardless of how a public employee chooses to communicate his instructions."  (*Id.* ¶ 57.) On July 6, 2018, Martin sent an email to his employer, Riverside Unified School district, asking that all union-related payroll deductions cease.  (*Id.* ¶ 60.)  However, Martin claims that § 45060(e) "instructs the school district to continue diverting [his] paycheck toward the union—in violation of *Janus* and in violation of [his] First Amendment rights— because [he] chose to submit his e-mail directly to school officials rather than asking the union to take care of matters."  (*Id.* ¶ 61.)

The Union Defendants argue that Martin does not have standing to challenge § 45060 because his request to cancel membership dues deductions has been processed. (*See Martin* Union Mem. at 31; Scott Decl. ¶¶ 3–8, Doc. 61-10.)  Indeed, while the Union Defendants did not receive Martin's email, upon receipt of the Complaint on July 23, 2018, the Union Defendants wrote Martin a letter explaining that Riverside Unified did not have the authority to terminate the union membership of its employees.  (*See* Scott Decl. ¶ 4.)  On August 3, 2018, the Union Defendants informed Martin that they would consider this lawsuit a request to resign his membership and that he would be considered terminated as of July 23, 2018.  (*Id.* ¶ 5.)  Though this was fifteen days after Martin sent the email to Riverside Unified, the lapse is irrelevant because "dues deductions would have already ceased for the year as of June 30, and no further deductions were scheduled to be made in July."  (*Id.* ¶ 7.)

1    In response, Martin argues that the Union Defendants are attempting to moot his

2 claims by voluntarily deciding to halt payroll deductions after he sued.  (*Martin* Union

3 Opp. at 32.)  Further, Martin argues that his claim is not moot "because California law

4 requires the school district and the union to continue taking membership dues from Mr.

5 Martin's paycheck—notwithstanding his resignation from membership—until Mr. Martin

6 submits a request to the union 'in writing' that revokes his previous authorization for

7 payroll deductions." (*Id.*)

8    Here, it appears that Martin's claim is moot.  "A case becomes moot—and therefore

9 no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented

10 are no longer live or the parties lack a legally cognizable interest in the outcome." *Yohn*,

11 2018 WL 5264076, at *2 (quoting *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir.

12 2014)).  Martin has resigned from his union and it is "absolutely clear that the allegedly

13 wrongful behavior could not reasonably be expected to recur." *Id.*  Indeed, Martin would

14 have to rejoin his union for his claim to be live, which, given his representations in this

15 lawsuit, seems a remote possibility.  Further, as the Union Defendants note, Martin has

16 suffered no damages because of the fifteen-day delay in the processing of his resignation,

17 and Martin does not allege otherwise.  Moreover, there is no basis for Martin's contention

18 that the Union Defendants are "required" to continue to deduct dues from his paycheck,

19 nor does he allege that they are doing so.

20    However, even assuming that Martin's claim is *not* moot, the Court concludes that

21 his claim fails as a matter of law.  Section 45060, on its face, does not violate the First

22 Amendment.  Contrary to Martin's contention, *Janus* does not hold that employees have

23 the right to resign from a union however they want, regardless of state laws that prescribe

24 clear, common-sense procedures for doing so.  Submitting a writing to the Union

25 Defendants to halt payroll deductions is not a burdensome requirement.  Because the

26 deductions go to the Union Defendants, it makes sense that the halting of such deductions

27 must be communicated to the Union Defendants rather than the school districts.

28

1  Moreover, as the Union Defendants note, "[m]ost actions of legal significance, including
2  registering to vote, voting itself, filing court papers, and the like, must be done in writing."
3  (*Martin* Union Reply at 13.)

4        Accordingly, the Court GRANTS the Union Defendants' Motion to Dismiss and
5  DISMISSES Martin's claim WITH PREJUDICE.

6

7        **G. Antitrust Claim (*Martin*)**

8

9        The Union Defendants next argue that Martin's antitrust claim fails.  The *Crockett*
10  court dismissed an indistinguishable claim with prejudice and the Court finds *Crockett*'s
11  reasoning persuasive and applicable here.  *See Crockett*, 2019 WL 1212082, at *8–9.

12        As in *Crockett*, Martin's antitrust theory is that collective bargaining agreements
13  stemming from California's exclusive representation system are anti-competitive because
14  they "require compensation based on union-imposed pay scales and prevent individual
15  employees from negotiating compensation based on individual performance and merits."
16  *Id.* at *8; *see Martin* First Amended Complaint ¶¶ 75–76.)  The Court agrees with *Crockett*
17  that "[f]ederal antitrust law, which seeks to preserve competition in the private sector,
18  simply does not encompass the way in which a state chooses to set employment terms for
19  its public employees."  2019 WL 1212082, at *8.

20        More specifically, the state-action doctrine immunizes the Union Defendants from
21  antitrust liability because federal antitrust laws do not "restrain a state or its officers or
22  agents from activities directed by its legislature."  *Parker v. Brown*, 317 U.S. 341, 350–51
23  (1943).   To establish state-action immunity, "the challenged restraint . . . [must] be one
24  clearly articulated and affirmatively expressed as state policy. . . [and] be actively
25  supervised by the State."  *N.C. State Bd. of Dental Exam'rs v. FTC*, 135 S. Ct. 1101, 1110
26  (2015).   Martin argues that the Union Defendants cannot avail themselves of state-action
27  immunity because he is challenging the actual terms of the collective bargaining

28

1  agreements, not "the overall enterprise of collective bargaining."   (*Martin* Union Opp. at

2  38.)  Thus, Martin claims that the Union Defendants must show that the specific provisions

3  he challenges have been "clearly articulated and affirmatively expressed as state policy."

