SCOTT A. KRONLAND (SBN 171693)
skronland@altshulerberzon.com
P. CASEY PITTS (SBN 262463)
cpitts@altshulerberzon.com
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064

IRA L. GOTTLIEB (SBN 103236)
igottlieb@bushgottlieb.com
BUSH GOTTLIEB, A Law Corporation
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260
Telephone: (818) 973-3200
Facsimile: (818) 973-3201

*Attorneys for Defendant United Teachers Los Angeles*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS FEW,<br><br>     Plaintiff,<br><br>  v.<br><br>UNITED TEACHERS LOS ANGELES, *et al.*,<br><br>     Defendants. | CASE NO:  2:18-cv-09531-JLS-DFM<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UTLA'S MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date:  Dec. 13, 2019<br>Hearing Time: 10:30 a.m.*<br>Location:        Courtroom 10A<br><br>Hon. Josephine L. Staton |

---

* The parties will submit a request to waive oral argument on their motions for summary judgment.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION .............................................................................................. 1

BACKGROUND ................................................................................................ 3

   I.    Facts ...................................................................................................... 3

   II.   Plaintiff's Lawsuit ............................................................................. 6

LEGAL STANDARD ......................................................................................... 6

ARGUMENT ...................................................................................................... 7

   I.    Plaintiff's Claim for Prospective Relief Is Not Justiciable ..................... 7

   II.   The Union Is Entitled to Summary Judgment on Plaintiff's Claim for
        Damages ............................................................................................ 10

       A.    Deductions Made Pursuant to Plaintiff's Express, Voluntary
            Dues Deduction Authorization Did Not Violate His First
            Amendment Rights ....................................................................... 11

            1.    Plaintiff voluntarily authorized dues deductions as part
                 of a contract with UTLA ................................................... 11

            2.    Plaintiff's pre-*Janus* consent to membership dues
                 deductions was "freely given" .......................................... 13

       B.    Plaintiff's Challenge to the Terms of His Dues Authorization
            Also Fails for Lack of State Action ............................................. 16

       C.    Plaintiff's Damages Claim for Post-June 4, 2018 Deductions
            Does Not Present a Justiciable Controversy ................................ 18

CONCLUSION ................................................................................................ 20

# TABLE OF AUTHORITIES

*Abood v. Detroit Bd. of Educ.*,
  431 U.S. 209 (1977) .................................................................. 4, 14

*Am. Rivers v. Nat'l Marine Fisheries Serv.*,
  126 F.3d 1118 (9th Cir. 1997) ........................................................ 7

*Anderson v. Serv. Emps. Int'l Union Local 503*,
  _F.Supp.3d_, 2019 WL 4246688 (D. Or. Sept. 4, 2019) ............................ 16, 18

*Babb v. Cal. Teachers Ass'n*,
  378 F.Supp.3d 857 (C.D. Cal. 2019) .............................................*passim*

*Bain v. Cal. Teachers Ass'n*,
  156 F.Supp.3d 1142 (C.D. Cal. 2015) ................................................ 17

*Bain v. Cal. Teachers Ass'n*,
  2016 WL 6804921 (C.D. Cal. May 2, 2016) .......................................... 17

*Bain v. Cal. Teachers Ass'n*,
  891 F.3d 1206 (9th Cir. 2018) ............................................. 7, 8, 12, 17

*Belgau v. Inslee*,
  2018 WL 4931602 (W.D. Wash. Oct. 11, 2018) .................................. 12, 13

*Belgau v. Inslee*,
  359 F.Supp.3d 1000 (W.D. Wash. 2019) ....................................... 2, 3, 17

*Bermudez v. SEIU Local 521*,
  2019 WL 1615414 (N.D. Cal. Apr. 16, 2019) ..................................... 2, 12

*Blum v. Yaretsky*,
  457 U.S. 991 (1982) .................................................................. 17

*Brady v. United States*,
  397 U.S. 742 (1970) .............................................................. 15, 16

*Buckley v. Valeo*,
  424 U.S. 1 (1976) .................................................................... 11

*Carey v. Piphus*,
  435 U.S. 247 (1978) .................................................................. 19

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ................................................................... 7

*Chicago Teachers Union, Local No. 1 v. Hudson*,
    475 U.S. 292 (1986) ................................................................................. 4

*City of Erie v. Pap's A.M.*,
    529 U.S. 277 (2000) ............................................................................... 19

*Clark v. City of Seattle*,
    2017 WL 3641908 (W.D. Wash. Aug. 24, 2017) ................................... 12

*Cohen v. Cowles Media Co.*,
    501 U.S. 663 (1991) ............................................................................... 12

*Colony Cove Properties, LLC v. City of Carson*,
    640 F.3d 948 (9th Cir. 2011) ................................................................. 14

*Coltec Indus., Inc. v. Hobgood*,
    280 F.3d 262 (3d Cir. 2002) .................................................................. 14

*Cooley v. Cal. Statewide Law Enforcement Ass'n*,
    2019 WL 331170 (E.D. Cal. Jan. 25, 2019) ................................ 2, 12, 13

*Cooley v. Cal. Statewide Law Enforcement Ass'n*,
    385 F.Supp.3d 1077 (E.D. Cal. July 9, 2019) ............................... 2, 16, 17

*Crockett v. NEA-Alaska*,
    367 F.Supp.3d 996 (D. Alaska 2019) ............................... 2, 11, 12, 14

*Dingle v. Stevenson*,
    840 F.3d 171 (4th Cir. 2016) ........................................................... 15, 16

*Farrell v. Int'l Ass'n of Firefighters*,
    781 F.Supp. 647 (N.D. Cal. 1992) ......................................................... 11

*Fisk v. Inslee*,
    2017 WL 4619223 (W.D. Wash. Oct. 16, 2017) ................................... 12

*Fisk v. Inslee*,
    759 F.App'x 632 (9th Cir. 2019) ..................................................... 12, 19

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000) ................................................................................. 8

*In re Di Giorgio*,
    134 F.3d 971 (9th Cir. 1998) ................................................................... 8

*Janus v. AFSCME, Council 31*,
    138 S.Ct. 2448 (2018) ............................................................................*passim*

*Johnson v. Rancho Santiago Cmty. Coll. Dist.*,
    623 F.3d 1011 (9th Cir. 2010) ................................................................ 10

*Kidwell v. Transp. Commc'ns Int'l Union*,
    946 F.2d 283 (4th Cir. 1991) .................................................................. 11

*Lamberty v. Conn. State Police Union*,
    2018 WL 5115559 (D. Conn. Oct. 19, 2018) .......................................... 20

