SCOTT A. KRONLAND (SBN 171693)
skronland@altshulerberzon.com
P. CASEY PITTS (SBN 262463)
cpitts@altshulerberzon.com
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064

IRA L. GOTTLIEB (SBN 103236)
igottlieb@bushgottlieb.com
BUSH GOTTLIEB, A Law Corporation
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260
Telephone: (818) 973-3200
Facsimile: (818) 973-3201

*Attorneys for Defendant United Teachers Los Angeles*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS FEW,<br><br>         Plaintiff,<br><br>    v.<br><br>UNITED TEACHERS LOS ANGELES, *et al.*,<br><br>         Defendants. | CASE NO:  2:18-cv-09531-JLS-DFM<br><br>**UTLA'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date:  Dec. 6, 2019<br>Hearing Time: 10:30 a.m.[*]<br>Location:       Courtroom 10A<br><br>Hon. Josephine L. Staton |

---

[*] The parties have submitted a request to waive oral argument on their motions for summary judgment.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................... ii

INTRODUCTION .................................................................................... 1

BACKGROUND ..................................................................................... 2

ARGUMENT .......................................................................................... 4

I.    Plaintiff's Claim for Prospective Relief Is Moot ........................ 4

II.   Plaintiff's First Amendment Rights Were Not Violated When He Paid the Union Dues that He Voluntarily Agreed to Pay .................................. 7

    A.   The First Amendment Prohibits Government Compulsion, Whereas Plaintiff Voluntarily Joined UTLA and Authorized the Deduction of Membership Dues ................................... 8

    B.   Plaintiff's Claim for Post-Resignation Deductions Is Moot .......... 15

    C.   The Good Faith Defense Would Preclude Summary Judgment for Plaintiff in Any Event .......................................... 16

CONCLUSION...................................................................................... 19

# TABLE OF AUTHORITIES

**Federal Cases**

*Abood v. Detroit Bd. of Educ.*,
    431 U.S. 209 (1977) .................................................................................. 8, 17

*Allen v. Santa Clara Cty. Corr. Peace Officers Ass'n*,
    __F.Supp.3d__, 2019 WL 4302744 (E.D. Cal. Sept. 11, 2019)........................... 18

*Already, LLC v. Nike, Inc.*,
    568 U.S. 85 (2013) ......................................................................................... 6

*Ams. United for Separation of Church & State v. Prison Fellowship*
    *Ministries, Inc.*,
    509 F.3d 406 (8th Cir. 2007) ......................................................................... 18

*Anderson v. Serv. Emps. Int'l Union Local 503*,
    2019 WL 4246688 (D. Or. Sept. 4, 2019) ....................................................... 16

*Babb v. Cal. Teachers Ass'n*,
    378 F.Supp.3d 857 (C.D. Cal. 2019) .................................................... *passim*

*Bain v. Cal. Teachers Ass'n*,
    156 F.Supp.3d 1142, 1151-54 (C.D. Cal. 2015) ................................................. 9

*Belgau v. Inslee*,
    2018 WL 4931602 (W.D. Wash. Oct. 11, 2018).......................................... 9, 16

*Belgau v. Inslee*,
    359 F.Supp.3d 1000 (W.D. Wash. 2019) ........................................................ 9

*Brady v. United States*,
    397 U.S. 742 (1970) ............................................................................... 13, 14

*Carey v. Inslee*,
    364 F.Supp.3d 1220 (W.D. Wash. 2019) ...................................................... 18

*Charter Commc'ns, Inc. v. Cty. of Santa Cruz*,
    304 F.3d 927 (9th Cir. 2002) ....................................................................... 11

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ...................................................................................... 5, 7

*Clement v. City of Glendale*,
    518 F.3d 1090 (9th Cir. 2008) ..................................................................... 17

*Cohen v. Cowles Media Co.*,
    501 U.S. 663 (1991) ..................................................................... 11, 16

*Coll. Savings Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*,
    527 U.S. 666 (1999) ............................................................................. 12

*Coltec Indus. v. Hobgood*,
    280 F.3d 262 (3d Cir. 2002) ................................................................ 13

*Cook v. Brown*,
    364 F.Supp.3d 1184 (D. Or. 2019) ..................................................... 18

*Cooley v. Cal. Statewide Law Enforcement Ass'n*,
    2019 WL 331170 (E.D. Cal. Jan. 25, 2019) ......................................... 9

*Cooley v. Cal. Statewide Law Enforcement Ass'n*,
    385 F.Supp.3d 1077 (E.D. Cal. 2019) .................................................. 9

*Crockett v. NEA-Alaska*,
    367 F.Supp.3d 996 (D. Alaska 2019) ...................................... 9, 17, 18

*Cty. of Riverside v. McLaughlin*,
    500 U.S. 44 (1991) ................................................................................ 5

*D. H. Overmyer Co. Inc. v. Frick Co.*,
    405 U.S. 174 (1972) ............................................................................ 11

*Danielson v. AFSCME Council 28*,
    340 F.Supp.3d 1083 (W.D. Wash. 2018) ........................................... 18

*Diamond v. Pa. State Educ. Ass'n*,
    2019 WL 2929875 (W.D. Pa. July 8, 2019) ....................................... 18

*Dingle v. Stevenson*,
    840 F.3d 171 (4th Cir. 2016) ............................................................... 13

*Fisk v. Inslee*,
    759 F.App'x 632 (9th Cir. 2019) ......................................................... 5

*Franklin v. Fox*,
    2001 WL 114438 (N.D. Cal. Jan. 22, 2001) ...................................... 18

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000) .............................................................................. 6

iii

*Gerstein v. Pugh*,
　420 U.S. 103 (1975) ................................................................................... 5

*Golden v. Zwickler*,
　394 U.S. 103 (1969) ................................................................................... 4

*Hernandez v. AFSCME Cal.*,
　386 F.Supp.3d 1300 (E.D. Cal. 2019) ............................................... 17, 18

*Hough v. SEIU Local 521*,
　2019 WL 1785414 (N.D. Cal. Apr. 16, 2019) ......................................... 18

*Imbler v. Pachtman*,
　424 U.S. 409 (1976) ................................................................................. 17

*Janus v. AFSCME, Council 31*,
　138 S.Ct. 2448 (2018) ........................................................................*passim*

*Janus v. AFSCME, Council 31*,
　2019 WL 1239780 (N.D. Ill. Mar. 18, 2019) .......................................... 18

*Janus v. AFSCME, Council 31*,
　__F.3d__, 2019 WL 5704367 (7th Cir. Nov. 5, 2019) .................................. 17, 18

*Johnson v. Rancho Santiago Cmty. Coll. Dist.*,
　623 F.3d 1011 (9th Cir. 2010) .............................................................. 5, 6

*Johnson v. Zerbst*,
　304 U.S. 458 (1938) ................................................................................. 12