4  (*Id.*)  However, "it is indisputable that the challenged restraint—a collective bargaining

5  agreement negotiated by a representative union—is 'clearly articulated and affirmatively

6  expressed as state policy.'" *Crockett*, 2019 WL 1212082, at *9.  Martin further argues that

7  nothing in his First Amended Complaint acknowledges "active supervision" by the state,

8  so this issue cannot be resolved on a motion to dismiss.  (*Martin* Union Opp. at 38.)  "The

9  active supervision requirement, however, is inapplicable here because the other party to the

10  challenged collective bargaining agreement is [a public-school district]."  *Crockett*, 2019

11  WL 1212082, at *9.  "Unlike private parties, local government entities are not subject to

12  the 'active state supervision requirement' because they have less of an incentive to pursue

13  their own self-interest under the guise of implementing state policies." *Id.* (quoting *FTC v.*

14  *Phoebe Putney Health Sys. Inc.*, 568 U.S. 216, 226 (2013) (alterations omitted)).

15      Further, "[t]he labor of a human being is not a commodity or article of commerce."

16  15 U.S.C. §17.  "Therefore, 'restraints on the sale of the employee's services to the

17  employer'—those employment terms set forth in a collective bargaining agreement—'are

18  not themselves combinations or conspiracies in the restraint of trade or commerce under

19  the Sherman Act' even if they 'curtail the competition among employees.'" *Crockett*,

20  2019 WL 1212082, at *9 (quoting *Apex Hosiery Co. v. Leader*, 310 U.S. 469, 503 (1940));

21  *see also Bodine Produce, Inc. v. U.F.W. Organizing Comm.*, 494 F.2d 541, 558 (9th Cir.

22  1974) (rejecting interpretation of labor exemption that "would invalidate collective

23  bargaining").

24      Finally, the *Noerr-Pennington* doctrine – by which efforts to convince the

25  government to act in an anticompetitive manner are protected by the First Amendment –

26  also bars Martin's antitrust claim.  "Federal antitrust law . . . does not 'regulate the conduct

27  of private individuals in seeking anticompetitive action from the government.'" *Crockett*,

28

2019 WL 1212082, at *10 (quoting *City of Columbia v. Omni Outdoor Adver., Inc.*, 499
U.S. 365, 379–80 (1991)).

Accordingly, the Court GRANTS the Union Defendants' Motion to Dismiss and
DISMISSES WITH PREJUDICE Martin's antitrust claim.

### H. Constitutionality of Exclusive Representation (*Few*)

Finally, United Teachers Los Angeles argues that Plaintiff Few's claim that
California's exclusive representation system violates the First Amendment is foreclosed by
the Supreme Court's decision in *Minnesota State Board for Community Colleges v. Knight*,
465 U.S. 271 (1984).  Indeed, the *Martin* Plaintiffs concede that their identical claim is
barred by *Knight*.  (*See Martin* Union Opp. at 35.)

In *Knight*, the Supreme Court held that a system of exclusive union representation
does not violate the speech or associational rights of individuals who are not members of
the union.  *Knight*, 465 U.S. at 271.  As *Crockett* noted in relation to a claim identical to
Few's,[17] *Janus* essentially reaffirmed *Knight* because it distinguished between financial
support for a union and the "underlying system of exclusive representation."  *Crockett*,
2019 WL 1212082, at *8 (citing *Janus*, 138 S. Ct. at 2465–67.)  Indeed, *Janus* explicitly
noted that "[s]tates can keep their labor-relations systems exactly as they are—only they
cannot force nonmembers to subsidize public-sector unions."  *Janus*, 138 S. Ct. at 2485
n.27.  Moreover, the Ninth Circuit recently reaffirmed *Knight*'s validity in the wake of
*Janus*.  *See Mentele*, 916 F.3d at 788.  Few attempts to distinguish *Mentele* on the basis
that it holds that *Knight* "continues to apply" only to "partial" state employees, rather than
full-fledged public employees such as himself.  (Few Opp. at 12.)  *Mentele*'s analysis of
the impact of exclusive representation on non-member's associational rights contains no

---

[17] Just like the *Martin* Plaintiffs, the plaintiff in *Crockett* conceded that her claim was
foreclosed by *Knight*.  *See Crockett*, 2019 WL 1212082, at *8.

such limitation, however, and was based entirely on *Knight*'s analysis, which involved full-fledged public employees.   *See Mentele*, 916 F.3d at 788–90.

Accordingly, the Court GRANTS United Teachers Los Angeles' Motion to Dismiss and DISMISSES Few's exclusive representation claim WITH PREJUDICE.

**IV.CONCLUSION**

For the foregoing reasons, the Court GRANTS all of the Motions to dismiss currently before it.  As a result, this Order completely disposes of *Babb*, *Wilford*, and *Matthews*, and the Defendants in each case must submit a judgment to the Court no later than five (5) days from the date of this Order.  In *Few*, Few's first claim for relief remains, and in *Martin*, Plaintiffs' second claim for relief remains.

DATED:  May 08, 2019

_____
JOSEPHINE L. STATON
UNITED STATES DISTRICT JUDGE