*Lewis v. Cont'l Bank Corp.*,
    494 U.S. 472 (1990) .................................................................................. 8

*Lugar v. Edmonson Oil Co.*,
    457 U.S. 922 (1982) ................................................................................ 16

*Masters v. Screen Actors Guild*,
    2004 WL 3203950 (C.D. Cal. Dec. 8, 2004) .......................................... 11

*Mayer v. Wallingford-Swarthmore Sch. Dist.*,
    _F.Supp.3d_, 2019 WL 4674397 (E.D. Pa. Sept. 24, 2019) ...................... 2, 9, 20

*Memphis Cmty. Sch. Dist. v. Stachura*,
    477 U.S. 299 (1986) ................................................................................ 19

*Minn. State Bd. for Cmty. Colleges v. Knight*,
    465 U.S. 271 (1984) ................................................................................ 12

*Molina v. Pa. Soc. Serv. Union*,
    392 F.Supp.3d 469 (M.D. Pa. 2019) ....................................................... 20

*N.L.R.B. v. U.S. Postal Serv.*,
    827 F.2d 548 (9th Cir. 1987) ................................................................... 12

*O'Callaghan v. Regents of Univ. of Cal.*,
    2019 WL 2635585 (C.D. Cal. June 10, 2019) ..................................... 2, 13, 18

*Ohno v. Yasuma*,
    723 F.3d 984 (9th Cir. 2013) ................................................................... 16

*Puckett v. United States*,
    556 U.S. 129 (2009) ................................................................................ 14

iv

*Roberts v. AT&T Mobility LLC*,
    877 F.3d 833 (9th Cir. 2017) ............................................................... 17

*Roper v. Simmons*,
    543 U.S. 551 (2005) ........................................................................... 15

*Rosebrock v. Mathis*,
    745 F.3d 963 (9th Cir. 2014) ........................................................ 7, 10

*S-1 v. Spangler*,
    832 F.2d 294 (4th Cir. 1987) .............................................................. 19

*Sands v. NLRB*,
    825 F.3d 778 (D.C. Cir. 2016) ............................................................ 20

*Seager v. United Teachers Los Angeles*,
    2019 WL 3822001 (C.D. Cal. Aug. 14, 2019) .............................. *passim*

*Smith v. Bieker*,
    2019 WL 2476679 (N.D. Cal. June 13, 2019) .................... 2, 13, 16, 19

*Smith v. Superior Court*,
    2018 WL 6072806 (N.D. Cal. Nov. 16, 2018) .................... 2, 12, 13, 19

*Weyandt v. Pa. State Corrs. Officers Ass'ns*,
    2019 WL 5191103 (M.D. Pa. Oct. 15, 2019) ...................................... 19

**Federal Statutes**

42 U.S.C. §1983 ...................................................................... *passim*

**California Statutes**

California Education Code §45060 .......................................... *passim*

California Education Code §45168 .................................... 6, 7, 8, 17

California Government Code §3540.1 ............................................... 8

California Government Code §3543.1 ......................................... 6, 7, 8

California Government Code §3543.5 ............................................. 17

**Rules**

Fed. R. Civ. P. 56 ........................................................................... 6

1

## INTRODUCTION

2      Plaintiff Thomas Few is a former member of United Teachers Los Angeles

3  ("UTLA").  He voluntarily signed an agreement authorizing deduction of union

4  dues from his pay for a one-year period in exchange for the rights and benefits of

5  membership.  In a June 4, 2018 letter, Plaintiff resigned his union membership.

6  UTLA has processed his resignation and stopped dues deductions.  Although

7  Plaintiff agreed to pay dues for a one-year period, UTLA has nonetheless refunded

8  to Plaintiff all dues deducted after his June 4, 2018 resignation, plus interest.

9      This Court already has dismissed one of two Counts in Plaintiff's First

10 Amended Complaint.  *Babb v. Cal. Teachers Ass'n*, 378 F.Supp.3d 857, 888 (C.D.

11 Cal. 2019).  In his sole remaining claim (Count I), Plaintiff contends that UTLA and

12 Los Angeles Unified School District ("LAUSD") Superintendent Austin Beutner

13 violated his First Amendment rights by deducting union dues from his pay and by

14 enforcing the revocation period included in Plaintiff's dues deduction authorization

15 agreement.  Because Plaintiff's 42 U.S.C. §1983 claim fails on the undisputed facts,

16 this Court should grant summary judgment to UTLA.

17     First, Plaintiff's claim for prospective relief no longer presents a live

18 controversy, because Plaintiff is not a member of UTLA, his dues deductions have

19 stopped, and there is no plausible risk that they will resume.  Plaintiff's challenge to

20 the future enforcement of certain California statutes regarding union membership

21 dues deductions is also moot.  *See Seager v. United Teachers Los Angeles*, 2019

22 WL 3822001, at *2 (C.D. Cal. Aug. 14, 2019); *Babb*, 378 F.Supp.3d at 886.

23     Second, Plaintiff's claim for retrospective damages based on deductions

24 occurring prior to his June 4, 2018 resignation is meritless.  Payments made

25 pursuant to voluntary contracts between two private parties do not violate the First

26 Amendment.  Plaintiff voluntarily chose to become a member of UTLA and to sign

27 an express written agreement to pay dues through payroll deductions, in exchange

28 for membership rights and benefits.  This Court has already recognized that *Janus v.*

*AFSCME, Council 31*, 138 S.Ct. 2448 (2018), has no bearing on such voluntary agreements to pay union dues. *Babb*, 378 F.Supp.3d at 877 ("Plaintiffs voluntarily chose to pay membership dues in exchange for certain benefits, and '[t]he fact that plaintiffs would not have opted to pay union membership fees if *Janus* had been the law at the time of their decision does not mean their decision was therefore coerced.'") (quoting *Crockett v. NEA-Alaska*, 367 F.Supp.3d 996, 1008 (D. Alaska 2019)); *Seager*, 2019 WL 3822001, at *2 (same). Every other court to consider the issue is in agreement.[1]

Finally, Plaintiff cannot recover damages for any dues deductions that occurred after he resigned his union membership. His claim for post-resignation damages is moot because UTLA already refunded to Plaintiff, with interest, all dues deducted from his wages after UTLA received his resignation letter. *See* Joint Statement of Undisputed Facts, Dkt. 71 ("JSUF") ¶¶9-10 & Ex. H. There is thus no relief left for him to seek as to that time period. *See, e.g.*, *Mayer v. Wallingford-Swarthmore Sch. Dist.*, _F.Supp.3d_, 2019 WL 4674397, at *3 (E.D. Pa. Sept. 24, 2019) In any event, even if Plaintiff's claim regarding post-resignation deductions were not moot, it would still fail because Plaintiff voluntarily entered a contract with UTLA to pay dues through payroll deductions for a specified period