*Knox v. Serv. Emps. Int'l Union, Local 1000*,
　567 U.S. 298 (2012) ................................................................................... 7

*Lane v. Williams*,
　455 U.S. 624 (1982) ................................................................................... 4

*Lee v. Ohio Educ. Ass'n*,
　366 F.Supp.3d 980 (N.D. Ohio 2019) ..................................................... 18

*Leonard v. Clark*,
　12 F.3d 885 (9th Cir. 1993) ............................................................... 11, 12

*Lewis v. Cont'l Bank Corp.*,
　494 U.S. 472 (1990) ............................................................................... 5, 7

*Linkenhoker v. Weinberger*,
    529 F.2d 51 (4th Cir. 1975) ............................................................................. 6

*Lugar v. Edmondson Oil Co*.,
    457 U.S. 922 (1982) ....................................................................................... 9

*Mayer v. Wallingford-Swarthmore Sch. Dist.*,
    __ F.Supp.3d __, 2019 WL 4674397 (E.D. Pa. Sept. 24, 2019) ..................... 4, 15

*Miranda v. Arizona*,
    384 U.S. 436 (1966) ..................................................................................... 12

*Molina v. Pa. Soc. Serv. Union*,
    392 F.Supp.3d 469 (M.D. Pa. 2019) .............................................................. 15

*Mooney v. Ill. Educ. Ass'n*,
    __F.3d__, 2019 WL 5704368 (7th Cir. Nov. 5, 2019) ..................................... 19

*Nat'l Abortion Fed'n v. Ctr. for Med. Progress*,
    685 F.App'x 623 (9th Cir. 2017) ..................................................................... 11

*NLRB v. U.S. Postal Serv*.,
    827 F.2d 548 (9th Cir. 1987) ......................................................................... 16

*O'Callaghan v. Regents of the Univ. of Cal*.,
    2019 WL 2635585 (C.D. Cal. June 10, 2019) ............................................... 9, 16

*Ogle v. Ohio Civil Serv. Emps. Ass'n*,
    2019 WL 3227936 (S.D. Ohio July 17, 2019) ............................................ 17, 18

*Ohio Bell Tel. Co. v. Pub. Utilities Comm'n of Ohio*,
    301 U.S. 292 (1937) ..................................................................................... 12

*Ohno v. Yasuma*,
    723 F.3d 984 (9th Cir. 2013) ........................................................................... 9

*Reynolds Metals Co. v. Ellis*,
    202 F.3d 1246 (9th Cir. 2000) ......................................................................... 5

*Roe v. Wade*,
    410 U.S. 113 (1973) ....................................................................................... 6

*Schneckloth v. Bustamonte*,
    412 U.S. 218 (1973) ................................................................................. 11, 12

*Seager v. United Teachers Los Angeles*,
   2019 WL 3822001 (C.D. Cal. Aug. 14, 2019) ...............................................*passim*

*Smith v. Bieker*,
   2019 WL 2476679 (N.D. Cal. June 13, 2019) ................................................... 9, 16

*Smith v. Superior Court*,
   2018 WL 6072806 (N.D. Cal. Nov. 16, 2018) ....................................... 8, 9, 10, 16

*Super Tire Engineering Co. v. McCorkle*,
   416 U.S. 115 (1974) ............................................................................................. 6

*Weyandt v. Pa. State Corrs. Officers Ass'ns*,
   2019 WL 5191103 (M.D. Pa. Oct. 15, 2019) ....................................................... 15

**State Cases**

*Alaska v. Alaska State Emps. Ass'n*,
   No. 3AN-19-09971CI (Alaska Super. Ct. Oct. 3, 2019) ....................................... 10

*Dowling v. Farmers Ins. Exch.*,
   208 Cal.App.4th 685 (2012) ................................................................................ 13

*Hannah v. Steinman*,
   159 Cal. 142 (1911) ............................................................................................. 14

*Harris v. Rudin, Richman & Appel*,
   95 Cal.App.4th 1332 (2002) ................................................................................ 14

*Hayutin v. Weintraub*,
   207 Cal.App.2d 497 (1962) ................................................................................. 15

*Larsen v. Johannes*,
   7 Cal.App.3d 491 (1970) ..................................................................................... 14

*Perricone v. Perricone*,
   292 Conn. 187 (2009) .......................................................................................... 11

*Simmons v. Cal. Inst. of Tech.*,
   34 Cal.2d 264 (1949) ........................................................................................... 15

*Stermer v. Bd. of Dental Examiners*,
   95 Cal.App.4th 128 (2002) .................................................................................. 14

**Federal Statutes**

42 U.S.C. §1983 ............................................................................*passim*

**California Statutes**

California Education Code §45168 ...................................................... 17

California Government Code §3546....................................................... 17

**Other Authorities**

27 Williston on Contracts §70:1 (4th ed. 2019) .................................... 14

Restatement (Second) of Contracts §152 (1981)..................................... 14

1

## INTRODUCTION

2      Plaintiff's motion for summary judgment advances the same legal theory this

3  Court already rejected in *Seager v. United Teachers Los Angeles*, 2019 WL

4  3822001, at *2 (C.D. Cal. Aug. 14, 2019).  Contrary to Plaintiff's contention, his

5  First Amendment rights were not violated when his public employer processed the

6  union dues deductions that Plaintiff himself voluntarily and affirmatively

7  authorized.  *See id.*  Moreover, Plaintiff's claim for prospective relief is moot,

8  because he is no longer a member of defendant United Teachers Los Angeles

9  ("UTLA"), his dues deductions have ceased, and he does not intend to re-join

10  UTLA.  *See id.*  Plaintiff's claim for damages premised on dues deductions that

11  occurred after he resigned his union membership is likewise moot, because he

12  already received a full refund of all post-resignation dues.

13      Much of Plaintiff's brief is devoted to arguing that UTLA does not have a

14  good faith defense to his 42 U.S.C. §1983 claim.  This Court need not reach that

15  defense, however, because Plaintiff was a voluntary union member and did not

16  suffer any First Amendment violation in the first place.  In any event, the good faith

17  defense would preclude holding UTLA retrospectively liable for having collected

18  fair-share fees from non-members prior to the Supreme Court's decision in *Janus v.*

19  *AFSCME, Council 31*, 138 S.Ct. 2448 (2018).  This Court has already held that the

20  good faith defense applies under indistinguishable circumstances to bar §1983

21  claims from "regretful members" like Plaintiff.  *Babb v. Cal. Teachers Ass'n*, 378

22  F.Supp.3d 857, 876 (C.D. Cal. 2019).

23      For all the reasons set out in support of UTLA's motion for summary

24  judgment, Dkt. 72-1 ("UMSJ"), and those that follow, Plaintiff's sole remaining

25  claim fails on the undisputed facts, and his motion for summary judgment should be

26  denied.