---

[1] *See Belgau v. Inslee*, 359 F.Supp.3d 1000, 1016 (W.D. Wash. 2019) ("*Belgau II*") ("*Janus* does not apply here – Janus was not a union member, unlike the Plaintiffs here, and Janus did not agree to a dues deduction, unlike the Plaintiffs here."); *O'Callaghan v. Regents of Univ. of Cal.*, 2019 WL 2635585, at *3 (C.D. Cal. June 10, 2019) ("[N]othing in *Janus*'s holding requires unions to cease deductions for individuals who have affirmatively chosen to become union members …."); *Bermudez v. SEIU Local 521*, 2019 WL 1615414, at *2 (N.D. Cal. Apr. 16, 2019); *Cooley v. Cal. Statewide Law Enforcement Ass'n*, 2019 WL 331170, at *3 (E.D. Cal. Jan. 25, 2019) ("*Cooley I*"), *order after further proceedings*, 385 F.Supp.3d 1077, 1080-81 (E.D. Cal. July 9, 2019) ("*Cooley II*"); *Smith v. Superior Court*, 2018 WL 6072806, at *1 (N.D. Cal. Nov. 16, 2018) ("*Smith I*"), *order after further proceedings*, *Smith v. Bieker*, 2019 WL 2476679, at *2 (N.D. Cal. June 13, 2019) ("*Smith II*").

1   "irrespective of [his] membership in UTLA."  JSUF Ex. B.  As this Court has

2   already held, Plaintiff cannot recover damages under 42 U.S.C. §1983 for payments

3   to which he voluntarily agreed.  *Seager*, 2019 WL 3822001, at *2; *see also Belgau*

4   *II*, 359 F.Supp.3d at 1016-17.

5   **BACKGROUND**

6   **I.     Facts**

7           Plaintiff Thomas Few is an educator employed by LAUSD.  JSUF ¶1.  UTLA

8   is the collective bargaining representative for more than 30,000 LAUSD educators.

9   Decl. of Harry Mar ISO UTLA's Mot. for Summ. J. ("Mar Decl.")  ¶2.  UTLA is

10  supported by dues paid by educators who voluntarily become members by signing a

11  membership card that authorizes the deduction of union dues from their pay.  *Id*.

12  LAUSD employees are not required to become members of UTLA as a condition of

13  employment.  *Id*.

14          On September 8, 2016, Plaintiff voluntarily elected to become a member of

15  UTLA and signed an express, written agreement affirmatively authorizing the

16  deduction of union dues from his wages.  JSUF ¶2 & Ex. A; *see* Mar Decl. 2, 5.[2]

17  He signed a new membership and dues authorization agreement on February 13,

18  2018.  JSUF ¶3 & Ex. B.  The 2018 agreement provides: "I hereby request and

19  voluntarily accept membership in UTLA and I agree to abide by its Constitution and

20  Bylaws."  *Id*. Ex. B.  Plaintiff also separately signed and dated the following

21  authorization:

22          I hereby (1) agree to pay regular monthly dues uniformly applicable
        to members of UTLA; and (2) request and voluntarily authorize my
23      employer to deduct from my earnings and to pay over to UTLA such

24  _____

25  [2] Plaintiff's September 8, 2016 payroll deduction authorization, which he signed and
    dated separately from his membership authorization, provided: "I hereby authorize
26  my employer to deduct from my earnings and remit to UTLA all applicable Union
    dues, fees and/or assessments that may now or hereafter be established by UTLA.
27  To alter the authorization you have made, you must notify UTLA in writing."
    JSUF ¶2 & Ex. A.
28

> dues.  This agreement to pay dues shall remain in effect and shall be irrevocable unless I revoke it by sending written notice via U.S. mail to UTLA during the period not less than thirty (30) days and not more than sixty (60) days before the annual anniversary date of this agreement or as otherwise required by law.  This agreement shall be automatically renewed from year to year unless I revoke it in writing during the window period, *irrespective of my membership in UTLA*.

*Id.* (emphasis added).

In return for joining UTLA and agreeing to pay his membership dues via payroll deduction, Plaintiff enjoyed access to membership rights and members-only benefits.  Mar Decl. ¶3.  UTLA members have the right to vote in union officer elections, run for union office, and participate in the union's internal affairs.  *Id.*  In addition, UTLA members may access certain benefits not available to non-members, including a Group Legal Services network of attorneys, training and scholarships, student debt clinics, mortgage and home services programs, insurance benefits, and discounts on a variety of items.  *Id.*

On or about June 4, 2018, UTLA received a letter from Plaintiff stating that Plaintiff wanted to resign his union membership and cease paying full membership dues.  *See* JSUF ¶4 & Ex. C.  The letter stated that he "object[ed] to the use of [his] agency fee for nonchargeable activities, in accordance with [his] rights as protected by" *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977), and *Chicago Teachers Union, Local No. 1 v. Hudson*, 475 U.S. 292 (1986), but would be "continuing to pay for the 'representation' portion of [his] dues."  JSUF Ex. C.

On June 27, 2018, the Supreme Court issued its opinion in *Janus*, 138 S.Ct. 2448, holding for the first time that the First Amendment prohibits non-member public employees from being required to provide *any* financial support to the union that serves as their representative in collective bargaining.

On July 13, 2018, UTLA sent a letter to Plaintiff acknowledging receipt of his letter and reminding him of the terms of the dues deduction authorization he had signed, which allowed dues deductions to be terminated during a 30-day window

based on the date he signed.  JSUF ¶5 & Ex. D.  The letter explained that Plaintiff could be a Dues Paying Non-Member until the window period, and explained how and when he could terminate his dues payment obligation in accordance with his dues authorization agreement.  JSUF Ex. D.  On August 3, 2018, UTLA received another letter from Plaintiff, requesting that UTLA "immediately cease deducting all dues, fees, and political contributions from my wages" in light of the *Janus* decision.  JSUF ¶6 & Ex. E.  UTLA received an additional letter from Plaintiff demanding an end to his dues deductions on or about October 10, 2018.  JSUF ¶7 & Ex. F.  UTLA sent Plaintiff a letter on October 19, 2018, again reminding him of the terms of his dues authorization and that he could revoke his authorization during his window period.  JSUF ¶8 & Ex. G.