27

28

1

**BACKGROUND**

2    In his motion, Plaintiff recites verbatim the facts in the parties' Joint

3    Statement of Undisputed Facts, Dkt. 71 ("JSUF").  Mem. ISO Pl.'s Mot. for Summ.

4    J., Dkt. 73-1 ("PMSJ") at 6-8.  UTLA has also provided a summary of the relevant

5    facts in its own motion for summary judgment, which it incorporates into this

6    opposition.  UMSJ at 3-6.  For the sake of efficiency, the summary that follows here

7    sets out only the key facts, rather than restating them in full:

8    Plaintiff Thomas Few, an educator employed by LAUSD, voluntarily chose

9    to become a UTLA member by signing a membership and dues deduction

10   authorization card on September 8, 2016.  JSUF ¶¶1, 2 & Ex. A; *see* Decl. of Harry

11   Mar ISO UTLA's Mot. for Summ. J., Dkt. 72-3 ("Mar Decl.) ¶¶2, 5.  He signed a

12   new membership and dues deduction authorization agreement on February 13,

13   2018, in which he again "voluntarily accept[ed] membership in UTLA."  JSUF Ex.

14   B.  The dues deduction authorization provided that he "agree[d] to pay regular

15   monthly dues uniformly applicable to members of UTLA," and "request[ed] and

16   voluntarily authorize[d] [his] employer to deduct from [his] earnings and to pay

17   over to UTLA such dues."  *Id.*  The authorization further provided:

18   > This agreement to pay dues shall remain in effect and shall be irrevocable
19   > unless I revoke it by sending written notice via U.S. mail to UTLA during the
       > period not less than thirty (30) days and not more than sixty (60) days before
20   > the annual anniversary date of this agreement or as otherwise required by law.
       > This agreement shall be automatically renewed from year to year unless I
21   > revoke it in writing during the window period, irrespective of my
22   > membership in UTLA.

23   *Id.*  Plaintiff received access to membership rights and members-only benefits in

24   exchange for joining UTLA as a member and agreeing to pay dues.  Mar Decl. ¶3.

25   On or about June 4, 2018, UTLA received a letter from Plaintiff stating that

26   he wanted to resign his union membership and to pay fair-share fees rather than full

27   membership dues.  *See* JSUF ¶4 & Ex. C.  On July 13, 2018, UTLA sent Plaintiff a

28   letter acknowledging receipt of his letter and reminding him of the terms of his dues

authorization agreement.  JSUF ¶5 & Ex. D.  The letter explained that Plaintiff could be a Dues Paying Non-Member until the 30-day window period specified in his dues authorization and explained how and when he could terminate his dues payment obligation in accordance with his agreement.  JSUF Ex. D.

On August 3, 2018, UTLA received another letter from Plaintiff requesting that UTLA stop all dues deductions in light of the Supreme Court's decision in *Janus*.  JSUF ¶6 & Ex. E.  UTLA received another letter from Plaintiff asking to end his dues deductions on or about October 10, 2018.  JSUF ¶7 & Ex. F.  On October 19, 2018, UTLA sent a letter in response, again reminding Plaintiff of the terms of his dues authorization agreement and that he could revoke his authorization during the upcoming annual window period.  JSUF ¶8 & Ex. G.

UTLA then sent a letter to Plaintiff on November 20, 2018, confirming that UTLA considered Plaintiff to have resigned his membership as of June 4, 2018, the date of his first letter.  JSUF ¶9 & Ex. H at 1; Mar Decl. ¶10.  UTLA's letter further explained that – notwithstanding the dues payment obligation to which Plaintiff had committed – UTLA had instructed LAUSD to stop all future union dues deductions and was refunding all money deducted from Plaintiff's paychecks after his June 4, 2018 resignation.  JSUF Ex. H at 1; Mar Decl. ¶¶9-11.  UTLA enclosed with the letter a check for $433.31, an amount sufficient to cover all Plaintiff's dues deductions after June 4, 2018, with interest.  Mar Decl. ¶¶9-11.  Plaintiff's counsel confirmed that Plaintiff had deposited the refund check; no further dues deductions have occurred.  JSUF ¶¶11-12 & Ex. I.

Plaintiff filed this lawsuit on November 9, 2018, Dkt. 1, and he filed his First Amended Complaint on December 28, 2018, Dkt. 38.  This Court dismissed one of two Counts in the First Amended Complaint on May 8, 2019.  *Babb*, 378 F.Supp.3d at 888.  All that remains is Count I, a First Amendment claim premised on deduction of money from Plaintiff's paycheck pursuant to his membership and dues deduction authorization agreement with UTLA.

1

# ARGUMENT

2

## I.    Plaintiff's Claim for Prospective Relief Is Moot.

3        In addition to damages, Plaintiff seeks declaratory relief.  PMSJ at 10 (asking

4   the Court to "declare that a request to end dues deductions is effective

5   immediately"); *id.* at 13 (requesting declaratory relief regarding the validity of his

6   consent to dues deduction and the scope of his First Amendment rights).  But

7   Plaintiff brings suit only on his own behalf, and it is undisputed that Plaintiff is no

8   longer a union member and is no longer subject to dues deductions.  JSUF ¶¶9-12 &

9   Ex. H; Mar Decl. ¶11.  To become subject to dues deductions again, Plaintiff would

10  have to voluntarily rejoin UTLA and sign a new dues deduction authorization

11  agreement.

12       Plaintiff's claim for declaratory relief is therefore moot, as UTLA

13  demonstrated in its motion for summary judgment, UMSJ at 7-10, and as this Court

14  has held with respect to indistinguishable claims, *see Seager*, 2019 WL 3822001, at

15  *2; *Babb*, 378 F.Supp.3d at 886; *see also Mayer v. Wallingford-Swarthmore Sch.*

16  *Dist.*, __ F.Supp.3d __, 2019 WL 4674397, at *3 (E.D. Pa. Sept. 24, 2019)

17  ("[N]umerous courts have ruled that cases similar to this one" seeking prospective

18  relief challenging dues deductions "are moot once the dues collection has ended.");

19  *id.* at *3 n.27 (citing numerous cases).  In a non-class action, a plaintiff may not keep

20  a moot claim alive by arguing that a declaratory judgment might benefit others.  *See*

21  *Lane v. Williams*, 455 U.S. 624, 634 (1982); *Golden v. Zwickler*, 394 U.S. 103, 109-

22  10 (1969); *cf.* PMSJ at 11 (arguing against mootness on the basis of application of

23  the revocation policy to "any employee who is not determined enough to sue," i.e., to

24  individuals *other* than Plaintiff).[1]

25       The capable-of-repetition-yet-evading-review doctrine does not save

26  Plaintiff's claim for prospective relief from mootness.  This doctrine applies only

27  _____

28  [1] To the extent Plaintiff is seeking injunctive relief, which his motion does not
       mention, that claim would be moot for the same reasons.  *See* UMSJ at 7-10.