On November 21, 2018, UTLA Executive Director Jeff Good sent Plaintiff a letter confirming that UTLA considered Plaintiff to have resigned his membership as of June 4, 2018.  JSUF ¶9 & Ex. H at 1; Mar Decl. ¶10.  Mr. Good's letter reminded Plaintiff of his separate dues payment obligation but stated that UTLA nonetheless "ha[d] requested the District to stop deducting union dues from your future paychecks." JSUF Ex. H at 1.  The letter further explained that – notwithstanding Plaintiff's one-year dues commitment – UTLA was refunding Plaintiff all money deducted after June 4, 2018, with interest, and enclosed a check for $433.31.  *Id.*; Mar Decl. ¶¶9-11.[3]  On or about December 5, 2018, Plaintiff's counsel confirmed that Plaintiff had received Mr. Good's letter and deposited the check.  JSUF ¶12 & Ex. I.  No further deductions of dues from Plaintiff's wages have occurred.  JSUF ¶11.

---

[3] Plaintiff alleged that he sent a resignation letter to UTLA "[o]n or about June 2, 2018."  First Amended Complaint, Dkt. 38 ("FAC") ¶18.  No dues were deducted between June 2 and June 4, 2018, so Plaintiff already received a full refund of all dues paid post-resignation whether his resignation was effective June 2 or June 4.  Mar Decl. ¶11.

## II.     Plaintiff's Lawsuit

Plaintiff filed this lawsuit on November 9, 2018, Dkt. 1, and a First Amended Complaint on December 28, 2018.  On May 8, 2019, this Court granted UTLA's motion to dismiss Count II of Plaintiff's First Amended Complaint, which alleged that California's system of exclusive representative collective bargaining for public educational employees violates the First Amendment.  *Babb*, 378 F.Supp.3d at 888.

In the sole remaining Count, Few asserts that UTLA and Superintendent Beutner (together, "Defendants") are violating his First Amendment rights "[b]y refusing to allow [him] to withdraw from the union and continuing to deduct his dues."  FAC at 6.  Plaintiff asserts that Defendants have "limited withdrawal from the union to an arbitrary 30-day period per year and insist that Mr. Few can only exercise his First Amendment rights at that time."  *Id.* ¶39; *see id.* ¶46.  Plaintiff further contends that his "consent to dues collection was not 'freely given' because it was given based on an unconstitutional choice between union membership or the payment of union agency fees without the benefit of membership."  *Id.* ¶42; *see also id.* ¶41.

Plaintiff seeks an injunction ending his union membership and dues deductions; a declaration that California Government Code §3543.1 and California Education Code §45060 and §45168 are unconstitutional; and "damages in the amount of all dues deducted and remitted to UTLA since the commencement of his employment in August 2016."  FAC ¶¶47-52; *see also id.* Prayer for Relief ¶¶a-h. In the alternative, he requests damages for all union dues deducted since the date of his resignation letter, or since the Supreme Court's decision in *Janus* on June 27, 2018.  *Id.*¶¶51-52; *id.* Prayer for Relief ¶¶g-h.

### LEGAL STANDARD

Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Rule 56 "mandates the entry of summary judgment … against a party

1  who fails to make a showing sufficient to establish the existence of an element

2  essential to that party's case, and on which that party will bear the burden of proof

3  at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

4                                **ARGUMENT**

5  **I.    Plaintiff's Claim for Prospective Relief Is Not Justiciable.**

6          Plaintiff seeks prospective relief ending his union membership and dues

7  deductions and declaring that application of California Government Code §3543.1

8  and California Education Code §45060 and §45168 to him going forward is

9  unconstitutional.  FAC ¶¶47-52; *id.* Prayer for Relief ¶¶a-h.  But Plaintiff is no

10  longer a UTLA member, all dues deductions have ended, and there is no plausible

11  likelihood that dues deductions will recur.  Mar Decl. ¶10-11; JSUF Ex. H.

12  Plaintiff's claim for prospective relief is therefore no longer justiciable, as this Court

13  has already recognized when considering indistinguishable circumstances.  *See*

14  *Seager*, 2019 WL 3822001, at *2; *Babb*, 378 F.Supp.3d at 886.

15          A plaintiff's claim becomes moot "when the issues presented are no longer

16  'live' or the parties lack a legally cognizable interest in the outcome."  *Rosebrock v.*

17  *Mathis*, 745 F.3d 963, 971 (9th Cir. 2014) (citation omitted).  "If an event occurs that

18  prevents the court from granting effective relief, the claim is moot and must be

19  dismissed."  *Am. Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1123 (9th

20  Cir. 1997).

21          No effective prospective relief remains available in this case.  Plaintiff

22  successfully resigned his UTLA membership, and his dues deductions ended months

23  ago.  Accordingly, he "can no longer benefit" from an injunction ordering UTLA to

24  cancel his membership and stop dues deductions, and his claim for such relief is

25  moot.  *Bain v. Cal. Teachers Ass'n*, 891 F.3d 1206, 1209 (9th Cir. 2018).

26          The same rule applies to Plaintiff's request for declaratory relief with respect

27  to California Government Code §3543.1 and California Education Code §45060 and

28  §45168.  FAC ¶¶45-47.  California Education Code §45060 address dues deductions

1    for certificated employees, providing, *inter alia*, that the governing board of a public

2    school employer "shall honor the terms of the employee's written authorization for

3    payroll deductions," *id.* §45060(e), and that a "revocable written authorization shall

4    remain in effect until expressly revoked in writing by the employee, pursuant to the

5    terms of the written authorization," *id.* §45060(c).  Section 45168 includes similar

6    provisions for "classified employees."  *Id.* §45168(a)(2) ("The revocable written

7    authorization shall remain in effect until expressly revoked in writing by the

8    employee in accordance with the terms of the authorization."); *id.* §45168(a)(6)

9    ("The governing board shall honor the terms of the employee's written authorization

10   for payroll deductions.").[4]  California Government Code §3543.1 describes the rights

11   of employee organizations, and subsection (d) provides that, once "an employee

12   organization is recognized as the exclusive representative," dues deductions pursuant

13   to Education Code §45060 and §45168 "shall not be permissible except to the

14   exclusive representative."