1   "where … two circumstances [are] simultaneously present: (1) the challenged action
2   is in its duration too short to be fully litigated prior to its cessation or expiration, and
3   (2) there [is] a reasonable expectation that *the same complaining party* would be
4   subjected to the same action again."  *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 481
5   (1990) (internal quotation marks, brackets, and citation omitted; brackets and
6   emphasis added); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983)
7   (doctrine "applies only in exceptional situations, and generally only where *the named*
8   *plaintiff* can make a reasonable showing that he will again be subjected to the alleged
9   illegality") (emphasis added); *Johnson v. Rancho Santiago Cmty. Coll. Dist.*, 623
10  F.3d 1011, 1019 (9th Cir. 2010) (doctrine "applies only where (1) the duration of the
11  challenged action is too short to allow full litigation before it ceases, *and* (2) there is
12  a reasonable expectation that *the plaintiffs* will be subjected to it again") (quotation
13  marks, citations omitted; emphases added).

14      Plaintiff has not shown that it is reasonable to expect that he will elect to
15  rejoin the union and authorize dues deductions in the future, such that he would
16  again be subject to the policies he challenges.  *See* Mar Decl. ¶11; *see also Babb*, 378
17  F.Supp.3d at 886 (claim moot where public employee "would have to rejoin his
18  union for his claim to be live, which, given his representations in this lawsuit, seems
19  a remote possibility").  The capable-of-repetition-yet-evading-review exception thus
20  does not apply.

21      None of the cases that Plaintiff relies upon support his invocation of the
22  capable-of-repetition-yet-evading-review exception.

23      The unpublished disposition in *Fisk v. Inslee*, 759 F.App'x 632 (9th Cir. 2019)
24  (PMSJ at 11-12), is "not binding precedent," *Reynolds Metals Co. v. Ellis*, 202 F.3d
25  1246, 1249 (9th Cir. 2000), and in any event, *Fisk* was a putative class action.[2]  In

26  ──────────────────
27  [2] *Gerstein v. Pugh* and *County of Riverside v. McLaughlin*, the cases cited and relied
    upon by *Fisk*, explain why the mootness of a named plaintiff's claim *in a class*
28  *action* does not moot the entire class action.  *See Gerstein*, 420 U.S. 103, 110 n.11
    (1975); *McLaughlin*, 500 U.S. 44, 52 (1991).  In the third case that *Fisk* cited and

1   *Super Tire Engineering Co. v. McCorkle*, 416 U.S. 115 (1974) (PSMJ at 13), the

2   existence of the challenged policy "continue[d] to affect" the plaintiff employer."

3   416 U.S. at 126.  *Roe v. Wade*, 410 U.S. 113 (1973) (PSMJ at 13), was a putative

4   class action and, moreover, it was reasonably possible that the plaintiff and putative

5   class members could become pregnant again.  *See* 410 U.S. at 125; *see also, e.g.*,

6   *Linkenhoker v. Weinberger*, 529 F.2d 51, 52 (4th Cir. 1975) (contrasting *Roe*, which

7   was not moot because "plaintiff might again become pregnant and seek an abortion,"

8   with a case that was moot because "plaintiff would never again have to seek

9   admission to law school").

10          The voluntary-cessation exception to mootness also does not apply here.  As

11   an initial matter, Plaintiff's one-year dues commitment has already expired by its

12   own terms.  In any event, it is "absolutely clear the allegedly wrongful behavior

13   could not reasonably be expected to recur."  *Already, LLC v. Nike, Inc.*, 568 U.S. 85,

14   91 (2013) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,

15   528 U.S. 167, 190 (2000)); *see* UMSJ at 9-10.  Again, dues would be deducted in the

16   future only if Plaintiff chooses to rejoin UTLA and authorize them, which he does

17   not intend to do.

18          Moreover, the circumstances of a hypothetical future challenge to dues

19   deductions would necessarily be different: Plaintiff contends he did not freely

20   consent to the terms of his past dues deduction authorization agreements because, at

21   the time he consented, his alternative was to pay fair-share fees.  *See* PMSJ at 9-10.

22   After the Supreme Court's decision in *Janus*, UTLA stopped collecting fair-share

23   fees, JSUF ¶14, and Plaintiff was "informed of his constitutional rights by the *Janus*

24

25   relied upon, *Johnson v. Rancho Santiago Community College District*, the
     plaintiffs' prospective relief claims were not moot because there was a reasonable

26   possibility the plaintiffs could be subject a Project Stabilization Agreement ("PSA")

27   again.  623 F.3d at 1019-20; *cf. id.* at 1021 (individual apprentices' ERISA
     preemption claims *were* moot because they did not show reasonable expectation

28   that they would again be subject to a PSA in their capacity as apprentices).

decision," PMSJ at 10.  The scenario giving rise to Plaintiff's claim here therefore could not arise again.

Knox v. Service Employees International Union, Local 1000, 567 U.S. 298 (2012) (PMSJ at 12), is not on point, because in *Knox* there remained a live dispute about whether the union's notice and refund offer was adequate.  567 U.S. at 307-08. Here there can be no live dispute about the *adequacy* of prospective relief because Plaintiff has no interest in any prospective relief.

In sum, Plaintiff lacks a "personal stake in the outcome" of his claim for prospective relief, and none of the asserted exceptions to mootness apply.  *Lewis*, 494 U.S. at 478 (quoting *Lyons*, 461 U.S. at 101).  Under these circumstances, this Court lacks jurisdiction to consider Plaintiff's claim for prospective relief, and Plaintiff's motion for summary judgment with respect to that claim must be denied.[3]

## II.   Plaintiff's First Amendment Rights Were Not Violated When He Paid the Union Dues that He Voluntarily Agreed to Pay.

With respect to Plaintiff's claim for retrospective relief, Plaintiff is wrong that the deduction of union dues in accordance with his own voluntary, affirmative dues authorization agreements violated his First Amendment rights.  This Court has already rejected indistinguishable First Amendment claims, and should do so again here.  *See Seager*, 2019 WL 3822001, at *2; *Babb*, 378 F.Supp.3d at 876.  Moreover, to the extent Plaintiff is seeking a refund of dues deducted after his resignation from UTLA membership, that claim is also moot because those dues already were refunded.

---

[3] Even if Plaintiff's claim for prospective relief were not moot, the claim would still be meritless.  For the reasons explained in UTLA's motion, UMSJ at 10-18, and in Part II, *infra*, Plaintiff had no First Amendment right to renege on his voluntary contract to pay dues to UTLA for the term specified in his dues authorization agreement.