15       Where the undisputed evidence shows there is no reasonable likelihood that a

16   plaintiff will ever again be subject to the statute he challenges, his claim for

17   declaratory relief with respect to that statute is not justiciable.  *See Lewis v. Cont'l*

18   *Bank Corp.*, 494 U.S. 472, 479 (1990) (party must establish a "specific live

19   grievance against the application of the statutes" to pursue claims for declaratory and

20   injunctive relief) (internal quotation marks and citation omitted); *In re Di Giorgio*,

21   134 F.3d 971, 975 (9th Cir. 1998) (claim for prospective relief was moot where

22   plaintiff was no longer subject to the challenged statute); *see also Bain*, 891 F.3d at

---

[4] To the extent Plaintiff seeks to challenge Education Code §45168(b), which addresses deductions for "service fees" pursuant to an organizational security arrangement, Plaintiff does not have standing to do so.  *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000) ("[A] plaintiff must demonstrate standing separately for each form of relief sought.").  Few never paid "service fees"; he paid union dues deducted pursuant to his express written authorization.  *See* Cal. Gov't Code §3540.1(i)(2) (explaining service fees); FAC ¶¶4, 16-18.

1214.   Plaintiff's claim for declaratory relief with respect to the California statutes he challenges is nonjusticiable because, following his resignation from UTLA and the termination of his membership dues deductions, he is no longer subject to those statutes.  "[N]umerous courts," including this Court in other cases involving UTLA, have correctly ruled that similar claims for injunctive and declaratory relief "are moot once the dues collection has ended."  *Mayer*, 2019 WL 4674397, at *3; *see id.* n.27 (citing cases); *Seager*, 2019 WL 3822001, at *2 (where UTLA had processed the plaintiff's revocation of her authorization for membership dues "Plaintiff's claims for prospective relief from further dues deductions and her request for relief from further enforcement of § 45060(a) are moot"); *Babb*, 378 F.Supp.3d at 886 (plaintiff "would have to rejoin his union for his claim to be live, which, given his representations in this lawsuit, seems a remote possibility").  The Court should reach the same conclusion here.[5]

The voluntary-cessation doctrine does not save Plaintiff's claims for prospective relief because there is no reasonable possibility the conduct Plaintiff challenges could recur.  For Plaintiff to pay further dues through payroll deduction, he would have to choose to rejoin UTLA and authorize dues again, *see* Mar Decl. ¶11, and Plaintiff has made clear he does not wish to do so.  Moreover, the circumstances that Plaintiff (incorrectly) contends made his prior consent to dues deductions not "freely given" – the existence of fair-share fees for nonmembers – no

---

[5] Even if Plaintiff's claim for declaratory relief were not moot, it would be meritless. Plaintiff asserts that these statutes are unconstitutional because they permitted UTLA and employees to enter into voluntary dues deduction authorization contracts with a 30-day revocation window.  FAC ¶45.  As this Court held in ruling on a similar statutory challenge, "*Janus* does not hold that employees have the right to resign from a union however they want," *Babb*, 378 F.Supp.3d at 886 (addressing challenge to §45060's requirement that union resignation be in writing and directed to the union rather than the employer), nor does it hold that employees may renege on their voluntary contractual commitments to pay money to the union at any time or in any manner.  *See infra* Part II.A.

longer exist after the decision in *Janus*.  *See* JSUF ¶14.  It is thus "absolutely clear that the allegedly wrongful behavior" – deduction of dues based on consent given when nonmembers paid fair-share fees – "c[an] not reasonably be expected to recur." *Rosebrock*, 745 F.3d at 971.

Nor would the capable-of-repetition-yet-evading-review doctrine apply regarding Plaintiff's claims for prospective relief.  That doctrine requires a showing that Plaintiff himself would be "subject to the complained-of conduct in the future," which is implausible for the reasons just explained.  *Johnson v. Rancho Santiago Cmty. Coll. Dist.*, 623 F.3d 1011, 1021 (9th Cir. 2010).  Further, the First Amendment issues will not evade review because Plaintiff is also seeking retrospective relief.

## II.   The Union Is Entitled to Summary Judgment on Plaintiff's Claim for Damages.

Plaintiff seeks compensatory damages to recover all dues he paid during his employment, on the theory that his First Amendment rights were violated when those dues were deducted from his pay.  FAC ¶50; *id.* Prayer for Relief ¶f.  In the alternative, Plaintiff seeks as damages all dues deducted since he submitted his resignation letter, or all dues deducted since the Supreme Court's decision in *Janus* on June 27, 2018.  FAC ¶¶51-52; *id.* Prayer for Relief ¶¶g-h.  Plaintiff's damages claim is meritless because the undisputed facts establish that he voluntarily authorized the challenged deductions.  This Court has already considered and rejected indistinguishable claims, noting the "growing consensus" of authority that *Janus* had no effect on union members' voluntary consent to dues deductions, including consents that were provided before *Janus*.  *Seager*, 2019 WL 3822001, at *2 ("Plaintiff's First Amendment claim for return of dues paid pursuant to her voluntary union membership agreement fails as a matter of law."); *Babb*, 378 F.Supp.3d at 877 ("Plaintiffs voluntarily chose to pay membership dues in exchange for certain benefits, and '[t]he fact that plaintiffs would not have opted to pay union

membership fees if *Janus* had been the law at the time of their decision does not mean their decision was therefore coerced.'") (quoting *Crockett*, 367 F.Supp.3d at 1008). Plaintiff's claim for damages based on post-June 4, 2018 deductions, all of which UTLA refunded to Plaintiff, fails both for this reason and for the independent reason that the claim is moot.

**A. Deductions Made Pursuant to Plaintiff's Express, Voluntary Dues Deduction Authorization Did Not Violate His First Amendment Rights.**

**1. Plaintiff voluntarily authorized dues deductions as part of a contract with UTLA.**

The First Amendment prohibits the government from *compelling* an individual to subsidize another private party's expressive activities. *See, e.g.*, *Janus*, 138 S.Ct. at 2464 (explaining that "*compelled* subsidization of private speech seriously impinges on First Amendment rights") (emphasis added). But Plaintiff's choice to join UTLA and authorize union dues deductions was not compelled by the government; it was voluntary, expressive activity that is protected, not proscribed, by the First Amendment. *See, e.g.*, *Buckley v. Valeo*, 424 U.S. 1, 16 (1976). "Where the employee has a choice of union membership and the employee chooses to join, the union membership money is not coerced. The employee is a union member voluntarily." *Kidwell v. Transp. Commc'ns Int'l Union*, 946 F.2d 283, 292-93 (4th Cir. 1991); *cf. Masters v. Screen Actors Guild*, 2004 WL 3203950, at *5 n.6 (C.D. Cal. Dec. 8, 2004) (citing *Kidwell* to find that "a union is entitled to require, as a condition of membership, that members pay a fee that covers the costs of both the union's non-representational and representational activities[]"); *Farrell v. Int'l Ass'n of Firefighters*, 781 F.Supp. 647, 649 (N.D. Cal. 1992) (following *Kidwell* and rejecting First Amendment claims brought by public sector union members).[6] Thus,

---

[6] The Supreme Court has emphasized that any pressure that union-represented employees may feel to join the union that represents their bargaining units is "no

1   the deduction of dues pursuant to Plaintiff's own authorization did not violate his

2   First Amendment rights.

3          Further, by voluntarily agreeing to pay dues through payroll deductions in

4   exchange for access to the rights and benefits of union membership, *see* Mar Decl.