**A.**   **The First Amendment Prohibits Government Compulsion, Whereas Plaintiff Voluntarily Joined UTLA and Authorized the Deduction of Membership Dues.**

Plaintiff does not dispute that he signed membership and dues deduction authorization agreements in 2016 and 2018.  PMSJ at 6; JSUF Exs. A & B.  Plaintiff was not required to sign those agreements as a condition of his employment; he chose to do so voluntarily.  Mar Decl. ¶2; *see* JSUF Exs. A & B.  Those dues deduction authorization agreements expressly and unambiguously authorized all the dues deductions Plaintiff now challenges.  JSUF Exs. A & B.  And in consideration for his agreement to pay union dues for the period specified, Plaintiff received the rights of union membership, including the right to participate in union internal affairs and vote in officer elections, as well as access to a wide array of members-only benefits.  Mar Decl. ¶3.

The First Amendment prohibits the government from compelling public employees to join a union and pay membership dues.  *See Smith v. Superior Court*, 2018 WL 6072806, at *1 (N.D. Cal. Nov. 16, 2018) ("*Smith I*") (explaining that right to opt out of union membership was clarified in 1977 in *Abood v. Detroit Board of Education*, 431 U.S. 209, 235-36 (1977)) .  Plaintiff was not compelled to join UTLA.  He voluntarily chose to join and pay dues (and received valuable consideration in return), so he has no viable 42 U.S.C. §1983 claim for retrospective damages.

*Janus* did not change the applicable analysis.  *See* UMSJ at 13.  *Janus* concerned only whether the government could require non-members to support a union.  Moreover, as this Court has already held, the existence of a fair-share requirement for non-members did not unconstitutionally compel public employees to become union members and agree to pay membership dues.  *See Seager*, 2019 WL 3822001, at *2; *Babb*, 378 F.Supp.3d at 877 ("Plaintiffs voluntarily chose to pay membership dues in exchange for certain benefits, and '[t]he fact that plaintiffs

8

1  would not have opted to pay union membership fees if *Janus* had been the law at the

2  time of their decision does not mean their decision was therefore coerced.'")

3  (quoting *Crockett v. NEA-Alaska*, 367 F.Supp.3d 996, 1008 (D. Alaska 2019)); *see*

4  *also Belgau v. Inslee*, 2018 WL 4931602, at *5 (W.D. Wash. Oct. 11, 2018)

5  ("*Belgau I*") ("*Janus* says nothing about people [who] join a Union, agree to pay

6  dues, and then later change their mind about paying union dues."); *Smith v. Bieker*,

7  2019 WL 2476679, at *2 (N.D. Cal. June 13, 2019) ("*Smith II*") ("*Janus* did not

8  concern the relationship of unions and members; it concerned the relationship of

9  unions and non-members."); *O'Callaghan v. Regents of the Univ. of Cal*., 2019 WL

10  2635585, at *3 (C.D. Cal. June 10, 2019); *Smith I*,  2018 WL 6072806, at *1; *Cooley*

11  *v. Cal. Statewide Law Enf't Ass'n*, 2019 WL 331170, at *3 (E.D. Cal. Jan. 25,

12  2019).[4]

13

14  _____

15  [4] As UTLA demonstrated in its summary judgment motion, UMSJ at 16-18,
Plaintiff's §1983 claim also fails for lack of state action.  To state a First

16  Amendment claim under §1983, "'the conduct allegedly causing the deprivation of
a federal right [must] be fairly attributable to the State.'"  *Ohno v. Yasuma*, 723

17  F.3d 984, 993 (9th Cir. 2013) (quoting *Lugar v. Edmondson Oil Co*., 457 U.S. 922,

18  936-37 (1982)).  Plaintiff contends that LAUSD abided by the dues authorization
revocation window included in Plaintiff's membership card and thus required him

19  to "end his dues deduction during an arbitrary time period of the Union's choice."

20  PMSJ at 10.  Because Plaintiff received a full refund of all dues paid from the date
on which he resigned forward, he was not ultimately subject to the window period,

21  and his challenge to that provision of his agreement is moot.  *See infra* at 15.  All

22  that remains is the District's ministerial processing of dues deductions in
accordance with his written agreement with UTLA.  For the reasons explained in

23  UTLA's motion, such rote enforcement of the terms of Plaintiff's private agreement

24  with UTLA does not constitute state action sufficient to give rise to a §1983 claim.
*See also Belgau v. Inslee*, 359 F.Supp.3d 1000, 1012-15 (W.D. Wash. 2019)

25  ("*Belgau II*"); *Cooley v. Cal. Statewide Law Enf't Ass'n*, 385 F.Supp.3d 1077,

26  1081-82 (E.D. Cal. 2019); *Bain v. Cal. Teachers Ass'n*, 156 F.Supp.3d 1142, 1151-
54 (C.D. Cal. 2015), *subsequent order*, 2016 WL 6804921 (C.D. Cal. May 2,

27  2016), *appeal dismissed as moot*, 891 F.3d 1206 (9th Cir. 2018).  Further, to the
extent Plaintiff asserts that the dues authorization window is the result of a

28  collective bargaining agreement between UTLA and LAUSD, rather than the

9

1    Plaintiff urges that his UTLA membership and dues authorization agreements

2   do not meet the standard for a "waiver" of First Amendment rights, as articulated in

3   *Janus*.  As explained above and as this Court has recognized, *Janus* does not govern

4   the analysis of voluntary union membership agreements, so the discussion of

5   "waiver" in a passage in *Janus* does not apply.  *See supra* at 8-9; *Seager*, 2019 WL

6   3822001, at *2.[5]  Even if such an analysis were applicable (and it is not), Plaintiff's

7   membership and dues deduction agreements would constitute a voluntary, knowing,

8   and unambiguous waiver of any right not to pay dues.

9    *Janus* "acknowledges in its concluding paragraph that employees can waive

10   their First Amendment rights by affirmatively consenting to pay union dues."  *Smith*

11   *I*, 2018 WL 6072806, at *1 (citing *Janus*, 138 S.Ct. at 2486).  Although *Janus* did

12   not address the relationship between unions and their members, the undisputed facts

13   here establish that "affirmatively consenting to pay" is precisely what Plaintiff did.

14   The agreements that Plaintiff elected to sign expressly authorized the union dues

15   payments Plaintiff now challenges.  JSUF Exs. A & B.

16    There is no support for Plaintiff's claim that his voluntary agreement to pay

17   union dues could not qualify as a waiver of First Amendment rights because the

18   agreement did not expressly inform him that he has a First Amendment right not to

19   pay agency fees.  *See* PMSJ at 9 (objecting that agreement "did not expressly state

20   that he had a constitutional right not to pay a union and because it did not expressly

21   state that he was waiving that right").  Even "assum[ing] ... an agreement between

22   private parties to restrict speech implicates the first amendment," a voluntary

23

24   contract between Plaintiff and UTLA, *see* PMSJ at 13, Plaintiff has provided no
     support for that assertion.