5   ¶¶3, 5, Plaintiff entered into an enforceable contract with UTLA.  *See N.L.R.B. v.*

6   *U.S. Postal Serv.*, 827 F.2d 548, 554 (9th Cir. 1987) ("dues-checkoff authorization is

7   a contract," and "[a] party's duty to perform even a wholly executory contract is not

8   excused merely because he decides that he no longer wants the consideration for

9   which he has bargained…."); *Belgau v. Inslee*, 2018 WL 4931602, at *5 (W.D.

10  Wash. Oct. 11, 2018) ("*Belgau I*") ("Here, unlike in *Janus*, the Plaintiffs entered into

11  a contract with the Union to be Union members and agreed in that contract to pay

12  Union dues …."); *Smith I*, 2018 WL 6072806, at *1 (plaintiff who signed

13  membership agreement "formed a contract with [the union]"); *Fisk v. Inslee*, 2017

14  WL 4619223, at *4 (W.D. Wash. Oct. 16, 2017) (signed card with dues authorization

15  agreement was "a valid contract"), *aff'd*, 759 F.App'x 632 (9th Cir. 2019); *Cooley I*,

16  2019 WL 331170, at *3; *Crockett*, 367 F.Supp.3d at 1008; *Bermudez*, 2019 WL

17  1615414, at *2; *see also Cohen v. Cowles Media Co.*, 501 U.S. 663, 672 (1991)

18  (First Amendment did not preclude enforcement of newspaper's promise not to

19  reveal source).

20         As this Court has already acknowledged, *Janus* did not change the law

21  governing the formation and enforcement of such voluntary contracts between

22  unions and their members.  *See Seager*, 2019 WL 3822001, at *2.  The question in

23  *Janus* was whether it was consistent with the First Amendment for the State to

24  compel *nonmembers* of a union – *i.e.*, individuals who had *not* affirmatively chosen

25  _____

26  different from the pressure to join a majority party that persons in the minority
    always feel" and "does not create an unconstitutional inhibition on associational

27  freedom."  *Minn. State Bd. for Cmty. Colleges v. Knight*, 465 U.S. 271, 290 (1984);
    *see also Bain*, 891 F.3d at 1219-20; *Clark v. City of Seattle*, 2017 WL 3641908, at

28  *3 (W.D. Wash. Aug. 24, 2017).

1    to join a union and had *not* affirmatively chosen to enter into a contract to secure

2    member rights and benefits in exchange for paying dues – to pay fees to a union as a

3    condition of government employment.  138 S.Ct. at 2459-60.

4          Plaintiff's voluntary decision to choose union membership and expressly

5    commit to paying dues in exchange for membership rights and benefits was

6    completely different from the compelled nonmember payments at issue in *Janus*.

7    Every court to have considered the issue (including this Court) has agreed that

8    "*Janus* says nothing about people [who] join a Union, agree to pay dues, and then

9    later change their mind about paying union dues."  *Belgau I*, 2018 WL 4931602, at

10   *5; *see Seager*, 2019 WL 3822001, at *2; *Smith II*, 2019 WL 2476679, at *2 ("*Janus*

11   did not concern the relationship of unions and members; it concerned the relationship

12   of unions and non-members."); *O'Callaghan*, 2019 WL 2635585, at *3 ("[N]othing

13   in *Janus*'s holding requires unions to cease deductions for individuals who have

14   affirmatively chosen to become union members and accept the terms of a contract

15   ….."); *Smith I*, 2018 WL 6072806, at *1 (*Janus* "does not give Smith license to evade

16   his contract"); *Cooley I*, 2019 WL 331170, at *3 ("Mr. Cooley's alleged harm stems

17   from his previous consent to pay union membership dues, not from a compulsory

18   nonmember agency fee.  Thus, on its face, *Janus* does not provide the relief Mr.

19   Cooley seeks.").

20              **2.    Plaintiff's pre-Janus consent to membership dues deductions**
21                      **was "freely given."**

22         Plaintiff has conceded that he signed UTLA membership cards and dues

23   deduction authorizations in 2016 and February 2018.  FAC ¶¶16-17.  His claim for

24   damages based on deductions prior to June 2018, when he submitted his resignation

25   letter, therefore rests wholly on his contention that the consent he provided in those

26   membership agreements "was not 'freely given' because it was given based on an

27   unconstitutional choice between union membership or the payment of union agency

28

1  fees without the benefit of membership." *Id.* ¶42.[7]  Plaintiff asserts that, had

2  nonmembers not been required to pay fair-share fees, he would have made a

3  different choice. *Id.* ¶43.

4  　　　As this Court has already held, the fact that Plaintiff voluntarily signed his

5  dues deduction authorization when *Abood* rather than *Janus* was the law does not

6  make that contract unenforceable, and does not make Plaintiff's consent anything

7  other than "freely given." *Seager*, 2019 WL 3822001, at *2; *Babb*, 378 F.Supp.3d at

8  877 (citing *Crockett*, 367 F.Supp.3d at 1007-09).  Before *Janus*, those who elected

9  not to join the union paid compulsory fair-share fees that were less than the dues

10  Plaintiff agreed to pay as a union member.  JSUF ¶14.  After *Janus*, employees who

11  have never agreed to pay union dues are no longer required to pay those fees. *Id.*

12  ¶14; Mar Decl. ¶4.  But it is well-established that parties cannot renege on their

13  contractual commitments based on such changes in the law.  For instance, in *Coltec*

14  *Industries, Inc. v. Hobgood*, 280 F.3d 262 (3d Cir. 2002), a coal company attempted

15  to rescind an agreement in which it had agreed to dismiss certain causes of action

16  against a benefit fund in exchange for the right to seek a reduction of the amount of

17  payments it owed to that fund. *Id.* at 267-69.  The company claimed it entered into

18  the agreement because of a statutory provision affecting possible alternatives that the

19  Supreme Court later held unconstitutional. *See id.*  The Third Circuit held the

20  company to its bargain, notwithstanding the subsequent invalidation of the statute.

21  *See id.* at 273-77.