25

26   [5] A recent Alaska Superior Court decision collects the many cases that have rejected
     Plaintiff's misinterpretation of the relevant passage in *Janus*.  *See* Temporary
27   Restraining Order, *Alaska v. Alaska State Emps. Ass'n*, No. 3AN-19-09971CI, at 4
     & 12 n.22 (Alaska Super. Ct. Oct. 3, 2019) (attached as Exhibit A to the
28   accompanying Declaration of P. Casey Pitts).

1  "agreement [that] clearly sets forth the restrictions" is enforceable without the need

2  for "the talismanic recital of the words 'first amendment.'"  *Perricone v. Perricone*,

3  292 Conn. 187, 210 & n.22 (2009).  For example, the newspaper's promise in *Cohen*

4  *v. Cowles Media Co*., was enforceable notwithstanding the absence of any special

5  First Amendment disclaimers.  *See* 501 U.S. 663, 672 (1991).  The same was true in

6  *D. H. Overmyer Co. Inc. v. Frick Co.*, 405 U.S. 174 (1972), which Plaintiff cites.

7  *See id.* at 180-81, 185-87 (agreement to use collection procedure without notice or

8  process was "voluntary, knowing, and intelligent[]," although it did not mention the

9  specific constitutional right waived); *cf. Schneckloth v. Bustamonte*, 412 U.S. 218,

10  229-33 (1973) (voluntary consent to a search waives Fourth Amendment rights

11  regardless of whether the individual was advised of his right to refuse, or even knew

12  of that right, before giving consent).

13       The Ninth Circuit has repeatedly held that even contracts with the government

14  (which Plaintiff's dues authorization agreements are not) may constitute valid

15  waivers of constitutional rights notwithstanding the absence of such disclaimers.

16  *See, e.g*., *Charter Commc'ns, Inc. v. Cty. of Santa Cruz*, 304 F.3d 927, 930-31, 935

17  (9th Cir. 2002) (plaintiff "voluntarily entered into an agreement under which the

18  County had to approve any transfer of the franchise," and "thus, to that extent,

19  waived its right to claim that a denial of a transfer violated its First Amendment

20  rights"); *Leonard v. Clark*, 12 F.3d 885, 886, 889-90 (9th Cir. 1993), *as amended*

21  (Mar. 8, 1994) (collective bargaining agreement with government waived union's

22  First Amendment rights).  And private nondisclosure agreements are enforceable

23  when they are voluntary and clearly impose the restriction notwithstanding the

24  absence of any reference to the First Amendment – even when the information is of

25  public concern, and even when the agreement is enforced by an injunction that

26  would otherwise constitute an unconstitutional prior restraint.  *See, e.g*., *Nat'l*

27  *Abortion Fed'n v. Ctr. for Med. Progress*, 685 F.App'x 623, 626 (9th Cir. 2017)

28  (plaintiffs "waived any First Amendment rights to disclose that information publicly

1    by knowingly signing the agreements") (citing *Leonard*, 12 F.3d at 889), *cert.*

2    *denied*, 138 S.Ct. 1438 (2018).

3          In short, there is no support for Plaintiff's assertion that UTLA's voluntary

4    membership agreement and dues deduction authorization form – unlike all other

5    contracts between private parties – must include the equivalent of a *Miranda*

6    warning.  Outside the inherently coercive contexts of custodial interrogation or

7    pleading guilty in court, the Supreme Court has not required the government itself to

8    provide that type of prophylactic warning, even when individuals actually are

9    waiving constitutional rights.  *See Schneckloth*, 412 U.S. at 229-33.  Even for

10   criminal suspects in the government's physical custody, *Miranda* does not require a

11   government warning that identifies the constitutional amendments that give rise to

12   the rights at issue, as Plaintiff demands.  *See Miranda v. Arizona*, 384 U.S. 436, 444

13   (1966).[6]

14         Plaintiff also contends he never "knowingly waived" his First Amendment

15   rights because his affirmative agreement to join UTLA and pay union dues was

16   signed at a time when nonmembers paid fair-share fees.  PMSJ at 10.  But, as UTLA

17   demonstrated in its summary judgment motion, precedent squarely forecloses that

18   argument.  *See* UMSJ at 13-16.

19

20   _____

21   [6] Plaintiff's other waiver cases do not support his arguments either, because none
     involved an affirmative agreement made in exchange for consideration.  *See Coll.*

22   *Savings Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676
     (1999) (considering whether state "constructively waived" sovereign immunity and

23   suggesting analysis would be different had state made "contractual commitment")
     (quotation marks omitted); *Johnson v. Zerbst*, 304 U.S. 458, 464-65 (1938)

24   (considering whether criminal defendant waived right to counsel by failing to
     request counsel); *Ohio Bell Tel. Co. v. Pub. Utilities Comm'n of Ohio*, 301 U.S.

25   292, 306-07 (1937) (considering whether objection was waived when not raised in
     earlier proceedings).  Moreover, all of these cases involved potentially significant

26   government infringements of rights or immunities, whereas here Plaintiff's

27   constitutional rights were not infringed by his voluntary payment of union dues
     pursuant to a private agreement.

28

1        In *Brady v. United States*, 397 U.S. 742 (1970), for example, a criminal

2  defendant was presented with the choice whether to plead guilty and forgo his right

3  to a jury trial, or exercise that right and risk the death penalty, under a death penalty

4  statute that the Supreme Court later held to be unconstitutional.  The defendant

5  argued that he did not effectively waive his right to a jury because he would not have

6  agreed to plead guilty but for the risk of the death penalty.  The Court rejected that

7  argument because, even "assum[ing] that Brady would not have pleaded guilty

8  except for the death penalty provision," his plea nevertheless was "knowing" and

9  "voluntary" because he understood what he was agreeing to.  *Id.* at 750, 755.  *Brady*

10  thus establishes that an agreement can be knowing and voluntary even if an

11  alternative to that agreement is later held to be unconstitutional.  *See also Dingle v.*

12  *Stevenson*, 840 F.3d 171, 175 (4th Cir. 2016) ("Although [a subsequent Supreme

13  Court opinion], in hindsight, altered the calculus underlying Dingle's decision to

14  accept a plea agreement, it does not undermine the voluntariness of his plea.").  This

15  rule applies with at least as much force in civil contexts not involving the threatened

16  loss of life or liberty.  *See, e.g.*, *Coltec Indus. v. Hobgood*, 280 F.3d 262, 277 (3d Cir.

17  2002) (rejecting claim for relief against insurance premiums paid in light of statute

18  subsequently declared unconstitutional).

19        Plaintiff also contends that his voluntary agreement to pay dues to UTLA is

20  voidable on the basis of a "mutual mistake" that he "discovered" when the Supreme

21  Court in *Janus* held that agency fees are unconstitutional.  PMSJ at 13-15.  Plaintiff's

22  invocation of the mutual mistake doctrine of contract law fails for several reasons.