22  　　　Even in cases involving plea agreements – contracts that waive a person's

23  fundamental right to personal liberty and constitutional rights to a jury trial and not

24  to testify against herself, *Puckett v. United States*, 556 U.S. 129, 137 (2009) – courts

25  

26  [7] Plaintiff's claim is also barred in part by the statute of limitations.  The statute of limitations for claims filed in California under 42 U.S.C. §1983 is two years.

27  *Colony Cove Properties, LLC v. City of Carson*, 640 F.3d 948, 956 (9th Cir. 2011).  Plaintiff's initial complaint was filed November 9, 2018, more than two years after

28  he signed his first dues deduction authorization on September 8, 2016, JSUF Ex. A.

1   have consistently held that a defendant who may have accepted a plea agreement in

2   part to protect against an alternative later deemed unconstitutional cannot avoid

3   enforcement of that agreement.  In *Brady v. United States*, 397 U.S. 742 (1970), for

4   example, the Supreme Court held that a defendant could not rescind his plea

5   agreement even though he claimed he entered the plea under the pressure induced by

6   a death penalty statute later found by the Court to have been unconstitutional.  The

7   Court explained that by pleading guilty, the defendant was waiving his constitutional

8   right to a jury trial, and "[w]aivers of constitutional rights not only must be voluntary

9   but must be knowing, intelligent acts done with sufficient awareness of the relevant

10  circumstances and likely consequences.  On neither score was [the defendant's] plea

11  of guilty invalid." *Id.* at 748.  Thus, even though the defendant pled guilty when he

12  was facing the death penalty under a statute that was later held unconstitutional, the

13  Supreme Court held that he had "voluntar[ily]" and "knowing[ly]" waived his

14  constitutional rights at the time of his plea.  *Id.*  The Court then squarely held that "a

15  voluntary plea of guilty intelligently made *in the light of the then applicable law*

16  does not become vulnerable because later judicial decisions indicate that the plea

17  rested on a faulty premise." *Id.* at 757 (emphasis added).

18      The Fourth Circuit drove this point home in *Dingle v. Stevenson*, 840 F.3d 171

19  (4th Cir. 2016).  There, the defendant pleaded guilty to avoid the death penalty for a

20  crime he had committed as a juvenile, and later sought to rescind that plea after the

21  Supreme Court categorically invalidated the juvenile death penalty in *Roper v.*

22  *Simmons*, 543 U.S. 551 (2005).  The Fourth Circuit refused to rescind the guilty plea,

23  reasoning that the defendant's plea had to be evaluated "under the law as it existed at

24  the time." *Dingle*, 840 F.3d at 175.  The Court explained:

25          Contracts in general are a bet on the future.  Plea bargains are no
26          different: a classic guilty plea permits a defendant to gain a present
            benefit in return for the risk that he may have to forego future favorable
27          legal developments.  Dingle received that present benefit – avoiding the
            death penalty and life without parole – under the law as it existed at the
28          time.  Although *Roper*, in hindsight, altered the calculus underlying

> Dingle's decision to accept a plea agreement, it does not undermine the
> voluntariness of his plea.  Some element of pressure exists in every deal,
> as the tradeoff between present certainty and future uncertainty is
> emblematic of the process of plea bargaining.  *Brady* makes all that
> exceptionally clear and in following its teachings we find no infirmity in
> the plea that Dingle entered.

*Id.* at 175-76 (emphasis added).

These authorities foreclose Plaintiff's contention that he could not have "freely" chosen to authorize membership dues deductions because his alternative at the time was to pay fair-share fees.  *See Smith II*, 2019 WL 2476679, at *2 ("changes in intervening law – even constitutional law – do not invalidate a contract") (citing *Brady* and *Dingle*); *Anderson v. Serv. Emps. Int'l Union Local 503*, _F.Supp.3d_, 2019 WL 4246688, at *3 (D. Or. Sept. 4, 2019) (same); *Cooley II*, 385 F.Supp.3d at 1080 ("[A]n intervening change in law does not taint that consent or invalidate his contractual agreement.").

## B.  Plaintiff's Challenge to the Terms of His Dues Authorization Also Fails for Lack of State Action.

There is another fundamental problem with Plaintiff's First Amendment challenge to his own dues authorization: enforcement of the voluntary, private agreement between Plaintiff and UTLA does not constitute "state action" subject to First Amendment scrutiny.  To state a claim under 42 U.S.C. §1983, "'the conduct allegedly causing the deprivation of a federal right [must] be fairly attributable to the State.'"  *Ohno v. Yasuma*, 723 F.3d 984, 993 (9th Cir. 2013) (quoting *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 936-37 (1982)).  If the conduct Plaintiff challenges "is not so attributable, then there is no 'state action' and no violation" of the First Amendment.  *Ohno*, 723 F.3d at 993.

Plaintiff alleges that "UTLA [was] acting in concert" with the Superintendent because the Superintendent collected dues from his paycheck and purportedly enforced the revocation window in Plaintiff's dues authorization agreement.  FAC

1   ¶38; *see id.* ¶39 ("UTLA and Superintendent Beutner have limited withdrawal from

2   the union to an arbitrary 30-day period per year ...."). In other words, the state

3   conduct at issue here involves, at most, the Superintendent's compliance with the

4   terms of the contractual dues deduction agreement Plaintiff voluntarily entered into

5   with UTLA. Neither the terms of that private agreement nor the District's

6   ministerial compliance with that agreement constitute state action subject to a First

7   Amendment §1983 challenge. *See Belgau II*, 359 F.Supp.3d at 1012-15; *Cooley II*,

8   385 F.Supp.3d at 1081-82; *Bain v. Cal. Teachers Ass'n*, 156 F.Supp.3d 1142, 1151-

9   54 (C.D. Cal. 2015) ("*Bain I*"), *subsequent order*, 2016 WL 6804921 (C.D. Cal. May

10  2, 2016) ("*Bain II*"), *appeal dismissed as moot*, 891 F.3d 1206 (9th Cir. 2018).

11  Plaintiff was not required to join UTLA as a condition of his employment, Mar Decl.

12  ¶2; he chose to do so. Likewise, California law does not specify the terms of

13  voluntary dues authorization agreements between unions and their members; it

14  simply requires employers like LAUSD to comply with their terms. *See* Cal. Gov't

15  Code §3543.5(d) (forbidding employer to "[d]ominate or interfere with the formation

16  or administration of any employee organization"); Cal. Educ. Code §45060(a)

17  (employer "shall reduce the [salary payment] order by the amount which it has been

18  requested in a revocable written authorization by the employee"); *id.* (revocation

19  "shall be in writing and shall be effective provided the revocation complies with the

20  terms of the written authorization"); *id.* §45060(e); *id.* §45168(a)(1), (2), (3), (6).