23        First, the parties were not mistaken about the law or the facts when they

24  entered the contract.  The parties correctly understood that non-members were

25  obligated to pay fair-share fees.  That was the law at the time.  The general rule of

26  contract law is that the relevant time period for purposes of assessing mistake is the

27  moment parties enter a contract.  *See, e.g.*, *Dowling v. Farmers Ins. Exch.*, 208

28  Cal.App.4th 685, 699 (2012) (no mistake of law vitiating consent where plaintiffs

1  did not show that defendant "shared plaintiffs' purported misunderstanding of the

2  stipulation *at the time it was executed*") (emphasis added); *Stermer v. Bd. of Dental*

3  *Examiners*, 95 Cal.App.4th 128, 133 (2002) (no mistake of fact or law justifying

4  rescission where stipulation in licensing board proceeding was premised on existence

5  of criminal conviction that was later vacated by writ of habeas corpus; "At the time

6  of the stipulation, the conviction existed.  That it was later vacated by a writ of

7  habeas corpus does not legally create a mistake as to its existence at the time of the

8  settlement ….") (internal citation omitted); Restatement (Second) of Contracts §152

9  (1981) ("Where a mistake of both parties *at the time a contract was made* as to a

10 basic assumption on which the contract was made has a material effect on the agreed

11 exchange of performances, the contract is voidable ….") (emphasis added); 27

12 Williston on Contracts §70:1 (4th ed. 2019) ("[T]he erroneous belief must relate to

13 the facts as they exist at the time of the making of the contract."); *cf. Harris v. Rudin*,

14 *Richman & Appel*, 95 Cal.App.4th 1332, 1338 (2002) (bill that undermined

15 settlement agreement had already been enacted at the time the parties entered into the

16 settlement agreement); *Hannah v. Steinman*, 159 Cal. 142, 144, 148 (1911) (parties

17 could rescind contract where both parties were unaware at the time they entered into

18 the contract that an ordinance had been passed two days prior that prohibited the

19 party leasing land from constructing wooden buildings).

20        Second, what *Janus* affected was not any material term of Plaintiff's

21 membership agreement but rather the *alternative* to entering into a membership and

22 dues authorization agreement.  The Supreme Court has held that later changes in the

23 law affecting alternatives to an agreement do not invalidate a voluntary agreement

24 "made in the light of the then applicable law."  *Brady*, 397 U.S. at 757; *see also*

25 *supra* at 12-13.

26        Third, UTLA has already performed its obligations under the contract Plaintiff

27 now seeks to "unwind[]."  PMSJ at 14.  That alone is sufficient to bar rescission.  *See*

28 *Larsen v. Johannes*, 7 Cal.App.3d 491, 503 (1970) (inability to return party "to status

14

1  quo" was "insuperable obstacle to rescission").  UTLA has already provided to

2  Plaintiff the consideration for his agreement – namely, access to membership rights

3  and benefits during the time he was a member.  Plaintiff would be unjustly enriched

4  if UTLA were required to disgorge the money Plaintiff paid in exchange for that

5  consideration.  *See, e.g.*, *Hayutin v. Weintraub*, 207 Cal.App.2d 497, 509 (1962)

6  ("The general rule is that one must rescind all of his contract and may not retain

7  rights under it which he deems desirable to have and repudiate the remainder of its

8  provisions.  The theory underlying such a rule is that retention of only the benefits of

9  the transaction amounts to unjust enrichment and binds the parties to a contract

10  which they did not contemplate.") (quoting *Simmons v. Cal. Inst. of Tech.*, 34 Cal.2d

11  264, 275 (1949)).  Plaintiff thus cannot rely on the doctrine of mistake to obtain the

12  relief he seeks.

**B.    Plaintiff's Claim for Post-Resignation Deductions Is Moot.**

13

14      To the extent Plaintiff seeks a refund of dues he paid after his June 4, 2018

15  resignation from UTLA, Plaintiff's claim is moot in addition to being meritless.

16      As demonstrated in UTLA's motion for summary judgment, Plaintiff's receipt

17  of a full refund plus interest of all dues paid after June 4, 2018 moots his claim for

18  such a refund.  UMSJ at 18-20; *see* JSUF ¶¶9-10, 12 & Ex. H.  Courts have held that

19  indistinguishable damages claims against unions are moot where the plaintiff already

20  received a full refund.  *See Weyandt v. Pa. State Corrs. Officers Ass'ns*, 2019 WL

21  5191103, at *3-5 (M.D. Pa. Oct. 15, 2019) (named plaintiffs' claim was moot where

22  they were allowed to resign and post-resignation dues were refunded because dispute

23  was "unaccompanied by any continuing, present adverse effects") (citations

24  omitted); *Mayer*, 2019 WL 4674397, at *3; *Molina v. Pa. Soc. Serv. Union*, 392

25  F.Supp.3d 469, 482 (M.D. Pa. 2019).  This Court should reach the same conclusion.

26      In any event, even if Plaintiff's claim for a post-resignation refund were not

27  moot, it would be meritless.  As UTLA demonstrated in its summary judgment

28  motion, Plaintiff's 2018 dues authorization agreement was a binding contract with

1  UTLA.  *See NLRB v. U.S. Postal Serv.*, 827 F.2d 548, 554 (9th Cir. 1987) ("dues-

2  checkoff authorization is a contract," and "[a] party's duty to perform even a wholly

3  executory contract is not excused merely because he decides that he no longer wants

4  the consideration for which he has bargained…."); *see also* UMSJ at 12 (citing

5  cases).  The 2018 dues authorization agreement committed Plaintiff to pay dues for

6  at least a one-year period.  "[T]he First Amendment does not confer … a

7  constitutional right to disregard promises that would otherwise be enforced under

8  state law," like Plaintiff's dues authorization agreements here.  *Cohen*, 501 U.S. at

9  672.

10      The Supreme Court in *Cohen* rejected a claim that the First Amendment

11  prohibited enforcement of a newspaper's promise not to reveal the identity of a

12  confidential source.  *Id.* at 666-70.  The Court reasoned that the doctrine of

13  promissory estoppel simply "requires those who make certain kinds of promises to

14  keep them," *id.* at 672, and therefore that application of state promissory estoppel

15  law to the newspaper's promise did not "offend the First Amendment," *id.* at 669.

16  The same is true here.  *Anderson v. Serv. Emps. Int'l Union Local 503*, 2019 WL

17  4246688, at *2 (D. Or. Sept. 4, 2019); *Seager*, 2019 WL 3822001, at *2;

18  *O'Callaghan*, 2019 WL 2635585, at *3; *Smith II*, 2019 WL 2476679, at *2; *Smith I*,

19  2018 WL 6072806, at *1; *Belgau I*, 2018 WL 4931602, at *5.

20      **C.    The Good Faith Defense Would Preclude Summary Judgment for**
21          **Plaintiff in Any Event.**

22      Because Plaintiff's rights were not violated by the deduction of union dues

23  pursuant to Plaintiff's own voluntary agreement to pay those dues through payroll

24  deductions, this Court need not address the good faith defense to rule in UTLA's

25  favor.  However, if this Court were to reach the issue, the good faith defense would

26  also require rejection of Plaintiff's summary judgment motion.