21  Where a government actor has no role in setting the terms of the dues authorization

22  agreements between a public sector union and its members, but merely honors those

23  agreements according to their terms, the state action that is a prerequisite for a First

24  Amendment claim is absent. *Belgau II*, 359 F.Supp.3d at 1012-15; *see also Blum v.*

25  *Yaretsky*, 457 U.S. 991, 1005 (1982) (that a government actor may respond to a

26  private party's actions "by adjusting [its own conduct] does not render it *responsible*

27  for those actions"); *Roberts v. AT&T Mobility LLC*, 877 F.3d 833, 844 (9th Cir.

28  2017) (court enforcement of private agreement to arbitrate claims is not state action

that permits a §1983 suit against party to agreement; "Because no federal law required Plaintiffs to waive their right to litigate, there is no state action simply because the state enforces that private agreement.") (internal quotation marks and brackets omitted).

### C. Plaintiff's Damages Claim for Post-June 4, 2018 Deductions Does Not Present a Justiciable Controversy.

Plaintiff's claim for a refund of dues deducted *after* his resignation from membership fails for the additional reason that those dues already were refunded with interest, so the claim is moot.

On February 13, 2018, Plaintiff voluntarily entered a binding contract with UTLA to pay dues for a one-year period "*irrespective of [his] membership*."  JSUF Ex. B (emphasis added); *see supra* Part II.A.  He then resigned his membership in June 2018, and sought to cease dues deductions prior to the start of the window period specified in his dues deduction authorization.  JSUF Exs. C, H.  The dues deductions that occurred after Plaintiff's resignation (and before they were fully refunded) were permitted by the unambiguous, express terms of his dues authorization agreement.

As explained above, *see supra* Part II.A, this Court and numerous others have uniformly held that *Janus* does not permit public employees to renege on such express, voluntary contractual commitments to pay money to a union, including commitments to pay dues through payroll deduction for a defined period of time, regardless whether the employee resigns from union membership.  *See Seager*, 2019 WL 3822001, at *2; *O'Callaghan*, 2019 WL 2635585, at *3 ("[N]othing in *Janus*'s holding requires unions to cease deductions for individuals who have affirmatively chosen to become union members and accept the terms of a contract that may limit their ability to revoke authorized dues-deductions in exchange for union membership rights, such as voting, merely because they later decide to resign membership."); *Anderson*, 2019 WL 4246688, at *2 (citing, *inter alia*, *Fisk v. Inslee*, 759 F.App'x

632, 633 (9th Cir. 2019)); *Smith II*, 2019 WL 2476679, at *2; *Smith I*, 2018 WL 6072806, at *1. Thus, Plaintiff's First Amendment claim for damages based on post-June 4, 2018 deductions fails as a matter of law.

But this Court also lacks jurisdiction over that claim, because Plaintiff has already received a full refund (plus interest) of all deductions made after he submitted his resignation letter. JSUF ¶¶9-10, 12 & Ex. H.

Retrospective damages under §1983 are limited to those necessary "to compensate injuries caused by the constitutional deprivation" alleged. *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 309 (1986) (emphasis and brackets omitted) (quoting *Carey v. Piphus*, 435 U.S. 247, 265 (1978)). Count I seeks "damages in the amount of all dues deducted and remitted to UTLA …." FAC ¶¶50-52; *id.* Prayer for Relief ¶¶f-h. The undisputed facts establish that Plaintiff has already received an unconditional refund of the full amount in damages that he seeks for the post-resignation period. *See* JSUF ¶¶9-10; FAC ¶51 (seeking "damages in the amount of all dues deducted and remitted to UTLA since he sent a letter to the union asking to resign"). As a result, Plaintiff "ha[s] no present need for remedial relief from the federal courts" with respect to those dues, and his claim for relief with respect to those dues is moot. *S-1 v. Spangler*, 832 F.2d 294, 297 (4th Cir. 1987) (dismissing §1983 action as moot where plaintiffs had obtained tuition reimbursement that was "ultimate object of their action"). The issues presented by Plaintiff's claim for post-June 4, 2018 relief "are no longer 'live'" and Plaintiff "lack[s] a legally cognizable interest in the outcome" of his suit with respect to this claim. *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (quotation omitted).

In indistinguishable circumstances, courts have held that claims challenging the deduction of union dues following a plaintiff's resignation from membership were moot where the union had fully and unconditionally refunded those dues. *See Weyandt v. Pa. State Corrs. Officers Ass'ns*, 2019 WL 5191103, at *3-5 (M.D. Pa. Oct. 15, 2019) (named plaintiffs' claim was moot where they were allowed to resign

and post-resignation dues were refunded because dispute was "unaccompanied by any continuing, present adverse effects") (citations omitted); *Mayer*, 2019 WL 4674397, at *3 (dismissing claims challenging post-resignation dues payments because "Plaintiff has received a refund for the dues that were paid after he resigned from the Union, and his actual injury therefore has been redressed"); *Molina v. Pa. Soc. Serv. Union*, 392 F.Supp.3d 469, 482 (M.D. Pa. 2019) ("Plaintiff's claim has been rendered moot by the refund provided by Defendants.").  The same result is required here.  *See also Lamberty v. Conn. State Police Union*, 2018 WL 5115559, at *6-8 (D. Conn. Oct. 19, 2018) (claims seeking damages based on prior deductions of fair-share fees were moot because defendant union refunded all fair-share fees that had been deducted, plus interest, after Supreme Court issued *Janus*); *Sands v. NLRB*, 825 F.3d 778, 783-85 (D.C. Cir. 2016) (unfair practice claim against union for purportedly failing to inform member that she had option of paying agency fees rendered moot by union's tendering of refund of dues paid); *cf. Babb*, 378 F.Supp.3d at 886 (claim challenging delay in processing of public employee's request to resign union membership was moot because employee was no longer a union member and "suffered no damages because of the … delay").

## CONCLUSION

For the foregoing reasons, summary judgment should be granted in favor of UTLA on Plaintiff's remaining claim.

Dated:  October 18, 2019          Respectfully submitted,

By:        /s/P. Casey Pitts
                 P. Casey Pitts

SCOTT A. KRONLAND
P. CASEY PITTS
ALTSHULER BERZON LLP

IRA L. GOTTLIEB
BUSH GOTTLIEB, A Law Corporation

*Attorneys for Defendant*
*United Teachers Los Angeles*