27      The gravamen of Plaintiff's legal claim is that UTLA violated his rights by

28  collecting fair-share fees from non-members because that purportedly coerced him to

UTLA'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, No. 2:18-cv-09531-JLS-DFM

1   join the union.  But this Court has already recognized that a good faith defense

2   applies as a matter of law to First Amendment claims regarding pre-*Janus* fair-share

3   fee deductions, including claims that fair-share fees purportedly coerced public

4   employees to join the union and pay membership dues.  *Babb*, 378 F.Supp.3d at 876;

5   *see also Crockett*, 367 F.Supp.3d at 1007-08.

6          UTLA collected fair-share fees from nonmembers in good faith reliance on

7   then-applicable state statutes[7] and directly on-point Supreme Court authority, *see*

8   *Abood*, 431 U.S. at 222.  For the same reasons this Court applied the good faith

9   defense in *Babb*, the defense also would apply here.

10         Indeed, courts have properly rejected each of the arguments Plaintiff raises:

11  (**1**) that the text of 42 U.S.C. §1983 precludes a good defense, *see, e.g.*, *Imbler v.*

12  *Pachtman*, 424 U.S. 409, 417 (1976) (explaining that the view that §1983 "should be

13  applied as stringently as it reads …. has not prevailed."); *Janus v. AFSCME, Council*

14  *31*, __F.3d__, 2019 WL 5704367, at *8 (7th Cir. Nov. 5, 2019) ("*Janus III*");

15  *Clement v. City of Glendale*, 518 F.3d 1090, 1097 (9th Cir. 2008) (recognizing and

16  applying the good faith defense); *Babb*, 378 F.Supp.3d at 876 (same); (**2**) that the

17  good faith defense is inconsistent with the justifications for qualified immunity, *see,*

18  *e.g.*, *Ogle v. Ohio Civil Serv. Emps. Ass'n*, 2019 WL 3227936, at *6, *9 (S.D. Ohio

19  July 17, 2019) (explaining differences between qualified immunity and the good

20  faith defense and why the good faith defense is available); *see also Clement*, 518

21  F.3d at 1097 (recognizing and applying the good faith defense); (**3**) that the good

22  faith defense is contrary to equitable principles, *see, e.g.*, *Babb*, 378 F.Supp.3d at 876

23  ("As the Union Defendants cannot retract their performance on this implied contract,

24  it would be inequitable to force them to repay Plaintiffs' agency fees."); *Crockett*,

25  367 F.Supp.3d at 1006 (explaining why it would be inequitable to hold defendant

26  unions liable under these circumstances); *Hernandez v. AFSCME Cal.*, 386

27

28
_____

[7] *See* Cal. Gov't Code §3546; Cal. Educ. Code §45168(b).

1   F.Supp.3d 1300, 1306 (E.D. Cal. 2019) (same); *cf. Ams. United for Separation of*
2   *Church & State v. Prison Fellowship Ministries, Inc.*, 509 F.3d 406, 426-28 (8th Cir.
3   2007) (district court abused its discretion by ordering equitable repayment of funds
4   private party had received pursuant to "specific" and "presumptively valid" state
5   statutes that were subsequently held unconstitutional); **(4)** that recognition of a good
6   faith defense will undermine §1983's remedial principles, *see Franklin v. Fox*, 2001
7   WL 114438, at *6 (N.D. Cal. Jan. 22, 2001) (good faith defense is "consistent with
8   the purpose of section 1983" because "[i]f a private person does not know, and has
9   no reason to know, that his conduct is unconstitutional, section 1983 will not deter
10  his conduct"); and **(5)** that the good faith defense is limited to claims that have
11  specific mental-state elements and thus does not apply to his First Amendment claim,
12  *see Janus v. AFSCME, Council 31*, 2019 WL 1239780, at *2 (N.D. Ill. Mar. 18,
13  2019) ("*Janus II*"), *aff'd*, 2019 WL 5704367 (7th Cir. Nov. 5, 2019); *Ogle*, 2019 WL
14  3227936, at *7-8.

15          As this Court explained in *Babb*, "every district court to consider whether
16  unions that collected agency fees prior to *Janus* have a good-faith defense to § 1983
17  liability ha[s] answered in the affirmative." 378 F.Supp.3d at 872 (citing as
18  examples *Danielson v. AFSCME Council 28*, 340 F.Supp.3d 1083, 1084-87 (W.D.
19  Wash. 2018); *Cook v. Brown*, 364 F.Supp.3d 1184, 1190-94 (D. Or. 2019); *Carey v.
20  Inslee*, 364 F.Supp.3d 1220, 1227-1233 (W.D. Wash. 2019); *Crockett*, 367
21  F.Supp.3d at 1002-07; *Janus II*, 2019 WL 1239780, at *1-3; *Hough v. SEIU Local
22  521*, 2019 WL 1785414 (N.D. Cal. Apr. 16, 2019); *Lee v. Ohio Educ. Ass'n*, 366
23  F.Supp.3d 980, 982-83 (N.D. Ohio 2019)); *accord Allen v. Santa Clara Cty. Corr.
24  Peace Officers Ass'n*, __F.Supp.3d__, 2019 WL 4302744, at *3 (E.D. Cal. Sept. 11,
25  2019); *Ogle*, 2019 WL 3227936, at *6-10; *Hernandez*, 386 F.Supp.3d at 1305;
26  *Diamond v. Pa. State Educ. Ass'n*, 2019 WL 2929875, at *22-29 (W.D. Pa. July 8,
27  2019).  The Seventh Circuit recently did the same. *Janus III*, 2019 WL 5704367, at

28

1   *9-12; *Mooney v. Ill. Educ. Ass'n*, __F.3d__, 2019 WL 5704368, at *3 (7th Cir. Nov.
2   5, 2019).

3        Plaintiff provides no reason why the holdings of these cases would not apply
4   to his First Amendment claim here, and none exists.  Accordingly, if this Court
5   reaches the good faith defense, it should hold that UTLA's good faith reliance on
6   state statute and then-binding Supreme Court precedent precludes liability.

7                                   **CONCLUSION**

8        For the foregoing reasons, Plaintiff's motion for summary judgment should
9   be denied.

10  Dated:  November 8, 2019                    Respectfully submitted,

11                                   By:     _____*/s/P. Casey Pitts*___
12                                              P. Casey Pitts

13                                       SCOTT A. KRONLAND
14                                       P. CASEY PITTS
                                         ALTSHULER BERZON LLP
15
                                         IRA L. GOTTLIEB
16                                       BUSH GOTTLIEB, A Law Corporation

17                                       *Attorneys for Defendant*
18                                       *United Teachers Los Angeles*

19

20

21

22

23

24

25

26

27

28